IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

_____
                                   )
MALLADI DRUGS &              )
      PHARMACEUTICALS, LTD., et al.)
                                   )
               v.            )     C.A. 1:07-cv-1069 (RMC)
                                   )
KAREN TANDY,              )
in her official capacity as Administrator,    )
of the Drug Enforcement Administration.    )
_____)

**DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGEMENT**

For the reasons stated in the accompanying memorandum, defendant Karen Tandy, in her

official capacity as Administrator of the Drug Enforcement Administration, hereby moves the

Court to dismiss the Complaint for failure to state a claim upon which relief may be granted

pursuant to Rule 12(b)(6), Fed. R. Civ. P.  In the alternative, defendant moves the Court to grant

defendant summary judgment pursuant to Rule 56, Fed. R. Civ. P.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ARTHUR R. GOLDBERG
Assistant Branch Director

 /s/ Ronald J. Wiltsie
RONALD J. WILTSIE
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044
Tel: (202) 307-1401
Fax: (202) 616-8470

August 28, 2007                    Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

_____
                                          )
MALLADI DRUGS &                           )
         PHARMACEUTICALS, LTD., et al.)
                                          )
                 v.                       )        C.A. 1:07-cv-1069 (RMC)
                                          )
KAREN TANDY,                              )
in her official capacity as Administrator,  )
of the Drug Enforcement Administration.   )
_____)

**MEMORANDUM SUPPORTING DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGEMENT**

**INTRODUCTION**

Plaintiffs' Complaint essentially states two claims for relief, both of which should be

dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure.  Alternatively, this Court should grant summary

judgment in favor of the defendant based upon the existing record.

Plaintiffs' first claim is a collateral attack on the administrative forfeiture of four seizures

of List I chemicals, chemicals that are used in the manufacture of controlled substances

including, as pertinent here, the illegal drug methamphetamine.  It is undisputed that the importer

of these chemicals, non-plaintiff Malladi, Inc., had surrendered its DEA registration and, so was

not able to store the chemicals or to receive them as they arrived from overseas.  As a result, the

chemicals were seized by the Drug Enforcement Administration (DEA).  As required by law, the

shipments were each appraised, and each was valued at less than $500,000.  Notably, plaintiffs –

Malladi, Inc.'s overseas parent, Malladi Drugs & Pharmaceuticals, Ltd. (Malladi DPL), and

Malladi Inc's customer, Novus Fine Chemicals, L.L.C. (Novus) – did not (and do not here)

contest the validity of those seizures or of the appraisals. Rather, having chosen not to compel DEA to seek judicial forfeiture of these seized chemicals – as was their right – they permitted the administrative process to proceed to conclusion and the four seizures to be forfeited.

They now contend for the first time in this Court that DEA was compelled by an internal Department of Justice (DOJ) policy to aggregate the value of the four shipments. As the resulting aggregate value would have exceeded the $500,000 threshold below which administrative forfeiture is statutorily permitted, plaintiffs ask this Court to void the administrative forfeitures. They then contend that the papers they filed in the administrative proceedings were, in reality, "claims" that would have forced DEA to seek judicial forfeiture. As DEA has now, at this late date, failed to comply with the 90-day deadline for filing a judicial forfeiture action after receipt of a claim, plaintiffs ask this Court to compel the return of the List I chemicals.

This collateral attack fails to state a claim for five reasons. First, the internal policy on which plaintiffs rely does not create any enforceable substantive right. Courts interpreting many analogous internal government policies have held that absent a constitutional or statutory requirement to promulgate a policy, the policy does not create any right enforceable by the public. As neither of those requirements are present here, plaintiffs may not argue that the internal policy compelled DEA to aggregate the shipments.

Second, plaintiffs rely on a superseded departmental policy that allegedly would have compelled aggregation. Recent modifications to that policy indisputably establish that aggregation is discretionary.

Third, DEA fully complied with the policy as written.  One of the policy's requirements is that the property subject to the claim of aggregation must have been seized on the same factual basis.  Here, each of these four shipments was seized at a different time and location, thus establishing that they were not seized on the same factual basis.  Moreover, as Malladi, Inc. had surrendered its registration, each shipment represented a separate violation of the Controlled Substances Act, further establishing different bases for the seizures.

Fourth, having failed to raise the aggregation argument during the administrative procedure before DEA, plaintiffs have waived their right to do so here.

Fifth, given the stark differences between a "claim" – a document whose sole purpose is to stop an administrative forfeiture proceeding and to compel the government to initiate a judicial proceeding – and the documents filed by plaintiffs before DEA, namely petitions for remission or mitigation – documents whose sole purpose is to request the return of forfeited property as a matter of executive agency discretion – there can be no doubt that plaintiffs never filed a claim before DEA.  A thorough review of the petitions reveals that at no time did plaintiffs ever contest the validity of the administrative proceeding let alone make plain that they were seeking to compel judicial forfeiture.  Accordingly, DEA was never requested by plaintiffs to initiate judicial forfeiture.

Plaintiffs' second claim for relief concerns alleged violations of DOJ policy on the release of information relevant to pending civil actions, as set out at 28 C.F.R. § 50.2(c).  Plaintiffs complain that a webpage containing a press release about a fifth seizure of List I chemicals from Malladi, Inc. contains false and misleading information in violation of such policy.  They also assert that DEA agents have told customers not to deal with them.

3

This claim fails for several reasons also.  First, as to the website, plaintiffs lack standing to challenge the released information as they are essentially seeking relief on behalf of a third party that is both defunct and not before the Court.  Second,  for the same reasons stated above, the DOJ policy, even though promulgated in the Code of Federal Regulations, does not provide a right enforceable by the public.  And lastly, the alleged statements by DEA agents did not violate the regulation.

## BACKGROUND

### I. Statutory and Regulatory Framework

#### A.  Administrative Forfeiture

The forfeited chemicals that plaintiffs seek returned are heavily regulated, both as to their importation and distribution and as to the processes for forfeiting them.   As acknowledged by plaintiffs, the chemicals at issue here – ephedrine, pseudoephedrine, ephedrine hydrocloride and pseudoephedrine hydrocloride – are "List I chemicals subject to import and export regulation by DEA."  Complaint ¶ 5.  List I chemicals are chemicals that are used in the manufacture of controlled substances.  21 U.S.C. § 802(34).  Controlled substances, in general, are either illegal drugs or drugs that may be obtained only with a prescription.  See 21 U.S.C. § 812 (listing the five schedules of controlled substances); 21 U.S.C. § 828 (barring distribution of controlled substances listed on Schedules I or II); & 21 U.S.C. § 829 (permitting the distribution of controlled substances listed on Schedules III or IV by prescription).  To prevent the diversion of List I chemicals to the illicit manufacture of controlled substances, such chemicals may be imported and possessed only by persons or entities with a valid DEA registration.  21 U.S.C. § 822; 21 C.F.R. § 1309.21; see also Complaint ¶ 5.  DEA has the right to seize "[a]ll listed

4

chemicals . . . which have been imported, . . . possessed, . . . acquired, or intended to be . . . acquired, [or] imported . . . in violation of" these laws.  21 U.S.C. § 881(a)(9).

As modified by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983 (CAFRA), the customs laws govern the forfeiture of seized List I chemicals.  So long as not inconsistent with the laws governing controlled substances and listed chemicals, "[t]he provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws . . , the remission or mitigation of such forfeitures . . . shall apply to" DEA's seizures of listed chemicals for violation of the drug laws.  21 U.S.C. § 881(d).  The forfeiture procedures of the customs laws are set forth in 19 U.S.C. §§ 1602-1619.  Under these laws, DEA must file a judicial action to forfeit any seized goods valued at more than $500,000.  19 U.S.C. § 1610.  Goods valued at less than $500,000 may be (and in most cases must be) forfeited administratively.  19 U.S.C. § 1607(a)(1).

The notification procedures to administratively forfeit seizures valued at $500,000 or less are set forth in 19 U.S.C. § 1607 and 18 U.S.C. § 983.  Under these procedures, DEA is required to publish notice of its intent to forfeit the seized chemicals for at least three successive weeks.  It is also required to send personal notice of the seizure to any person who appears to have an interest in the property.  This notice must inform the interested party of the seizure of the goods, of DEA's intent to forfeit the chemicals administratively, and of information on the applicable procedures.  This notice must generally be sent within 60 days of the seizure.  18 U.S.C. § 983(a)(1)(A)(i).[1]

---

[1]  The 60-day deadline is subject to certain exceptions, none of which are pertinent here. See 18 U.S.C. §§ 983(a)(1)(A)(ii)-(v).

Once notified, the interested parties have the prerogative to choose the forum in which the forfeiture will be contested. They may choose to stop the administrative forfeiture and compel the government to seek a judicial forfeiture by filing a "claim." 18 U.S.C. § 983(a)(2) & (3). To be valid, a claim must be filed within the time specified in the personal notice of seizure (but that deadline may be no earlier than 35 days after the date the notice was mailed). Id. at § 983(2)(B). If the notice was not received, then a claim may be filed no later than 30 days after the final publication of the notice of seizure. Id. The claim need not be made in any particular form, id. at § 983(2)(D), but (1) must identify the specific property being claimed, (2) must state the claimant's interest in the property, and (3) must be made under oath subject to the penalty of perjury. Id. at § 983(2)(C).

If the interested parties choose to permit the forfeiture to proceed administratively, then they need do nothing. Once the time for the filing of a claim has elapsed, DEA may declare the seized property forfeit. 19 U.S.C. § 1609(a). This declaration has the same force and effect as a final decree of forfeiture in a judicial forfeiture proceeding in a United States District Court. Id. at § 1609(b). Moreover, it is well settled that judicial review is not available to challenge the merits of an administrative forfeiture. United States v. One 1987 Jeep Wrangler, 972 F.2d 472, 480 (2d Cir. 1992).

Instead of filing a claim, an interested party may file a petition for remission or mitigation of the forfeiture, so long as such petition is filed within 30 days of the notice of seizure. 21 C.F.R. § 1316.80. In general, the permissible grounds for remission or mitigation are limited to innocent owners, bona fide purchasers for value, or owners with a superior interest than that of the defendant. 28 C.F.R. § 9.5. The grant or denial of a petition for remission or mitigation is

6

unreviewable, being a matter delegated solely to the discretion of the executive.  See, e.g.,

Tourus Records, Inc. v. Drug Enforcement Agency, 259 F.3d 731, 735 (D.C.Cir. 2001)

(compiling cases).

### B.  Public Release Of Information Concerning Civil Cases

In 28 C.F.R. § 50.2, the Attorney General has provided guidance to the Department of

Justice concerning the release to the media of information concerning investigations,

prosecutions, and civil actions.  This policy (Part 50 is entitled "Statements of Policy") seeks to

prevent the inadvertent influencing of a trial while at the same time making available appropriate

information about the administration of the law.  28 C.F.R. § 50.2(a)(2).  To do so, this guideline

attempts to strike a balance between the protection of individuals involved in criminal or civil

proceedings and the need to inform the public about the problems of controlling crime and

administering the government.  Id.

As pertinent here, this section provides:

> (c) Guidelines to civil actions.  Personnel of the Department of Justice associated
> with a civil action shall not during its investigation or litigation make or participate
> in making an extrajudicial statement, other than a quotation from or reference to
> public records, which a reasonable person would expect to be disseminated by
> means of public communication if there is a reasonable likelihood that such
> dissemination will interfere with a fair trial and which relates to
>                                        * * *
>         (2) The character, credibility, or criminal records of a party, witness, or
>         prospective witness.
>                                        * * *

28 C.F.R. § 50.2(c).

7

## II. The Allegations In The Complaint

Plaintiff Malladi DPL is a supplier of pharmaceutical raw materials based in India. Complaint ¶ 4. Plaintiff Novus is a United States corporation based in New Jersey, and a wholly owned subsidiary of Malladi DPL. Id. Though not expressly delineated as such, plaintiffs' Complaint appears to make two claims for relief. The first involves the seizure of four shipments of List I chemicals from Malladi, Inc., id. ¶¶5-14, a former subsidiary of Malladi DPL located in New Jersey. Id. ¶6. The remaining claim concerns information about plaintiffs allegedly released to the public on a DOJ website and by unidentified DEA agents. Id. ¶15-17.

Between April and May 2005, DEA seized four shipments exported by Malladi DPL from India destined for Malladi, Inc. in the United States. Complaint ¶ 6. These shipments contained either ephedrine, psuedoephedrine, ephedrine hydrochloride, or psuedoephedrine hydrochloride. Id. Respectively, the four seizures were appraised at $464,000, $464,000, $250,500, and $241,500; thus, the aggregate value of all four seizures is $1,420,000. Id. ¶ 7. Each of the four seizures was assigned a separate DEA asset identification number. Id. ¶ 6. Plaintiff Novus received individual Notices of Seizure concerning two of the seizures and "challenged DEA's action." Id.[2] When that "challenge" was denied, both Novus and Malladi DPL filed a further "challenge" to these two seizures, which was also denied. Malladi DPL received Notices of Seizure as to the two remaining seizures and filed a "challenge" to each of those seizures, both of which were denied. Id. Each of the challenges by Malladi DPL and by Novus were subsequently identified in the Complaint as Petitions for Remission or Mitigation though, as set out below,

---

[2] The Notices of Seizure are attached as exhibit 1.

they now assert they were also claims.[3]  Id. ¶ 11.  DEA forfeited all four seizures administratively.  See id. ¶ 10.

Plaintiffs ask the Court to order the return of the seized chemicals.  Complaint ¶ 14.  To justify the return, plaintiffs first allege that DOJ Policy as embodied in a 1998 internal department manual required that DEA aggregate the value of the four shipments.  According to plaintiffs, the pertinent policy states:

> Department policy . . . requires that when multiple items of property are seized and their aggregate appraised value exceeds $500,000 they are all to be forfeited in a single judicial proceeding (rather than in separate administrative actions) if they are subject to forfeiture under the same statutory authority and on the same factual basis, and if an individual has an ownership interest in the items seized.

Id. ¶ 8 (quoting the United States Dept. of Justice Asset Forfeiture & Money Laundering Section, Asset Forfeiture Law & Practice Manual at 3-3 (1998)(hereinafter, the "1998 Manual")).  Had this been done, the value of the shipments would have exceeded the $500,000 threshold for administrative forfeitures, thus requiring a judicial forfeiture.  Id. ¶ 10.  DEA's failure to do so allegedly invalidates the administrative forfeitures.  Id.  If the forfeitures are invalid, plaintiffs allege, then the Petitions for Remission or Mitigation filed to challenge each of the four seizures were in fact not just petitions but also valid "claims" under CAFRA.  Id. ¶ 11.  And having been presented with valid claims, the government was required either to file a judicial complaint seeking forfeiture within 90 days or return the property.  Id. ¶ 12.  As DEA failed to file a timely judicial forfeiture complaint, plaintiffs now invoke the Administrative Procedure Act and ask this Court to compel the return of the List I chemicals.  Id. ¶ 14.

---

[3]  The Petitions for Remission or Mitigation (without their attachments) are submitted as exhibits 2 through 5.  The "subsequent challenge" after the denial of the challenge to the first two seizures was a Petition for Reconsideration, which is attached as exhibit 6.

Plaintiffs' remaining claim alleges that DEA and some of its agents have improperly released information in violation of 28 C.F.R. § 50.2. According to plaintiffs, DEA seized yet another shipment of List I chemicals from the defunct Malladi, Inc. Complaint ¶ 15. After that seizure occurred (approximately six months after the earlier four), DEA posted a press release concerning the seizure on a Department of Justice website, a press release that allegedly contained the false statement that Malladi, Inc. had been concealing the location of those chemicals. Id. It also alleged that the press release stated that, if not seized, the chemicals could have been diverted into the black market where criminals could have used it to manufacture methamphetamine and, in the process, pollute the environment. Id. And lastly, the Complaint alleges that DEA officers have contacted customers of Malladi DPL and Novus warning them not to do business with the plaintiffs. Id. ¶ 16.

## ARGUMENT

Defendants respectfully move the Court to dismiss the Complaint for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). A motion to dismiss should be granted if the plaintiffs can demonstrate no set of facts that supports their claim entitling them to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C.Cir. 2000). When evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiffs. E.g., Armstrong v. Vance, 328 F.Supp.2d 50, 53 (D.D.C. 2004) (citing Harris v. Ladner, 127 F .3d 1121, 1123 (D.C.Cir.1997)). While the complaint is to be construed liberally, the Court need not accept factual inferences drawn by the plaintiff if those inferences are not supported by the facts alleged in the complaint, nor must the Court accept the

10

plaintiff's legal conclusions.  See National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C.Cir.1996); Kowal v. MCI Comm'n Corp., 16 F.3d 1271, 1276 (D.C.Cir.1994).

Defendant bases this motion to dismiss solely on the Complaint and two sets of documents, namely the Notices of Seizure and the Petitions for Remission or Mitigation filed by plaintiffs.  As these documents were incorporated into the Complaint by reference, defendant does not believe that the Court will be compelled to convert this motion into a motion for summary judgment under Rules 12(b) and 56.  See Wagener v. SBC Pension Benefit Plan, 407 F.3d 395, 397 (D.C. Cir. 2005) (reliance on documents incorporated into complaint by reference does not require conversion of motion to dismiss).  Nevertheless, should the Court feel it appropriate to do so, summary judgment is appropriate here.  A motion for summary judgment is to be granted when there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in a light most favorable to the nonmoving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita, 475 U.S. at 587.

**I. Defendant Did Not Have To Aggregate The Value Of The Four Separate Seizures**

    **A.  Departmental Policy Did Not Create An Enforceable Private Right**

Many, if not most, internal government polices do not provide any private rights enforceable by the public.  Concerned that enforcement of these internal policies would lead to

either their demise or their being parsed in such precatory language as to be unusable, courts have been very circumspect in holding that they create private rights for the public.  <u>Groder v. United States</u>, 816 F.2d 139, (4th Cir. 1987).  Here, the 1998 (and subsequent) internal Department of Justice policies concerning aggregation of seized merchandise are indistinguishable from the myriad policies that have been found not to create substantive rights.  Thus, plaintiffs cannot assert any right to aggregation based on these policies.

Courts have routinely found that internal law enforcement policies and even entire internal manuals do not provide substantive rights.  <u>See</u> <u>United States v. Wilson</u>, 413 F.3d 382, 389 (3d Cir. 2005) (DOJ policy regarding bringing federal prosecutions after defendant succeeds at state court suppression hearings); <u>United States v. Blackley</u>, 167 F.3d 543, 548-49 (D.C. Cir. 1999) (Department of Justice Manual in general, and policy regarding prosecutions under 18 U.S.C. § 1001 in particular); <u>San Pedro v. United States</u>, 79 F.3d 1065, 1070 (11th Cir. 1996) (United States Attorney Manual); <u>United States v. Craveiro</u>, 907 F.2d 260, 265 (1st Cir. 1990) (DOJ Handbook on the Comprehensive Crime Control Act of 1984); <u>Groder</u>, 816 F.2d at 142 (Internal Revenue Service Audit Manual).  The key issue in determining whether or not substantive (and hence enforceable) rights are created is whether the agency was required either by the Constitution or by statute to adopt the internal policy.  <u>Compare</u> <u>United States v. Caceres</u>, 440 U.S. 741, 749-750 (1979) (no substantive right created by IRS manual's provisions concerning electronic monitoring of conversations) <u>with</u> <u>Bridges v. Wixon</u>, 326 U.S. 135, 152-53 (agency's signature procedures concerning deportations required by the Due Process Clause).

Here, the aggregation urged by plaintiffs is not mandated by either the Constitution or by statute.  The constitutionality of administrative forfeiture has long been settled.  <u>See</u>, <u>e.g.</u>,

12

Dusenbery v. United States, 534 U.S. 161, 167 (2001) (administrative forfeiture satisfies due process).  And this constitutional imprimatur is independent of the amount sought to be forfeited, as the threshold amount in section 1607 has been changed by Congress, Customs & Trade Act of 1990, Pub. L. No. 101-382 § 122, 104 Stat. 629, 642 (increasing threshold from $100,000 to $500,000), and in many cases property may be forfeited without regard to its value, see 19 U.S.C. § 1607(a) (permitting administrative forfeiture of money no matter the amount, and of ships, airplanes, and vehicles vessels no matter their value if they were used to transport or store controlled substances).  Nor does the governing statute require aggregation; it is entirely silent on the subject.  See id.; Yskamp v. Drug Enforcement Administration, 163 F.3d 767, 771 n. 4 (3d Cir. 1998)(holding that the threshold amount applies to individual items seized, not to the aggregate value of all items seized).  Significantly, plaintiffs apparently concede that neither the constitution nor section 1607 require aggregation as they base their aggregation claim solely on DOJ's internal policies.

Courts frequently find that disclaimers that expressly negate the creation of private rights, though not required, reinforce that no private rights are created by internal government policies.  Thus in Blackley, the District of Columbia Circuit noted that the DOJ Manual stated it was "not intended to confer any rights, privileges or benefits on prospective or actual witnesses or defendants."  167 F.3d at 548.  Similarly, in In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141 (D.C. Cir. 2006), the Court held that a reporter had no right to invoke a DOJ policy concerning how a reporter could be subpoenaed for testimony before a grand jury, relying in part on the policy's disclaimer that it did "not create or recognize any legally enforceable right in any person."  Id. at 1152.  And this was true despite the fact that the policy, unlike here, was

published in the Code of Federal Regulations.  Id.; see 28 C.F.R. § 50.10.  Here, the very manual

relied on by plaintiffs contains a nearly identical disclaimer, stating that it "is not intended to

create or confer any rights, privileges, or benefits for any prospective or actual claimants,

defendants, or petitioners.  It is also not intended to have the force of law or of a United States

Department of Justice directive."  1998 Manual at Forward.[4]  Just as in Blackley and Miller, the

presence of this disclaimer further establishes that no private rights were created by the

publication of the government policy.

       In summary, there is no basis for the aggregation argument advocated by plaintiffs.  It is

required by neither the Constitution nor by statute.  Any reliance on these policies by the public

is completely negated by the disclaimer, a provision that has been readily endorsed by many

courts in multiple contexts.  Rather than creating enforceable rights, the government policies at

issue in those cases and here are merely guidelines designed to internally cabin the executive's

exercise of its own discretion.  Significantly, the findings of the cases cited above is fully

consistent with and supported by the Supreme Court's recent jurisprudence where it "retreated

from [its] previous willingness to imply a cause of action where Congress has not provided one."

Correctional Svcs. Corp. v. Malesko, 534 U.S. 61, 67 n. 3 (2001); see Alexander v. Sandoval,

532 U.S. 275, 287 (2001).  Just as now the text of a statute must fully support the implication of

a cause action, Alexander, 532 U.S. at 287, so here either the Constitution or a statute must

mandate the implication of an enforceable right from an internal executive guideline or policy.

Because that mandate is missing here, the Department's guidelines concerning aggregation of the

---

    [4]  As set out, infra section I.B, the 1998 Manual is not the current departmental guidance
on aggregation of seized goods.  Nevertheless, the internal manual that was current at the time
contains a nearly identical disclaimer.  Asset Forfeiture Policy Manual at Forward (2005).

value of merchandise do not create any substantive or procedural right enforceable by the plaintiffs.

**B. Aggregation Was Not Required By The Governing Department Of Justice Policy**

The seizures at issue occurred in April and May 2005.  Complaint ¶ 6.  In January of that year, the Asset Forfeiture and Money Laundering Section of the Department of Justice revised and reissued the Asset Forfeiture Policy Manual (the "2005 Manual").  In the forward to that document, the Department stated that it "replaces and supersedes all previous versions of the Policy Manual and all Policy Directives and Interim Legal Advice Memoranda issued prior to December 31, 2004."  Consequently, it is to this revision that the Court must refer to discover the operative language concerning Department policy on aggregating the value of seizures for purposes of forfeiture.  In pertinent part, that operative language states:

> In general, properties subject to administrative forfeiture **must be forfeited administratively**, unless one of the following exceptions applies.
>
> > (1) Where several items of personal property (other than monetary instruments) are subject to civil forfeiture under the same statutory authority and on the same factual basis, and they have a common owner and a combined appraised value in excess of $500,000, the property **should be** forfeited judicially in a single action.

2005 Manual at 33 (emphasis added; footnote omitted).  This language demonstrates a strong preference for administrative forfeiture ("must be forfeited administratively").  By contrast, the exception fails to use the mandatory "must," stating instead that property whose aggregated value exceeds $500,000 "should be" forfeited judicially.  The difference in meaning of these two words and their close  juxtaposition establishes that aggregation, while perhaps preferred if multiple goods are seized, is not – as plaintiffs contend – required.

The discretionary nature of the current policy is bolstered when the language from the 2005 manual is compared to the language on which plaintiffs rely, and to even earlier Department directives.  As plaintiffs point out, the 1998 Manual "requires that when multiple items of property are seized and their aggregate appraised value exceeds $500,000 they **are all to be forfeited** in a single judicial proceeding" if – as the current policy requires – they have a common owner, were seized under the same statutory authority, and on the same factual basis. 1998 Manual at 3-3.  The only permissible inference based on the change from an imperative "are all to be forfeited" to the current, less commanding "should be forfeited" is that the Department changed its guidance to permit greater discretion in deciding whether to seek judicial forfeiture or not.  This inference is further confirmed by reviewing the policy guidance issued in 1991 shortly after the threshold for judicial forfeiture was increased from $100,000 to $500,000. In the now superseded Directive 91-2, the Deputy Attorney General stated that where seized property had common ownership, was to be forfeited on the same factual basis, and under the same statutory authority, "all such items **shall be aggregated and forfeited judicial**ly."  Ex. 7 (emphasis added).

Thus, the Department's guidance over the years has evolved from the non-discretionary "shall be" to the slightly less imperative "are to be" to the clearly discretionary "should be." Plaintiffs therefore err when they assert that DEA was required to aggregate the various seizures prior to forfeiting them.  They mistakenly rely on an out-dated statement of the Department's policy.  As the current policy explicitly leaves aggregation to the Department's discretion, plaintiffs cannot state a claim even if the policy created a substantive right enforceable by them.

## C.  Defendant Fully Complied With The Aggregation Policy

Both the 1998 Manual and the 2005 Manual state that aggregation is not required unless the property has a common owner, is forfeited under the same statutory basis, and was forfeited "on the same factual basis."  1998 Manual at 3-3; 2005 Manual at 33.  Plaintiffs concede in their complaint that DEA made four separate seizures of the List I chemicals.  Complaint ¶6.  Unstated in the Complaint, but readily apparent from the referenced Notices of Seizure is the fact that each of these shipments occurred in a separate location and on a separate date:

| Asset Id No. | Date | Place |
|---|---|---|
| 450357 | 4/8/05 | Edison, NJ |
| 450545 | 4/14/05 | Newark, NJ |
| 451290 | 4/27/05 | Staten Island, NY |
| 451301 | 5/2/05 | Elizabeth, NJ |

Ex. 1.  Moreover, the petitions for remission or mitigation all reveal that the latter three of these seizures were in fact whole shipments destined for the defunct Malladi, Inc. that were seized dockside as they arrived in the United States.  Ex. 3 at p.4; Ex. 4 at p.5; & Ex. 5 at p.4.  By contrast, the first seizure appears to have been of chemicals stored at the Malladi, Inc. warehouse in Edison that were seized before Malladi, Inc. surrendered its registration on April 11.  See Ex. 2 at pp.2-3.

Under these circumstances, defendant fully complied with the aggregation policy because the factual basis underlying each seizure was different.  First, each of these seizures occurred on a separate date and at a separate place, which alone establishes that they were not seized on the same factual basis.  But beyond that, at a minimum, the factual basis for the first seizure is separate from the other three, as Malladi, Inc. still retained its registration until April 11th.  In

17

other words, the second, third, and fourth shipments were seized because Malladi, Inc. no longer had a right to receive them, whereas the first was seized because Malladi, Inc. had allegedly violated the administrative requirements attendant upon a DEA registered importer. And the factual basis for the remaining three seizures was not the same, as once Malladi, Inc. surrendered its registration, it could no longer possess or receive List I chemicals. Accordingly, the receipt of each new shipment was a separate violation of the Controlled Substances Act that rendered each of these seizures non-identical.[5] Thus, even if the aggregation policy could have applied, it would not have done so here.

### D. Plaintiffs Have Waived Their Right To Raise Aggregation In This Court

Even if this Court were to find that the 1998 or 2005 manuals created an enforceable right to aggregation, that DEA lacked discretion not to aggregate under the policy, and that the factual basis for all four temporally and geographically separate seizures was identical, plaintiffs Complaint still must be dismissed. Having failed to have raised the aggregation issue before DEA during the administrative process, plaintiffs have waived any right to raise it here.

"It is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review." Nuclear Energy Inst. V. Environmental Protection Agency, 373 F.3d 1251, 1298 (D.C. Cir. 2004). Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires

---

[5] Moreover, at least as to the third seizure, the location of the seizure precludes its aggregation with the others. The first, second, and fourth seizures occurred in New Jersey; the third on Staten Island. But the governing forfeiture laws require that a proposed judicial forfeiture be referred to the United States Attorney for the district in which the goods were seized. 19 U.S.C. § 1610. Accordingly, the New York seizure would have been referred to the United States Attorney for the Southern District of New York, while the remaining three would have had to been referred to the United States Attorney for the District of New Jersey.

as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.  See United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952).  Accordingly, there is a near absolute bar against raising new issues - factual or legal - on appeal in the administrative context.  National Wildlife Fed'n v. EPA, 286 F.3d 554, 562 (D.C.Cir. 2002).  As the D.C. Circuit has explicitly stated, "'Our cases ... require complainants, before coming to court, to give the [agency] a fair opportunity to pass on a legal or factual argument. "  National Ass'n of Mfrs. v. United States Dept. Of Interior, 134 F.3d 1095, 1111 (D.C. Cir. 1998)(quoting Washington Ass'n for Television & Children v. F.C.C., 712 F.2d 677, 681 (D.C. Cir. 1983) (alteration and emphasis in original))).[6]  These principles are fully applicable to administrative forfeiture proceedings.  Linarez v. United States Department of Justice, 2 F.3d 208, 212 (7th Cir. 1993).

Here, plaintiffs have violated this bedrock principle.  Nothing in any of their filings challenging each of the four proposed forfeitures raised any question about the need to aggregate the value of the shipments.  Nor did any of these filings raise any hint that because of aggregation, only judicial forfeiture was appropriate.  Having permitted the forfeitures to become final – which has the same effect as a judicial decree, 19 U.S.C. § 1609(b) – plaintiffs may not now collaterally attack those decisions on this basis.  As a matter of both administrative and judicial economy, the time to raise this issue was in their first response to the proposed forfeiture.

---

[6]  See also Nevada v. Department of Energy, 457 F.3d 78, 88 (D.C. Cir. 2006) (argument waived on petition for judicial review because not raised before agency); National Committee for New River, Inc. v. Federal Energy Regulatory Comm'n, 373 F.3d 1323, 1332 (D.C. Cir. 2004) (same).

Having sat on their hands, plaintiffs may not now allege failure to aggregate to attack the already completed forfeitures.

## II. Plaintiffs Have Never Filed A Claim For The Seized Chemicals

Once DEA chooses to administratively forfeit seized goods, any entity asserting an ownership interest may stop the administrative process and compel the agency to justify the forfeiture in a judicial case by filing a "claim."  19 U.S.C. § 1608.  CAFRA sets out several necessary but not sufficient criteria for making a valid claim.  Specifically, the claim must identify the specific property being claimed; state the claimant's interest in such property; and be made under oath.  18 U.S.C. § 983(a)(2)(C).  Notably, there is no particular technical form that a claim must take.  Id. § 983(a)(2)(D).  But satisfaction of these few requirements does not make a document a claim.  Left unspoken – because it is self evident – is a requirement that the document either identify itself as a claim, or at least give rise to a reasonable inference that it is one.  Here, nothing in plaintiffs' four Petitions for Remission or Mitigation or their one petition for reconsideration provided any hint that these documents were, in reality, claims.

The procedures governing civil asset forfeiture draw a sharp distinction between a claim and a petition for remission.  Once the notices of seizure are served, anyone claiming an ownership interest in the seized property has a choice.  The putative owner may permit the administrative forfeiture to continue, resulting in the forfeiture of the goods.  See 19 U.S.C. § 1609(a) (if no claim is filed within the time prescribed, the forfeiting agency shall declare the goods forfeit); 21 C.F.R. § 1316.77 (same).  By opting for this path, a putative owner may still recover the goods during the administrative process by filing a petition for remission or mitigation.  See 28 C.F.R. §§ 9.1-9.3 (detailing procedure and basis for remission or mitigation).

It is well-settled, however, that by doing so a party is relying solely on the discretion of the seizing agency.  Tourus Records, Inc., 259 F.3d at 735.  Or, if the putative owner did not wish to rely on the discretion of the executive, it could choose to stop the administrative process by filing a "claim."  19 U.S.C. § 1608 (if claim filed, property must be referred to United States Attorney for judicial forfeiture); 18 U.S.C. § 983(a)(3)(A) (within 90 days of claim being filed, government must file a judicial complaint seeking forfeiture); 21 C.F.R. § 1316.78 (if a claim is filed, the property must be judicially forfeited).  Once a proper claim is filed, the agency must cease the administrative process and must refer the seized goods to the appropriate United States Attorney to have the goods forfeited judicially.  Id.

As these statutes and regulations demonstrate, the difference between a claim and a petition for remission or mitigation is stark and unmistakeable.  Compare 21 C.F.R. § 1316.76 (requirements for a claim) with 21 C.F.R. § 1316.79 (procedure for filing a petition).  Moreover, they are essentially mutually exclusive, for a claim stops the administrative process while a petition for remission or mitigation assumes that the goods have already been forfeited, i.e., that the administrative process is complete.  21 C.F.R. §1316.79(a).  Thus, while the government may make the initial choice to administratively forfeit seized property, the ultimate control over how the forfeiture proceeds lies with the putative owners' decision on whether or not to file a claim.

Here, the record establishes that plaintiffs affirmatively chose to forego a judicial forfeiture and to proceed administratively by never filing a claim for the seized shipments.  At all times well-represented by counsel, plaintiffs filed Petitions for Remission or Mitigation as to each of the four seized shipments.  Strikingly, each of these attorney-filed submissions is styled not as a "claim," but as a "Petition for Remission or Mitigation of Forfeiture."  And most

notably, nowhere in any of the four petitions do plaintiffs assert that they are making a "claim" or

even ask DEA to suspend the administrative process and file a judicial complaint.  Even the

Petition for Reconsideration as to two of the denied petitions fails to mention that DEA erred in

proceeding with the administrative forfeiture because the earlier filed petitions were in reality

claims.  The only conclusion even an in-depth inspection of the petitions yields is that plaintiffs

chose – through counsel – to submit to the administrative process and seek remission or

mitigation.  Having made that choice, plaintiffs may not now change their mind and assert that a

claim was made.

### III.  Plaintiffs' Claim Based On The Alleged Release Of Information Must Be Dismissed

Plaintiffs are not entitled to any relief on their second claim.  Invoking 28 C.F.R. § 50.2,

which allegedly regulates what information DOJ employees may release concerning civil actions,

plaintiffs contend that DEA has disparaged them through its website and through statements by

its agents to their customers.[7]  In particular, plaintiffs contend that DEA posted a press release on

its website concerning a fifth seizure of List I chemicals from Malladi, Inc. made in October

2005 (approximately six months after the four seizures at issue here).  In that press release, DEA

allegedly stated that Malladi, Inc. had been concealing these chemicals.  The press release is

further alleged to have stated that, unless seized, the chemicals could have fallen into the hands

of criminals who could have used them to produce methamphetamine and to pollute the

---

[7]  By its own terms, 28 C.F.R. § 50.2 applies to the investigation or litigation of a civil action.  Id. at (c).  It is not clear from the Complaint just what the predicate civil action underlying plaintiffs' second claim for relief is.  Notably, it cannot be this case, as these statements obviously predated the filing of the Complaint.  Rather, defendant assumes that plaintiffs are referring to a possible future civil penalty action against Malladi, Inc. for violating the terms of its DEA registration or to a judicial forfeiture action concerning the fifth seizure.

environment.  In addition to the press release, DEA agents are alleged to have informed certain

customers of the plaintiffs not to do business with them.

These allegations, even if true, fail for three reasons.  First, as to the website posting,

plaintiffs lack standing to assert a claim for Malladi, Inc., a now defunct corporation who is not a

party to this action.  Second, for the same reasons that the 1998 or 2005 Manuals did not create a

right enforceable by plaintiffs, neither does the Department's policy concerning the release of

information about civil cases, 28 C.F.R. § 50.2(b).  And third, the alleged statements by the DEA

agents to plaintiffs' customers do not violate the information release policy, even if they were

made.

### A.  Plaintiffs Lack Standing To Assert A Claim On Behalf Of Malladi, Inc.

Plaintiffs Novus and Malladi DPL lack standing to assert any harm done to the reputation

of the non-party, Malladi, Inc., based on the allegations relating to the information posted on

DEA's website.  One core element of Article III's case-or-controversy requirement is that a

plaintiff must establish that it has standing to sue.  Lujan v. Defenders of Wildlife, 504 U.S. 555,

561 (1992).  "The question of standing is whether the litigant is entitled to have the court decide

the merits of the dispute or of particular issues."  Allen v. Wright, 468 U.S. at 750-51.  In

particular, prudential aspects of the standing doctrine prohibit one party from seeking relief for

injuries to an absent third party.  Flast v. Cohen, 392 U.S. 83, 99 n.20 (1968).

Here, all the allegations concerning the website are that it tarnished the reputation of

Malladi, Inc.  In particular, the Complaint alleges that the website falsely stated that Malladi, Inc.

had hidden this shipment of chemicals from DEA for almost six months.  It also alleges that the

website impliedly disparaged Malladi, Inc. by noting that if the chemicals had been diverted into

23

the hands of criminals, that the chemicals could have been used to create methamphetamine.  But absent from the Complaint are any allegations that indicate either plaintiff is even mentioned on the website.  Nor may Malladi DPL bring this action on behalf of its subsidiary, Malladi, Inc. Having chosen to accept the benefits that generally shield a parent from liability incurred by a subsidiary, it may not ignore the distinction now that it apparently believes it is advantageous to do so.  E.g., Waddell & Reed Financial, Inc. v. Torchmark Corp., 223 F.R.D. 566, 629 (D.Kan. 2005); Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 305 F.Supp.2d 939, 953 (E.D.Wis. 2004).

Accordingly, as the information allegedly published on the website fails to mention or refer to plaintiffs, and as neither of them has a right to assert a claim on behalf of Malladi, Inc., this part of the claim must be dismissed.

### B.  The Information Release Policy Is Not Enforceable

Despite being published in the Code of Federal Regulations, the policy announced in 28 C.F.R. § 50.2 does not confer any substantive right on plaintiffs.  As with the 1998 and 2005 Manuals, no constitutional or statutory mandate required the promulgation of this regulation. Rather, as the preamble from its initial publication makes clear, it was promulgated on the Attorney General's own initiative without the notice and comment associated with binding rules. 36 Fed. Reg. 21028 (Nov. 3, 1971) (citing the Attorney General's general grant of authority, 28 U.S.C. § 509, as the basis for this policy).   Second, though published in the Code of Federal Regulations, this policy is located in a Part entitled "Statements of Policy."  28 C.F.R. Pt. 50.  As noted above, the D.C. Circuit has already held that another regulation published in this same Part was merely a statement of policy and did not create an enforceable right.   In re Grand Jury Subpoena, Judith Miller, 438 F.3d at 1152 (holding that 28 C.F.R. § 50.10 regarding

subpoenaing reporters was an unenforceable policy, not a regulation).  And lastly, further

establishing that this regulation is merely a statement of policy is its language.  Throughout the

regulation, including the title of the very section on which plaintiffs rely, the regulation

emphasizes that these are merely "guidelines." 28 C.F.R. § 50.2(a)(1) ("The purpose of this

statement is to formulate specific guidelines for the release of such information by personnel of

the Department of Justice."); id. at (a)(3) ("Nonetheless, it will be helpful in ensuring uniformity

of practice to set forth the following guidelines for all personnel of the Department of Justice.");

id. at (b) ("These guidelines . . ."); id. at (c) (entitled "Guidelines to civil actions").  Accordingly,

it is clear that this "regulation" is not an enforceable rule, but merely what it purports to be, a

statement of policy designed to guide the discretion of departmental employees to strike a

balance between the rights of individuals to fair trials and the government's need to inform the

public of its workings.  Thus, plaintiffs cannot use this policy to state a claim against defendant

as to either the website posting or the alleged statements by DEA agents.

### C.  The Alleged Statements By DEA Agents to Plaintiffs' Customers Did Not Violate The Policy Concerning The Release Of Information

Lastly, the alleged statements by the DEA agents to plaintiffs customers simply did not

violate 28 C.F.R. § 50.2.  As pertinent here, the regulation requires that the information be about

the character of a party, witness, or prospective witness.  28 C.F.R. § 50.2(c) & (c)(2).  But the

statements "not to do business" were about the plaintiff corporations.[8]  As neither corporation is

a party to any a civil action about which these statements would be actionable, and as

---

[8]  The Complaint is not clear as to whether the alleged statements by the DEA agents
concerned the plaintiffs or Malladi, Inc.  Defendant assumes for purposes of this motion that the
statements concerned the plaintiffs.

corporations themselves cannot be witnesses in court (only their agents can), the regulation does not apply in this instance.

Additionally, plaintiffs ignore an important qualification on the release of information. Specifically, the information must be one that "a reasonable person would expect to be disseminated by means of public communication." 28 C.F.R. § 50.2(c)(3). Here, the very nature of the allegations, statements made directly to customers of the plaintiffs, indicates that there could be no expected dissemination by public communication. Accordingly, the agents alleged statements, if made, did not violate the regulation.

### Conclusion

For the reasons stated above, defendant respectfully requests that the Court dismiss the Complaint with prejudice.

Respectfully Submitted,


PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ARTHUR R. GOLDBERG
Assistant Branch Director

 /s/ Ronald J. Wiltise
RONALD J. WILTSIE
Attorney
Civil Division
Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044
Tel: (202) 307-1401
Fax: (202) 616-8470

August 28, 2007                    Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the forgoing Motion to Dismiss or In The Alternative For Summary Judgment, the Memorandum in support thereof, and the Statement of Material Facts As To Which There Is No Dispute were served this 28th day of August 2007 by overnight delivery (Federal Express) and by first-class mail, postage prepaid, on

Zachary J. Harmon
Eugene M. Pfeifer
Christina L. Anderson
King & Spaulding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 2006

Attorneys for Plaintiffs


                                /s/ Ronald J. Wiltsie
                                Ronald J. Wiltsie

1

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

```
_____
                                    )
MALLADI DRUGS &                     )
       PHARMACEUTICALS, LTD., et al.)
                                    )
              v.                    )     C.A. 1:07-cv-1069 (RMC)
                                    )
KAREN TANDY,                        )
in her official capacity as Administrator,  )
of the Drug Enforcement Administration.  )
_____)
```

**DEFENDANT'S STATEMENT OF MATERIALFACTS
AS TO WHICH THERE IS NO DISPUTE**

Pursuant to Local Civil Rule 7(h), defendant hereby submits its statement of material

facts to which it contends there is no genuine issue.  Because defendant has concurrently moved

for the dismissal of the Complaint on the ground that it has failed to state a claim upon which

relief may be granted, this statement will set out only those facts not readily apparent from the

face of the Complaint.

1.  The seizure with Asset Identification Number 450357 occurred in Edison, NJ on April 8,

2005.  Ex. 1.

2.  The seizure with Asset Identification Number 450357 was made of List I chemicals already

received by Malladi, Inc.  Ex. 2 at pp. 2-5.

3.  The reason for the seizure with Asset Identification Number 450357 was Malladi, Inc.'s

allegedly improper compliance with procedures for handling and tracking List I chemicals.  Id.

4.  The seizure with Asset Identification Number 450545 occurred in Newark, NJ on April 14,

2005.  Ex. 1.

1

5.  The seizure with Asset Identification Number 450545 was made of List I chemicals as they arrived at a port of entry into the United States.  Ex. 3 at p.4.

6.  The reason for the seizure with Asset Identification Number 450545 was the surrender by Malladi, Inc. of its DEA registration.  Id.

7.  The seizure with Asset Identification Number 451290 occurred in Staten Island, NY on April 27, 2005.  Ex. 1.

8.  The seizure with Asset Identification Number 451290 was made of List I chemicals as they arrived at a port of entry into the United States.  Ex. 4 at p.5.

9.  The reason for the seizure with Asset Identification Number 451290 was the surrender by Malladi, Inc. of its DEA registration.  Id.

10.  The seizure with Asset Identification Number 451301 occurred in Elizabeth, NJ on May 2, 2005.  Ex. 1.

11.  The seizure with Asset Identification Number 451301 was made of List I chemicals as they arrived at a port of entry into the United States.  Ex. 5 at p.4.

12.  The reason for the seizure with Asset Identification Number 451301 was the surrender by Malladi, Inc. of its DEA registration.  Id.

13.  Plaintiffs filed a Petition for Remission or Mitigation of the seizure with Asset Identification Number 450357 on or about October 21, 2005.  Ex. 2.

14.  The Petition for Remission or Mitigation of the seizure with Asset Identification Number 450357 did not state that it was a claim under either the Civil Asset Forfeiture Reform Act or the under the customs laws governing forfeiture.  Id.

2

15.  The Petition for Remission or Mitigation of the seizure with Asset Identification Number 450357 did not request the Drug Enforcement Administration to cease the administrative forfeiture proceeding and initiate a judicial proceeding to forfeit these goods.  Id.

16.  Plaintiffs filed a Petition for Remission or Mitigation of the seizure with Asset Identification Number 450545 on or about May 20, 2005.  Ex. 3.

17.  The Petition for Remission or Mitigation of the seizure with Asset Identification Number 450545 did not state that it was a claim under either the Civil Asset Forfeiture Reform Act or the under the customs laws governing forfeiture.  Id.

18.  The Petition for Remission or Mitigation of the seizure with Asset Identification Number 450545 did not request the Drug Enforcement Administration to cease the administrative forfeiture proceeding and initiate a judicial proceeding to forfeit these goods.  Id.

19.  Plaintiffs filed a Petition for Remission or Mitigation of the seizure with Asset Identification Number 451290 on or about July 12, 2005.  Ex. 4.

20.  The Petition for Remission or Mitigation of the seizure with Asset Identification Number 451290 did not state that it was a claim under either the Civil Asset Forfeiture Reform Act or the under the customs laws governing forfeiture.  Id.

21.  The Petition for Remission or Mitigation of the seizure with Asset Identification Number 451290 did not request the Drug Enforcement Administration to cease the administrative forfeiture proceeding and initiate a judicial proceeding to forfeit these goods.  Id.

22.  Plaintiffs filed a Petition for Remission or Mitigation of the seizure with Asset Identification Number 451301 on or about May 20, 2005.  Ex. 5.

3

23.  The Petition for Remission or Mitigation of the seizure with Asset Identification Number 451301 did not state that it was a claim under either the Civil Asset Forfeiture Reform Act or the under the customs laws governing forfeiture.  <u>Id</u>.

24.  The Petition for Remission or Mitigation of the seizure with Asset Identification Number 451301 did not request the Drug Enforcement Administration to cease the administrative forfeiture proceeding and initiate a judicial proceeding to forfeit these goods.  <u>Id</u>.

                    Respectfully Submitted,

                    PETER D. KEISLER
                    Assistant Attorney General

                    JEFFREY A. TAYLOR
                    United States Attorney

                    ARTHUR R. GOLDBERG
                    Assistant Branch Director

                     /s/ Ronald J. Wiltsie
                    RONALD J. WILTSIE
                    Trial Attorney
                    Civil Division, Federal Programs Branch
                    U.S. Department of Justice
                    P.O. Box 883
                    Washington, D.C.  20044
                    Tel: (202) 307-1401
                    Fax: (202) 616-8470

August 28, 2007                Attorneys for Defendants

# EXHIBIT 1



**U.S. DEPARTMENT OF JUSTICE**
**DRUG ENFORCEMENT ADMINISTRATION**

| | |
|---|---|
| Asset Id: | 05-DEA-450357 |
| Case Number: | C3-05-2025 |
| Property: | 233 Drums of List 1 Chemicals (Pseudoephedrine & Ephedrine) |
| Asset Value: | $241,500.00 |
| Seizure Date: | 04/08/05 |
| Seizure Place: | Edison, NJ |
| Owner Name: | Malladi Inc. |
| Seized From: | Malladi Inc. |
| Judicial District: | District of New Jersey |

Malladi Inc.
c/o Eugene Pfifer/Esq.
1700 Pennsylvania Avenue NW
Washington, DC 20006

**NOTICE MAILING DATE:** May 9, 2005

### NOTICE OF SEIZURE

The above-described property was seized by Special Agents of the Drug Enforcement Administration (DEA) for forfeiture pursuant to Title 21, United States Code (U.S.C.), Section 881, because the property was used or acquired as a result of a violation of the Controlled Substances Act (Title 21, U.S.C., Sections 801 et seq.). The seizure date and place, as well as other pertinent information regarding the property are listed above.

Pursuant to Title 18, U.S.C., Section 983 and Title 19, U.S.C., Sections 1602-1619, procedures to administratively forfeit this property are underway. You may petition the DEA for return of the property or your interest in the property (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in Federal court. **You should review the following procedures very carefully.**

### TO REQUEST REMISSION OR MITIGATION OF FORFEITURE

If you want to request the remission (**pardon**) or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the DEA within thirty (**30**) days of your receipt of this notice. The petition must include proof of your

interest in the property and state the facts and circumstances which you believe justify remission or mitigation. The regulations governing the petition process are set forth in Title 28, Code of Federal Regulations, Part 9.

### TO CONTEST THE FORFEITURE

In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA by **June 13, 2005**. The claim need not be made in any particular form (Title 18, U.S.C., Section 983(a)(2)(D)). The claim shall identify the specific property being claimed; state the claimant's interest in such property; and be made under oath, subject to penalty of perjury (Title 18, U.S.C., Section 983(a)(2)(C)). A frivolous claim may subject the claimant to a civil fine in an amount equal to ten (10) percent of the value of the forfeited property, but in no event will the fine be less than $250 or greater than $5,000 (Title 18, U.S.C., Section 983(h)). Upon the filing of a claim under Title 18, U.S.C., Section 983(a), a claimant may request, pursuant to Section 983(f),

release of the seized property during the pendency of the forfeiture proceeding due to hardship. Requests must be sent to the Forfeiture Counsel of the DEA. The following property is not eligible for hardship release: contraband, currency, or other monetary instruments or electronic funds unless the property constitutes the assets of a legitimate business which has been seized; property to be used as evidence of a violation of the law; property, by reason of design or other characteristic, particularly suited for use in illegal activities; and property likely to be used to commit additional criminal acts if returned to the claimant. If you wish to contest the forfeiture of the asset, you must comply with the procedures set forth herein. Your failure to do so will result in the termination of your interest in the asset, and may preclude your contesting the forfeiture of the asset in any judicial proceeding - either civil or criminal - even if such a proceeding has already been commenced or is commenced in the future.

### WHERE TO FILE CORRESPONDENCE

All submissions must be filed with the Forfeiture Counsel, Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, HQs Forfeiture Response, P.O. Box 1475, Quantico, Virginia 22134-1475. Correspondence sent via private delivery must be sent to Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, 2401 Jefferson Davis Highway, Alexandria, Virginia 22301. A PETITION, CLAIM, OR OTHER CORRESPONDENCE WILL BE DEEMED FILED WHEN ACTUALLY RECEIVED BY THE DEA ASSET FORFEITURE SECTION IN ARLINGTON, VIRGINIA. SUBMISSIONS BY FACSIMILE OR OTHER ELECTRONIC MEANS WILL NOT BE ACCEPTED. The Asset Id referenced above should be used with all submissions. Failure to include the Asset ID may cause a delay in processing your submission(s).



**U.S. DEPARTMENT OF JUSTICE**
**DRUG ENFORCEMENT ADMINISTRATION**

| | |
|---|---|
| Asset Id: | 05-DEA-450545 |
| Case Number: | C3-05-2025 |
| Property: | 400 Drums of List I Chemicals (Ephedrine Hydrochloride) |
| Asset Value: | $464,000.00 |
| Seizure Date: | 04/14/05 |
| Seizure Place: | Newark, NJ |
| Owner Name: | Malladi Inc. |
| Seized From: | Malladi Inc. |
| Judicial District: | District of New Jersey |

Malladi Inc.
c/o Eugene Pfifer/Esq.
1700 Pennsylvania Avenue NW
Washington, DC 20006

### NOTICE MAILING DATE: May 9, 2005

### NOTICE OF SEIZURE

The above-described property was seized by Special Agents of the Drug Enforcement Administration (DEA) for forfeiture pursuant to Title 21, United States Code (U.S.C.), Section 881, because the property was used or acquired as a result of a violation of the Controlled Substances Act (Title 21, U.S.C., Sections 801 et seq.). The seizure date and place, as well as other pertinent information regarding the property are listed above.

Pursuant to Title 18, U.S.C., Section 983 and Title 19, U.S.C., Sections 1602-1619, procedures to administratively forfeit this property are underway. You may petition the DEA for return of the property or your interest in the property (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in Federal court. **You should review the following procedures very carefully.**

### TO REQUEST REMISSION OR MITIGATION OF FORFEITURE

If you want to request the remission (**pardon**) or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the DEA within thirty (**30**) days of your receipt of this notice. The petition must include proof of your

interest in the property and state the facts and circumstances which you believe justify remission or mitigation. The regulations governing the petition process are set forth in Title 28, Code of Federal Regulations, Part 9.

### TO CONTEST THE FORFEITURE

In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA by June 13, 2005. The claim need not be made in any particular form (Title 18, U.S.C., Section 983(a)(2)(D)). The claim shall identify the specific property being claimed; state the claimant's interest in such property; and be made under oath, subject to penalty of perjury (Title 18, U.S.C., Section 983(a)(2)(C)). A frivolous claim may subject the claimant to a civil fine in an amount equal to ten (10) percent of the value of the forfeited property, but in no event will the fine be less than $250 or greater than $5,000 (Title 18, U.S.C., Section 983(h)). Upon the filing of a claim under Title 18, U.S.C., Section 983(a), a claimant may request, pursuant to Section 983(f),

release of the seized property during the pendency of the forfeiture proceeding due to hardship. Requests must be sent to the Forfeiture Counsel of the DEA. The following property is not eligible for hardship release: contraband, currency, or other monetary instruments or electronic funds unless the property constitutes the assets of a legitimate business which has been seized; property to be used as evidence of a violation of the law; property, by reason of design or other characteristic, particularly suited for use in illegal activities; and property likely to be used to commit additional criminal acts if returned to the claimant. If you wish to contest the forfeiture of the asset, you must comply with the procedures set forth herein. Your failure to do so will result in the termination of your interest in the asset, and may preclude your contesting the forfeiture of the asset in any judicial proceeding - either civil or criminal - even if such a proceeding has already been commenced or is commenced in the future.

### WHERE TO FILE CORRESPONDENCE

All submissions must be filed with the Forfeiture Counsel, Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, HQs Forfeiture Response, P.O. Box 1475, Quantico, Virginia 22134-1475. Correspondence sent via private delivery must be sent to Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, 2401 Jefferson Davis Highway, Alexandria, Virginia 22301. A PETITION, CLAIM, OR OTHER CORRESPONDENCE WILL BE DEEMED FILED WHEN ACTUALLY RECEIVED BY THE DEA ASSET FORFEITURE SECTION IN ARLINGTON, VIRGINIA. SUBMISSIONS BY FACSIMILE OR OTHER ELECTRONIC MEANS WILL NOT BE ACCEPTED. The Asset Id referenced above should be used with all submissions. Failure to include the Asset ID may cause a delay in processing your submission(s).



**U.S. DEPARTMENT OF JUSTICE**
**DRUG ENFORCEMENT ADMINISTRATION**

| | |
|---|---|
| Asset Id: | 05-DEA-451290 |
| Case Number: | C1-05-0195 |
| Property: | 240 drums of List 1 Chemicals(Pseudoephedrine)Aprox. 7,409kg |
| Asset Value: | $370,450.00 |
| Seizure Date: | 04/27/05 |
| Seizure Place: | Staten Island, NY |
| Owner Name: | Malladi Inc |
| Seized From: | Malladi, Inc. |
| Judicial District: | Eastern District of New York |

Malladi Inc
c/o Eugene Pfifer/Esq.
King and Spalding LLC
1700 Pennsylvania Avenue NW
Washington, DC 20666

**NOTICE MAILING DATE:** June 9, 2005

### NOTICE OF SEIZURE

The above-described property was seized by Special Agents of the Drug Enforcement Administration (DEA) for forfeiture pursuant to Title 21, United States Code (U.S.C.), Section 881, because the property was used or acquired as a result of a violation of the Controlled Substances Act (Title 21, U.S.C., Sections 801 et seq.). The seizure date and place, as well as other pertinent information regarding the property are listed above.

Pursuant to Title 18, U.S.C., Section 983 and Title 19, U.S.C., Sections 1602-1619, procedures to administratively forfeit this property are underway. You may petition the DEA for return of the property or your interest in the property (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in Federal court. **You should review the following procedures very carefully.**

### TO REQUEST REMISSION OR MITIGATION OF FORFEITURE

If you want to request the remission **(pardon)** or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the DEA within thirty **(30)** days of your receipt of this notice. The petition must include proof of your

interest in the property and state the facts and circumstances which you believe justify remission or mitigation. The regulations governing the petition process are set forth in Title 28, Code of Federal Regulations, Part 9.

### TO CONTEST THE FORFEITURE

In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA by July 14, 2005. The claim need not be made in any particular form (Title 18, U.S.C., Section 983(a)(2)(D)). The claim shall identify the specific property being claimed; state the claimant's interest in such property; and be made under oath, subject to penalty of perjury (Title 18, U.S.C., Section 983(a)(2)(C)). A frivolous claim may subject the claimant to a civil fine in an amount equal to ten (10) percent of the value of the forfeited property, but in no event will the fine be less than $250 or greater than $5,000 (Title 18, U.S.C., Section 983(h)). Upon the filing of a claim under Title 18, U.S.C., Section 983(a), a claimant may request, pursuant to Section 983(f),

release of the seized property during the pendency of the forfeiture proceeding due to hardship. Requests must be sent to the Forfeiture Counsel of the DEA. The following property is not eligible for hardship release: contraband, currency, or other monetary instruments or electronic funds unless the property constitutes the assets of a legitimate business which has been seized; property to be used as evidence of a violation of the law; property, by reason of design or other characteristic, particularly suited for use in illegal activities; and property likely to be used to commit additional criminal acts if returned to the claimant. If you wish to contest the forfeiture of the asset, you must comply with the procedures set forth herein. Your failure to do so will result in the termination of your interest in the asset, and may preclude your contesting the forfeiture of the asset in any judicial proceeding - either civil or criminal - even if such a proceeding has already been commenced or is commenced in the future.

### WHERE TO FILE CORRESPONDENCE

All submissions must be filed with the **Forfeiture Counsel, Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, HQs Forfeiture Response, P.O. Box 1475, Quantico, Virginia 22134-1475.** Correspondence sent via private delivery must be sent to Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, 2401 Jefferson Davis Highway, Alexandria, Virginia 22301. A PETITION, CLAIM, OR OTHER CORRESPONDENCE WILL BE DEEMED FILED WHEN ACTUALLY RECEIVED BY THE DEA ASSET FORFEITURE SECTION IN ARLINGTON, VIRGINIA. SUBMISSIONS BY FACSIMILE OR OTHER ELECTRONIC MEANS WILL NOT BE ACCEPTED. The Asset Id referenced above should be used with all submissions. **Failure to include the Asset ID may cause a delay in processing your submission(s).**



**U.S. DEPARTMENT OF JUSTICE**
**DRUG ENFORCEMENT ADMINISTRATION**

| | |
|---|---|
| Asset Id: | 05-DEA-451301 |
| Case Number: | C3-05-2025 |
| Property: | 400 Drums of List I Chemicals (Ephedrine Hydrochloride) |
| Asset Value: | $464,000.00 |
| Seizure Date: | 05/02/05 |
| Seizure Place: | Elizabeth, NJ |
| Owner Name: | Malladi Inc. |
| Seized From: | Malladi, Inc. |
| Judicial District: | District of New Jersey |

Malladi Inc.
c/o Eugene Pfifer/Esq.
1700 Pennsylvania Avenue NW
Washington, DC 20006

### NOTICE MAILING DATE: May 9, 2005

### NOTICE OF SEIZURE

The above-described property was seized by Special Agents of the Drug Enforcement Administration (DEA) for forfeiture pursuant to Title 21, United States Code (U.S.C.), Section 881, because the property was used or acquired as a result of a violation of the Controlled Substances Act (Title 21, U.S.C., Sections 801 et seq.). The seizure date and place, as well as other pertinent information regarding the property are listed above.

Pursuant to Title 18, U.S.C., Section 983 and Title 19, U.S.C., Sections 1602-1619, procedures to administratively forfeit this property are underway. You may petition the DEA for return of the property or your interest in the property (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in Federal court. **You should review the following procedures very carefully.**

### TO REQUEST REMISSION OR MITIGATION OF FORFEITURE

If you want to request the remission (**pardon**) or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the DEA within thirty (**30**) days of your receipt of this notice. The petition must include proof of your

interest in the property and state the facts and circumstances which you believe justify remission or mitigation. The regulations governing the petition process are set forth in Title 28, Code of Federal Regulations, Part 9.

### TO CONTEST THE FORFEITURE

In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA by June 13, 2005. The claim need not be made in any particular form (Title 18, U.S.C., Section 983(a)(2)(D)). The claim shall identify the specific property being claimed; state the claimant's interest in such property; and be made under oath, subject to penalty of perjury (Title 18, U.S.C., Section 983(a)(2)(C)). A frivolous claim may subject the claimant to a civil fine in an amount equal to ten (10) percent of the value of the forfeited property, but in no event will the fine be less than $250 or greater than $5,000 (Title 18, U.S.C., Section 983(h)). Upon the filing of a claim under Title 18, U.S.C., Section 983(a), a claimant may request, pursuant to Section 983(f),

release of the seized property during the pendency of the forfeiture proceeding due to hardship. Requests must be sent to the Forfeiture Counsel of the DEA. The following property is not eligible for hardship release: contraband, currency, or other monetary instruments or electronic funds unless the property constitutes the assets of a legitimate business which has been seized; property to be used as evidence of a violation of the law; property, by reason of design or other characteristic, particularly suited for use in illegal activities; and property likely to be used to commit additional criminal acts if returned to the claimant. If you wish to contest the forfeiture of the asset, you must comply with the procedures set forth herein. Your failure to do so will result in the termination of your interest in the asset, and may preclude your contesting the forfeiture of the asset in any judicial proceeding - either civil or criminal - even if such a proceeding has already been commenced or is commenced in the future.

### WHERE TO FILE CORRESPONDENCE

All submissions must be filed with the Forfeiture Counsel, Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, HQs Forfeiture Response, P.O. Box 1475, Quantico, Virginia 22134-1475. Correspondence sent via private delivery must be sent to Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, 2401 Jefferson Davis Highway, Alexandria, Virginia 22301. A PETITION, CLAIM, OR OTHER CORRESPONDENCE WILL BE DEEMED FILED WHEN ACTUALLY RECEIVED BY THE DEA ASSET FORFEITURE SECTION IN ARLINGTON, VIRGINIA. SUBMISSIONS BY FACSIMILE OR OTHER ELECTRONIC MEANS WILL NOT BE ACCEPTED. The Asset Id referenced above should be used with all submissions. Failure to include the Asset ID may cause a delay in processing your submission(s).

# EXHIBIT 2

# KING & SPALDING LLP

1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC 20006-4706
Fax: 202-626-3737
www.kslaw.com

Eugene M. Pfeifer
Direct Dial: 202-626-2909
gpfeifer@kslaw.com

October 21, 2005

**Via U.S. Mail**

Forfeiture Counsel
Asset Forfeiture Section
Office of Operations Management
Drug Enforcement Administration
HQs Forfeiture Response
P. O. Box 1475
Quantico, VA 22134-1475

**Via U.S. Mail**

Vicki L. Rashid
Forfeiture Counsel
Asset Forfeiture Section
Office of Operations Management
Drug Enforcement Administration
2401 Jefferson Davis Highway
Alexandria, VA 22301

RE:   **Petition of Malladi Drugs and Pharmaceuticals Ltd. and Novus Fine
Chemicals, LLC for Remission or Mitigation of Forfeiture**

To Whom It May Concern:

On behalf of our clients, Malladi Drugs and Pharmaceuticals Ltd., No. 52, (ND)
Jawaharal Nehru Road, Ekkattuthangal, Chennai 600 097, India ("Malladi India"), and its wholly
owned subsidiary Novus Fine Chemicals, LLC, 426 Orchard Street, Carlstadt, NJ 07072
("Novus"), we hereby petition for the remission or mitigation of forfeiture of the 233 Drums of
List 1 Chemicals (Pseudoephedrine and Ephedrine) seized from Malladi Incorporated, 76
National Road, Edison, New Jersey 08818 ("Malladi") on April 8, 2005.  Malladi also is a
wholly owned subsidiary of Malladi India.  **Attachment A** to this letter is the declaration of V.
N. Gopalakrishnan, Chief Executive Officer of Malladi India, attesting to our authority to file
this petition.  *See* **Attachment A, ¶ 3.  Attachment B** to this letter is the declaration of Joseph
V. Fusco, President of Novus, attesting to our authority to file this petition.  *See* **Attachment B,
¶ 3.  Attachment C** to this letter is the declaration of Eugene M. Pfeifer, Counsel for Malladi
India and for Novus, attesting upon information and belief that the information contained herein
is truthful and complete.  *See* **Attachment C, ¶ 4.**

Forfeiture Counsel
October 21, 2005
Page 2

Pursuant to 28 C.F.R. Part 9, the following information is set forth in support of our Petition:

I.    **Identifying Information of Petitioners**
      V.N. Gopalakrishnan
      Chief Executive Officer
      Malladi Drugs and Pharmaceuticals, Ltd.
      No. 52, (ND) Jawaharal Nehru Road
      Ekkattathangal, Chennai
      600 097, India

      Joseph V. Fusco
      Social Security No. *Redacted*
      President
      Novus Fine Chemicals, LLC
      426 Orchard Street
      Carlstadt, NJ  07072

II.   **Identifying Information of Seized Asset**

      Seizing Agency:  Drug Enforcement Administration ("DEA")
      Asset Identifier Number:  05-DEA-450357
      Case Number:  C3-05-2025
      Property Description:  233 Drums of List 1 Chemicals (Pseudoephedrine and Ephedrine)

III.  **Petitioners' Interest in Seized Asset**

      Malladi India is in full compliance with all applicable Indian and United States laws and regulations.  It is regularly engaged in the manufacture of the base and salts of the Active Pharmaceutical Ingredient ("API') Pseudoephedrine and the API Ephedrine.  The 233 drums of ephedrine and pseudoephedrine seized on April 8, 2005 from Malladi at Edison, New Jersey, were manufactured by Malladi India and were imported by Malladi for further distribution to manufacturers of finished dosage form pharmaceuticals.  Malladi India is the sole owner of Malladi and of the seized articles.

IV.   **Rationale for Remission or Mitigation**

      We believe that the facts and circumstances of this case justify complete remission or mitigation of the seized property.  All of the seized drums (Asset Identifier Number 05-DEA-450357) were imported pursuant to established import procedures, *viz.*, Malladi filed completed DEA Form 486 Import Declaration, DEA thereafter issued letters of no objection ("LONos") concerning the then intended end users of the articles to be imported, and the government of India authorized the exportations.  From the period beginning January 1, 2002 to March 31,

Forfeiture Counsel
October 21, 2005
Page 3

2005, Malladi India shipped or caused to be shipped from India to its United States affiliate Malladi the List I chemicals seized on April 8, 2005.

The pseudoephedrine shipments were covered by LONOs identified as bearing LONO numbers 5020587, 5009970, 5018245, 5021882, 5008375, 5024954, 5009780, 0039-02, 0040-02, 0041-02, 5912-02, 5914-02, 5007573 and 2673-01. The ephedrine was covered by LONOs identified as bearing LONO numbers 3921-01 to 3926-01.

On April 6, 2005, DEA officials conducted an administrative inspection of Malladi. During this inspection, the DEA officials itemized, selected, and seized certain Malladi records, including, on information and belief, some records pertaining to the seized pseudoephedrine and ephedrine. On April 6 and again on an April 11 site visit to Malladi, DEA officials expressed reservations about Malladi's recordkeeping procedures. These DEA officials believed that the records were not readily available to fully reconcile Malladi transactions and inventory. On April 11, 2005, in a good faith effort to demonstrate its willingness to comply with DEA regulations, Malladi voluntarily surrendered its List I Registration. As a result, Malladi is no longer able to possess List I Chemicals.

Malladi India and Novus are petitioning DEA for the remission or mitigation of forfeiture of the seized articles of pseudoephedrine and ephedrine. As noted above, Malladi India is the sole owner of the seized articles. There is no evidence that the seized articles are in any way defective, or that they were diverted, counterfeited, or served as a source of supply to Malladi customers not eligible to receive Class I chemicals. Rather, these articles were seized because, in DEA's view, Malladi's records system did not readily permit verification of Malladi's transactions.

DEA concerns underlying the seizure appear to arise from two conditions or practices at Malladi. First, the shipments covered by the cited LONOs were not (for various reasons) delivered in whole or in part to the customer/consignees identified in such LONOs. In most instances, such customer/consignee had either cancelled or altered orders before Malladi could deliver the imported articles. In one instance involving LONO 5007573, Malladi terminated its relationship with the customer/consignee (SICA). Thus, Malladi found itself with and maintained inventories which it used to supply other DEA-sanctioned customers. In short, Malladi supplied only customers covered by contemporaneous LONOs.

Second, as noted above, DEA believed that Malladi records system did not readily permit the tracking of imports, their delivery to the customer/consignees identified in the LONOs associated with the importations, and subsequent shipments to other customers from inventories. Available documentation, organized in a new record-keeping system, demonstrates that all imported articles are accounted for. There has been no theft or loss, and customer/consignees receiving articles from Malladi are recognized by Malladi and DEA in LONOs as not engaged in diversion of List I chemicals for illicit uses and, thus, eligible to receive List 1 chemicals.

Forfeiture Counsel
October 21, 2005
Page 4

      In summary, Malladi India remains the owner of the seized articles, as the parent of Malladi, and it respectfully requests that DEA release the seized articles to Novus, which is lawfully authorized to accept delivery. Novus shall arrange for the export of the seized articles to Malladi India.

      If you have any questions or concerns, please do not hesitate to contact me at (202) 626-2909. In my absence, please contact Ms. Kate Williams at (202) 626-5403. We will appreciate your consideration of this Petition.

Respectfully submitted,

Eugene M. Pfeifer
Kate Williams
Counsel for Malladi India

cc:    V. N. Gopalakrishnan (w/Enc.)
       Joseph V. Fusco (w/Enc.)

# EXHIBIT 3

05-DEA-450 545

# KING & SPALDING LLP

1700 Pennsylvania Avenue, N.W.
Washington, DC 20006-4706
www.kslaw.com

Eugene M. Pfeifer
Direct Dial: (202) 626-2909
Direct Fax: (202) 626-3737
gpfeifer@kslaw.com

May 20, 2005

**VIA COURIER AND U.S. MAIL**



Forfeiture Counsel
Asset Forfeiture Section
Office of Operations Management
Drug Enforcement Administration
HQs Forfeiture Response
P.O. Box 1475
Quantico, VA 22134-1475
          and
Forfeiture Counsel
Asset Forfeiture Section
Office of Operations Management
Drug Enforcement Administration
2401 Jefferson Davis Highway
Alexandria, VA 22301

### RE: NOVUS FINE CHEMICALS, LLC's PETITION FOR REMISSION OR MITIGATION OF FORFEITURE

To Whom It May Concern:

On behalf of our client, Novus Fine Chemicals, LLC, 611 Broad Street (also 426 Orchard Street) Carlstadt, NJ, 07072 ("Novus"), we hereby petition for the remission or mitigation of forfeiture of the **400 Drums of List 1 Chemicals (Ephedrine Hydrochloride)** seized from Malladi Incorporated ("Malladi") on April 14, 2005. **Attachment A** to this letter is the declaration of Joseph V. Fusco, President of Novus, attesting to our authority to file this petition. *See* **Attachment A**, ¶ 4. **Attachment B** to this letter is the declaration of Eugene M. Pfeifer,



Forfeiture Counsel
May 20, 2005
Page 2

Counsel for Novus, attesting upon information and belief that the information contained herein is truthful and complete. *See* **Attachment B, ¶ 4.**

Pursuant to 28 C.F.R. Part 9, the following information is set forth in support of our Petition:

I.     **Identifying Information of Petitioner.**

Joseph V. Fusco

President

*Redacted*

Novus Fine Chemicals, LLC

426 Orchard Street

Carlstadt, NJ  07072

II.     **Identifying Information of Seized Asset**

Seizing Agency:  Drug Enforcement Administration ("DEA")

Asset Identifier Number:  05-DEA-450545

Case Number:  C3-05-2025

Property Description:  400 Drums of List 1 Chemicals (Ephedrine Hydrochloride)

IV.     **Petitioner's Interest in the Seized Asset**

Novus is a registered establishment engaged in the conversion of Ephedrine Hydrochloride to the Active Pharmaceutical Ingredient ("API") Pseudoephedrine Hydrochloride. Novus sells this API to manufacturers of finished dosage form pharmaceuticals, including, among other companies, Sanofi-Aventis, Novartis, and Pfizer.

2005 MAY 24 AM 11: 30 RECEIVED ASSET FORFEITURE SECTION

Forfeiture Counsel
May 20, 2005
Page 3

Novus ordered 20,000.00 kg of Ephedrine Hydrochloride from Malladi, INc., Edison, N.J, 08818 ("Malladi") on January 10, 2005. Copies of Novus' purchase order 003092-00 (January 10, 2005), Malladi DEA Form 486 Import Declaration # DEA/095/04/NOV (January 10, 2005), DEA letter of no objection (February 9, 2005), Malladi Invoice #747 to Novus (March 25, 2005) and the shipment's Bill of Lading # CHN0054768/001 (March 8, 2005) are herewith provided. *See* **Attachment C**. This documentation establishes Novus' ownership of, and entitlement to, the seized articles of Ephedrine Hydrochloride.

## V.    Rationale for Remission or Mitigation

We believe that the facts and circumstances of this case justify complete remission or mitigation of the seized property. On April 6, 2005, DEA officials conducted an administrative inspection of Malladi, the distributor to Novus of the seized Ephedrine Hydrochloride. During this inspection, the DEA officials itemized, selected, and seized certain Malladi records, including, on information and belief, some records pertaining to the seized Ephedrine Hydrochloride.

On April 6 and again on their April 11 site visit to Malladi, DEA officials expressed reservations about Malladi's recordkeeping procedures. Notably, these reservations did not extend to product integrity or safety issues; rather, the DEA officials believed that the organization of the file room and the systems by which documents were maintained and product distributed did not allow records to be made readily available upon request or to reconcile inventory. On April 11, 2005, in a good faith effort to demonstrate its willingness to comply with DEA regulations, Malladi voluntarily surrendered its List I Chemical Privileges. As a

RECEIVED ASSET FORFEITURE SECTION 2005 MAR 24 AM 11:30

Forfeiture Counsel
May 20, 2005
Page 4

result, Malladi is no longer able to receive shipments of List I Chemicals. At the time of the privilege surrender, Novus had two shipments of Ephedrine Hydrochloride *en route* to Malladi. Upon arrival, these shipments, including the one subject to this petition, were promptly seized by DEA due to Malladi's lack of List 1 Chemical Privileges.

Thus, Novus is petitioning DEA for the remission or mitigation of this seized shipment that were *en route* to Malladi. There is no evidence that this product is in any way defective, or that the product was diverted or counterfeited. Rather, this product has been seized only because it was being delivered to a company that surrendered its privileges for the reasons noted above.

In light of the fact that Novus, the owner of the seized product, is in full compliance with both DEA and FDA regulations, and that there are no questions or concerns relating to the quality or integrity of the seized product, we respectfully request that DEA return the seized product to Novus on an expedited basis.

Novus Fine Chemicals is committed to meeting, and where possible, exceeding DEA's requirements concerning the safe handling and distribution of controlled substances. As such, we are more than willing to work with you to address any concerns over this seized product or any other products at issue.

If you have questions or concerns, please do not hesitate to contact me at (202) 626-2909. In my absence, please contact Ms. Kate Williams at (202) 626-5403. Thank you in advance for your consideration of this Petition.

RECEIVED
ASSET FORFEITURE SECTION
2005 MAR 24 AM 11:00

Forfeiture Counsel
May 20, 2005
Page 5

Respectfully submitted,

Eugene M. Pfeifer

Kate A. Williams

Counsel for Novus Fine Chemicals, LLC

cc: Joseph V. Fusco, Pres., Novus Fine Chemicals, LLC

w/ Enclosures

RECEIVED
ASSET FORFEITURE SECTION
2005 MAY 24  AM 11: 30

EXHIBIT 4

# KING & SPALDING LLP

1730 Pennsylvania Avenu, N.W.
Washington, DC 20006-4706
Fax: 202/626-3737
www.kslaw.com

Eugene M. Pfeifer
Direct Dial: 202/626-2909
gpfeifer@kslaw.com

July 12, 2005

**Via U.S. Mail**                        **Via Hand Delivery**

Forfeiture Counsel                        Vicki L. Rashid
Asset Forfeiture Section                  Forfeiture Counsel
Office of Operations Management           Asset Forfeiture Section
Drug Enforcement Administration           Office of Operations Management
HQs Forfeiture Response                   Drug Enforcement Administration
P. O. Box 1475                            2401 Jefferson Davis Highway
Quantico, VA 22134-1475                   Alexandria, VA 22301

RE:   Petition of Malladi Drugs and Pharmaceuticals Ltd. for Remission or
      Mitigation of Forfeiture

To Whom It May Concern:

        On behalf of our client, Malladi Drugs and Pharmaceuticals Ltd., No. 52, (ND) Jawaharal

Nehru Road, Ekkattuthangal, Chennai 600 097, India ("Malladi India"), we hereby petition for

the remission or mitigation of forfeiture of the 240 Drums of List 1 Chemicals (Pseudoephedrine

Hydrochloride ("Pseudoephedrine")) seized from Malladi Incorporated, 76 National Road,

Edison, New Jersey 08818 ("Malladi") on April 27, 2005. Malladi is a wholly owned subsidiary

of Malladi India. **Attachment A** to this letter is the declaration of V. N. Gopalakrishman, Chief

Executive Officer of Malladi India, attesting to our authority to file this petition. *See*

**Attachment A, ¶ 4. Attachment B** to this letter is the declaration of Eugene M. Pfeifer,

Counsel for Malladi, India, attesting upon information and belief that the information contained

herein is truthful and complete. *See* **Attachment B, ¶ 4.**

ATLANTA ▪ HOUSTON ▪ LONDON ▪ NEW YORK ▪ WASHINGTON, D.C.

Forfeiture Counsel
July 12, 2005
Page 2

Pursuant to 28 C.F.R. Part 9, the following information is set forth in support of our

Petition:

I.      **Identifying Information of Petitioner.**

V.N. Gopalakrishman

Chief Executive Officer

Malladi Drugs and Pharmaceuticals, Ltd.

No. 52, (ND) Jawaharal Nehru Road

Ekkattathangal, Chennai

600 097, India

II.     **Identifying Information of Seized Asset**

Seizing Agency:  Drug Enforcement Administration ("DEA")

Asset Identifier Number:  05-DEA-451290

Case Number: CI-05-0195

Property Description: 240 Drums of List 1 Chemicals (Pseudoephedrine Hydrochloride)

III.    **Petitioner's Interest in Seized Asset**

Malladi India is regularly engaged in the manufacture of the Active Pharmaceutical

Ingredient ("API") Pseudoephedrine.  This API is used to manufacture finished dosage form

pharmaceuticals by various companies in the United States, Mexico and elsewhere.

On January 24, 2005, Malladi ordered 3,000 kg. of Pseudoephedrine from GC

Chemic Pharmic Limited, Kutch, Gujarat 370230, India ("Chemie Pharmie").  This

Pseudoephedrine was manufactured by Malladi India; it was provided to Chemie Pharmie, an

authorized API distributor of Malladi India.  These 3,000 kg. constitute half of the seized

Pseudoephedrine.  Documents pertinent to these 3,000 kg. include Malladi Purchase Order 2555

Forfeiture Counsel
July 12, 2005
Page 3

2005 JUL 13 PM 4: 20

(January 24, 2005), Malladi DEA Form 486 Import Declaration # DEA/080/04/ MEG/MEX,

DEA Letter of No Objection 5022673 (January 21, 2005), Chemie Pharmie Invoice # 018/04-05

(March 1, 2005), and Bill of Lading # BOM0085746/001 (March 12, 2005), which includes

these 3,000 kg. among the 6,000 kg. covered in the Bill of Lading. See Attachment C.

    The other 3,000 of the total 6,000 kg. of Pseudoephedrine seized also was manufactured

by Malladi India, also was ordered by Malladi from Chemie Pharmie, and also was shipped by

Chemie Pharmie to Malladi. Documents pertinent to these 3,000 kg. include Malladi Purchase

Order 2554 (January 24, 2005), Malladi DEA Form 486 Import Declaration # DEA/075/04/

MEG/MEX, DEA Letter of No Objection 5022672 (January 21, 2005), Chemie Pharmie Invoice

# 017/04-05 to Malladi (March 1, 2005), and Bill of Lading # BOM0085746/001 (March 12,

2005), which includes these 3,000 kg. among the 6,000 kg. identified. See Attachment D.

    Chemie Pharmie is indebted to Malladi India in an amount incorporating the value of the

seized Pseudoephedrine, for which Malladi India has not been paid and for which Malladi has

not made payment to Chemie Pharmie as a consequence of the seizure. Malladi India retains

ownership in, and entitlement to, the seized Pseudoephedrine.

    The seized importations of these 6,000 kg. of Pseudoephedrine were intended to replace

inventory maintained at Malladi, which inventory had been depleted by prior authorized

shipments to Megafarma, S.A., Narcisco Mendoza Nr 15, Col. Manual Avila Comacho, Mexico

D.F., Mexico, 11610 ("Megafarma"), the authorized Mexican distributor of API for Malladi

India and Malladi. Specifically, on November 24, 2004, Malladi filed DEA Form 486 Export

Declaration # DEA/039/04/EXP/MEG/MEX for 3,000 kg. of Pseudoephedrine, thereafter

received DEA's Letter of Objection 5022673 (January 21, 2005), and on or about March 25,

2005 shipped these 3,000 kg. of Pseudoephedrine to Megapharma. (e.g., Malladi Invoice # 704.

Forfeiture Counsel
July 12, 2005
Page 4

January 28, 2005; Razor Enterprise [the freight forwarder] Invoice #AE1427, March 24, 2005

and Air Waybill #865-02723604). See Attachment E. Similarly, on November 15, 2004,

Malladi filed DEA Form 486 Export Declaration # DEA/036/04/EXP/MEG/MEX for the other

3,000 kg. of Pseudoephedrine, thereafter received DEA's Letter of No Objection 5022672

(January 21, 2005), and on or about February 17, 2005 shipped these 3,000 kg. of

Pseudoephedrine to Megafarma. (e.g., Malladi Invoice # 683, January 7, 2005; Razor Enterprise

Inc. Invoice #AE1338, February 17, 2005; and Air Waybill #865-02723582). See Attachment

F. Note that the shipment dates on the respective Malladi invoices are anticipated, not actual,

transportation dates; thus, the freight forwarder invoice dates of shipments are referenced.

V.     Rationale for Remission or Mitigation

        We believe that the facts and circumstances of this case justify complete remission or

mitigation of the seized property. On April 6, 2005, DEA officials conducted an administrative

inspection of Malladi, the consignee of the seized Pseudoephedrine. During this inspection, the

DEA officials itemized, selected, and seized certain Malladi records, including, on information

and belief, some records pertaining to the seized Pseudoephedrine.

        On April 6 and again on April 11 site visit to Malladi, DEA officials expressed

reservations about Malladi's recordkeeping procedures. Notably, these reservations did not

extend to product integrity or safety issues; rather, the DEA officials believed that the

organization of the file room and the systems by which documents were maintained and product

distributed did not allow records to be made readily available upon request or to reconcile

inventory. On April 11, 2005, in a good faith effort to demonstrate its willingness to comply

with DEA regulations, Malladi voluntarily surrendered its List I Chemical Privileges. As a

result, Malladi is no longer able to receive shipments of List I Chemicals. At the time of the

Forfeiture Counsel
July 12, 2005
Page 5

2005 JUL 13  PM 4: 20

privilege surrender, the seized Pseudoephedrine was *en route* to Malladi.  Upon arrival, the

Pseudoephedrine subject to this petition was seized by DEA due to Malladi's lack of List I

Chemical Privileges.

Thus, Malladi India is petitioning DEA for the remission or mitigation of this seized

shipment.  There is no evidence that this product is in any way defective, or that the product was

diverted or counterfeited.  Rather, this product has been seized only because it was being

delivered to a company that surrendered its privileges for the reasons noted above.

In light of the fact that Malladi India, the manufacturer and owner of the seized product,

is in full compliance with all applicable Indian and United States laws and regulations, and that

there are no questions or concerns relating to the quality or integrity of the seized product, we

respectfully request that DEA release the seized product to Malladi India or such third party as

Malladi India and DEA agree is lawfully authorized to accept delivery.

Malladi India is committed to meeting, and where possible, exceeding DEA's

requirements concerning the safe handling and distribution of controlled substances.  As such,

Malladi India is willing to work with DEA to address any concerns over this seized product or

any other products at issue.

If you have any questions or concerns, please do not hesitate to contact me at (202) 626-

2909.  In my absence, please contact Ms. Kate Williams at (202) 626-5403.  Thank you in

advance for your consideration of this Petition.

Respectfully submitted,

Eugene M. Pfeifer
Kate Williams
Counsel for Malladi India

cc:  V. N. Gopalakrishman (w/Enc.)

# EXHIBIT 5

# KING & SPALDING LLP

1700 Pennsylvania Avenue, N.W.
Washington, DC 20006-4706
www.kslaw.com

Eugene M. Pfeifer
Direct Dial: (202) 626-2909
Direct Fax: (202) 626-3737
gpfeifer@kslaw.com

May 20, 2005

**VIA COURIER AND U.S. MAIL**

Forfeiture Counsel
Asset Forfeiture Section
Office of Operations Management
Drug Enforcement Administration
HQs Forfeiture Response
P.O. Box 1475
Quantico, VA 22134-1475
        and
Forfeiture Counsel
Asset Forfeiture Section
Office of Operations Management
Drug Enforcement Administration
2401 Jefferson Davis Highway
Alexandria, VA 22301

RECEIVED ASSET FORFEITURE SECTION
2005 MAY 24 AM 11:29

**RE: NOVUS FINE CHEMICALS, LLC's PETITION FOR REMISSION OR**

**MITIGATION OF FORFEITURE**

To Whom It May Concern:

On behalf of our client, Novus Fine Chemicals, LLC, 611 Broad Street (also 426 Orchard Street) Carlstadt, NJ, 07072 ("Novus"), we hereby petition for the remission or mitigation of forfeiture of the **400 Drums of List 1 Chemicals (Ephedrine Hydrochloride)** seized from Malladi Incorporated ("Malladi") on May 2, 2005. **Attachment A** to this letter is the declaration of Joseph V. Fusco, President of Novus, attesting to our authority to file this petition. *See* **Attachment A, ¶ 4. Attachment B** to this letter is the declaration of Eugene M. Pfeifer, Counsel for Novus, attesting upon information and belief that the information contained herein is truthful and complete. *See* **Attachment B, ¶ 4.**

ATLANTA • HOUSTON • LONDON • NEW YORK • WASHINGTON, D.C.

Forfeiture Counsel
May 20, 2005
Page 2

Pursuant to 28 C.F.R. Part 9, the following information is set forth in support of our

Petition:

I.     **Identifying Information of Petitioner.**

Joseph V. Fusco

President

Soc. Security No. *Redacted*

Novus Fine Chemicals, LLC

426 Orchard Street

Carlstadt, NJ  07072

II.    **Identifying Information of Seized Asset**

Seizing Agency:  Drug Enforcement Administration ("DEA")

Asset Identifier Number:  05-DEA-451301

Case Number:  C3-05-2025

Property Description:  400 Drums of List 1 Chemicals (Ephedrine Hydrochloride)

IV.    **Petitioner's Interest in the Seized Asset**

Novus is a registered establishment engaged in the conversion of Ephedrine

Hydrochloride to the Active Pharmaceutical Ingredient ("API") Pseudoephedrine Hydrochloride.

Novus sells this API to manufacturers of finished dosage form pharmaceuticals, including,

among other companies, Sanofi-Aventis, Novartis, and Pfizer.

Novus ordered 20,000.00 kg of Ephedrine Hydrochloride from Malladi, Inc., Edison, N.J,

08818 ("Malladi") on January 10, 2005.  Copies of Novus' purchase order 003094-00 (January

10, 2005), Malladi DEA Form 486 Import Declaration # DEA/096/04/NOV (January 10, 2005),

Forfeiture Counsel
May 20, 2005
Page 3

DEA letter of no objection (February 17, 2005), Malladi Invoice #748 to Novus (March 25, 2005) and the shipment's Bill of Lading # CHN0055520/001 (March 23, 2005) are herewith provided. *See* **Attachment C**. This documentation establishes Novus' ownership of, and entitlement to, the seized articles of Ephedrine Hydrochloride.

## V.    Rationale for Remission or Mitigation

We believe that the facts and circumstances of this case justify complete remission or mitigation of the seized property. On April 6, 2005, DEA officials conducted an administrative inspection of Malladi, the distributor to Novus of the seized Ephedrine Hydrochloride. During this inspection, the DEA officials itemized, selected, and seized certain Malladi records, including, on information and belief, some records pertaining to the seized Ephedrine Hydrochloride.

On April 6 and again on their April 11 site visit to Malladi, DEA officials expressed reservations about Malladi's recordkeeping procedures. Notably, these reservations did not extend to product integrity or safety issues; rather, the DEA officials believed that the organization of the file room and the systems by which documents were maintained and product distributed did not allow records to be made readily available upon request or to reconcile inventory. On April 11, 2005, in a good faith effort to demonstrate its willingness to comply with DEA regulations, Malladi voluntarily surrendered its List I Chemical Privileges. As a result, Malladi is no longer able to receive shipments of List I Chemicals. At the time of the privilege surrender, Novus had two shipments of Ephedrine Hydrochloride *en route* to Malladi.

RECEIVED ASSET FORFEITURE SECTION. 2005 MAY 24 AM 8:29

Forfeiture Counsel
May 20, 2005
Page 4

Upon arrival, these shipments, including the one subject to this petition, were promptly seized by DEA due to Malladi's lack of List 1 Chemical Privileges.

Thus, Novus is petitioning DEA for the remission or mitigation of this seized shipment that were *en route* to Malladi. There is no evidence that this product is in any way defective, or that the product was diverted or counterfeited. Rather, this product has been seized only because it was being delivered to a company that surrendered its privileges for the reasons noted above.

In light of the fact that Novus, the owner of the seized product, is in full compliance with both DEA and FDA regulations, and that there are no questions or concerns relating to the quality or integrity of the seized product, we respectfully request that DEA return the seized product to Novus on an expedited basis.

Novus Fine Chemicals is committed to meeting, and where possible, exceeding DEA's requirements concerning the safe handling and distribution of controlled substances. As such, we are more than willing to work with you to address any concerns over this seized product or any other products at issue.

If you have questions or concerns, please do not hesitate to contact me at (202) 626-2909. In my absence, please contact Ms. Kate Williams at (202) 626-5403. Thank you in advance for your consideration of this Petition.

RECEIVED
ASSET FORFEITURE SECTION
2005 MAR 24  AM 11:09

Forfeiture Counsel
May 20, 2005
Page 5

Respectfully submitted,

*Kate Williams*

Eugene M. Pfeifer

Kate A. Williams

Counsel for Novus Fine Chemicals, LLC

RECEIVED
2005 MAY 24  AM 11:29
ASSET FORFEITURE SECTION

cc: Joseph V. Fusco, Pres., Novus Fine Chemicals, LLC

w/ Enclosures

# EXHIBIT 6

# KING & SPALDING LLP

1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC 20006-4706
Fax: 202-626-3737
www.kslaw.com

Eugene M. Pfeifer
Direct Dial: 202-626-2909
gpfeifer@kslaw.com

November 18, 2005

RECEIVED
ASSET FORFEITURE SECTION
2005 NOV 21   PM 2: 29

**Via Courier**

Forfeiture Counsel
Asset Forfeiture Section
Office of Operations Management
Drug Enforcement Administration
HQs Forfeiture Response
2500 Investigation Parkway
Quantico, VA 22135

**Via Courier**

Vicki L. Rashid
Senior Attorney
Asset Forfeiture Section
Office of Operations Management
Drug Enforcement Administration
2401 Jefferson Davis Highway
Alexandria, VA 22301

RE:   **Petition for Reconsideration of Novus Fine Chemicals, LLC's Petition for Remission or Mitigation of Forfeiture, Asset ID Nos. 05-DEA-450545 & 05-DEA-451301 (Case No. C3-05-2025)**

To Whom It May Concern:

On behalf of our client, Novus Fine Chemicals, LLC, 426 Orchard Street, Carlstadt, NJ 07072 ("Novus"), a wholly owned subsidiary of Malladi Drugs and Pharmaceuticals Ltd., No. 52, (ND) Jawaharal Nehru Road, Ekkattuthangal, Chennai 600 097, India ("Malladi DPL"), we hereby petition for reconsideration of the Drug Enforcement Administration's October 31, 2005 decision regarding Novus' petitions for the remission or mitigation of forfeiture of the 400 drums of List I Chemicals (Ephedrine Hydrochloride) seized from Malladi Incorporated, 76 National Road, Edison, New Jersey 08818 ("Malladi Inc.") on April 14, 2005 and the 400 drums of List 1 Chemicals (Ephedrine Hydrochloride) seized from Malladi Inc. on May 2, 2005. Malladi Inc. is also a wholly owned subsidiary of Malladi DPL. **Attachment A** to this letter is the declaration of V.N. Gopalakrishnan, Chief Executive Officer of Malladi DPL, attesting to our authority to file this petition for reconsideration as a wholly owned subsidiary of Malladi DPL with an ownership interest equal to that of the parent company. *See* **Attachment A, ¶¶ 2-4.** **Attachment B**, the declaration of Joseph V. Fusco, President of Novus, also confirms Novus'

Forfeiture Counsel
November 18, 2005
Page 2

authority to file this Petition. *See* **Attachment B, ¶¶ 6-8**. In addition, **Attachment B** details the substantial losses that Novus has suffered as a result of being denied access to the seized Ephedrine Hydrochloride. *See* id., **¶¶ 4-5**. **Attachment C** is a letter evidencing the good faith attempt by counsel for Malladi DPL (acting on behalf of Malladi Inc. and Novus) to cooperate with DEA in avoiding shipment of List I Chemicals to Malladi Inc. after Malladi Inc.'s voluntary surrender of its List I registration but before any seizures had occurred.

We reiterate the following identification information from our original petitions:

I.    **IDENTIFYING INFORMATION OF PETITIONER**

Joseph V. Fusco
Social Security No. *Redacted*
President
Novus Fine Chemicals, LLC
426 Orchard Street
Carlstadt, NJ 07072

II.    **IDENTIFYING INFORMATION OF SEIZED ASSETS**

Seizing Agency: Drug Enforcement Administration ("DEA")
Asset Identifier Numbers: 05-DEA-450545 & 05-DEA-451301
Case Number: C3-05-2025
Property Description: 800 Drums of List 1 Chemicals (Ephedrine Hydrochloride)

III.    **RESTATEMENT OF FACTS**

We continue to assert that the facts and circumstances of this case justify complete remission or mitigation of the seized property. No claim has been made by DEA in this matter that either Petitioner Novus or its parent company Malladi DPL has committed any violation of DEA regulations. Each of these entities continues to handle List I chemicals; Malladi DPL remains eligible to import such articles into the United States, and Novus continues to maintain a List I registration. Additionally, there is no evidence that the seized articles are in any way defective, or that they were diverted, counterfeited, or served as a source of supply to Malladi Inc. customers not eligible to receive List I chemicals. Because Novus is a compliant corporate entity with ownership rights to the seized property that have been sanctioned by Malladi DPL (*see* **Attachment A, ¶ 4; Attachment B, ¶¶ 6-8**), and the goods themselves are in compliance with applicable regulations, Novus' petitions for remission or mitigation of the seized goods should be granted.

On April 6, 2005 and April 11, 2005, DEA officials conducted an administrative inspection of Malladi Inc., expressing reservations about Malladi Inc.'s recordkeeping procedures. On April 11, 2005, in a good faith effort to demonstrate its willingness to comply with DEA regulations, Malladi Inc. voluntarily surrendered its List I Registration. As a result,

Forfeiture Counsel
November 18, 2005
Page 3

Malladi Inc. was no longer able to possess List I Chemicals. List I articles then *en route* to
Malladi Inc., including the 800 drums of Ephedrine Hydrochloride at issue here, were
subsequently seized by DEA because Malladi Inc. had voluntarily surrendered its List I
registration and was no longer eligible to accept the imminent deliveries of, and to possess, these
Class I Chemicals. In discussions with DEA on April 14, 2005, and as memorialized in
correspondence later that same day (*see* **Attachment C**), counsel attempted to secure the
delivery of the first shipment of 400 drums of Ephedrine Hydrochloride directly to Novus,
thereby eliminating Malladi Inc. from the delivery process and rendering subsequent seizures
unnecessary. These attempts were not successful, and the goods were seized at the dock.

Despite concerns over Malladi Inc.'s recordkeeping practices, however, all of the seized
drums (Asset Identifier Nos. 05-DEA-450545 & 05-DEA-451301) were imported pursuant to
established import procedures, *viz.*, Malladi Inc. filed completed DEA Form 486 Import
Declarations, DEA thereafter issued letters of no objection ("LONOs") concerning the articles to
be imported, and the government of India authorized the exportations by Malladi DPL.

Furthermore, it is only Malladi Inc. that DEA has identified as lacking authority to
possess List I Chemicals, and this lack of authority resulted from the voluntary surrender of
Malladi Inc.'s DEA List I registration on April 11, 2005, based on concerns orally expressed by
DEA about Malladi Inc.'s recordkeeping practices. Neither Malladi DPL (the original sender),
nor Novus (the end user), has been cited for violations of any kind from before the time of the
seizures through the present. In fact, Malladi DPL, a company that regularly engages in the
manufacture of the Active Pharmaceutical Ingredient ("API") Ephedrine Hydrochloride, is in full
compliance with all applicable Indian and United States laws and regulations. Similarly,
Petitioner Novus is in full compliance with all applicable United States laws and regulations,
including both DEA and FDA regulations. Novus has been and remains qualified to import,
handle, and distribute List I Chemicals.

IV.    SUPPLEMENTED RATIONALE FOR REMISSION OR MITIGATION

Notwithstanding this information, on October 31, 2005 (receipt date November 4, 2005),
DEA denied Novus' petitions for remission or mitigation regarding the above-referenced 800
drums of Ephedrine Hydrochloride. In its letter denying the petitions, DEA explained its
reasoning for its denial as follows: "Although Malladi Inc. entered into purchase orders with
Novus, Novus had not paid for either of these shipments of chemicals. Therefore, Novus does
not have a recognizable ownership interest in the chemicals." DEA's conclusion that Novus
lacks an ownership interest is incorrect. Because Malladi DPL is the parent company of Novus,
and has authorized Novus to stand in its shoes, Novus maintains a derivative ownership interest
in the seized goods. Both the Chief Executive Officer of Malladi DPL and the President of
Novus have verified and attested to that fact here (*see* **Attachment A, ¶ 4; Attachment B, ¶¶ 6-
8**). Novus (as well as Malladi DPL) is an innocent victim in these seizures. Malladi DPL and
Novus did not engage in any violative behavior, were not involved in the Malladi Inc. matters
that appear to have caused DEA to ask that Malladi Inc. voluntarily surrender its List I

2005 NOV 21  PM

RECEIVED
ASSET FORFEITURE SECTION

Forfeiture Counsel
November 18, 2005
Page 4

registration, and did not even *know* of DEA concerns about Malladi Inc.'s practices when Novus ordered, and Malladi DPL shipped, the seized Ephedrine Hydrochloride.

## A.    Novus Maintains Ownership Rights Equal to Those of Malladi DPL

Novus maintains a legally cognizable interest in the seized property at issue here. The regulations state that a petitioner must have "a valid, good faith, and legally cognizable interest in the seized property as owner or lienholder . . . ." 28 C.F.R. § 9.5(a)(1)(i). An "owner" is defined as "the person in whom primary title is vested or whose interest is manifested by the actual and beneficial use of the property, even though the title is vested in another." Id. at § 9.2(l). Novus fits within the scope of this definition.

Novus' ownership and title rights are equivalent to those of Malladi DPL. Malladi DPL manufactured and possessed title to the above-referenced seized chemicals. On January 5, 2005, Malladi DPL entered into a contract with Joseph V. Fusco and Amol A. Kulkarni, owners of all the outstanding membership interest of Novus, for the purchase of all Novus stock. When this deal was closed on April 14, 2005, Malladi DPL became the sole shareholder of Novus, and Novus became a wholly owned subsidiary of Malladi DPL.

By definition, a parent corporation "owns" a wholly owned subsidiary and has the general authority or ability to control the subsidiary through this ownership. *See, e.g.*, United States v. Kayser-Roth Corp., 910 F.2d 24, 27 (1st Cir. 1990). As part of this general authority over a subsidiary, a parent corporation can require or allow a wholly owned subsidiary to stand in its shoes for purposes of asserting an ownership right to corporate goods. *Cf.* N.J. Stat. § 12A:2-210 (2005); Lerman v. Joyce Int'l, Inc., 10 F.3d 106 (3d. Cir. 1993) (allowing one corporate entity to claim rights of another in breach of contract suit). Malladi DPL has done just that.

Prior to Novus' May 20, 2005 filing of petitions for remission or mitigation of the Ephedrine Hydrochloride at issue here, the management from both Malladi DPL and Novus discussed which entity should assert ownership rights and file the petitions. At that time, individuals from both entities agreed that Novus should file the petitions as Novus was the entity experiencing significant business consequences due to the seizures and the goods were already in the United States destined for ultimate delivery to Novus (*see* **Attachment B, ¶ 6**). To elect otherwise would have been a poor business decision. If Malladi DPL had petitioned to secure return of the seized articles, Malladi DPL may have been required to arrange for export of the goods to India, thereby further delaying possession and beneficial use of the material by Novus.

In light of this agreement between the parent company and its subsidiary, Novus was – and is – authorized to claim the same ownership/title rights that can be claimed by Malladi DPL with regard to the 800 drums of List I Chemicals (Ephedrine Hydrochloride) that were seized on April 14, 2005 and May 2, 2005. As evidence of Malladi DPL's agreement with Novus solidifying Novus' ownership rights to the goods at issue, both V.N. Gopalakrishnan, Chief Executive Officer of Malladi DPL, and Joseph Fusco, President of Novus, have prepared

Forfeiture Counsel
November 18, 2005
Page 5

declarations attesting to the agreement (*see* **Attachment A, ¶ 4; Attachment B, ¶¶ 6-8**). Additionally, as DEA is aware, Malladi DPL previously has asserted ownership rights with regard to other goods and has specifically requested that the Administration release them to Novus as a first step in their return to India.

### B.    Novus Is an Innocent Victim in These Seizure Actions

Applicable regulations recognize that innocent victims of a seizure should be afforded recourse under the petition provisions of 28 C.F.R. § 9.3. A "victim" can be considered an "owner" of the seized goods under 28 C.F.R. § 9.2(v), and 28 C.F.R. § 9.5(a)(1)(ii) allows Ruling Officials to grant petitions for remission or mitigation if a petitioner with a legally cognizable interest establishes innocence. The significant losses Novus has suffered in this matter (*see* **Attachment B, ¶¶ 4-5**) place it squarely within the purview of these provisions designed to alleviate harm to innocent third parties.

A "victim" is defined as "a person who has incurred a pecuniary loss as a direct result of the commission of the offense underlying a forfeiture." Id. at § 9.2(v). Novus fits within that definition. Novus is in the business of converting Ephedrine Hydrochloride to Pseudoephedrine for sale to pharmaceutical manufacturers that need this ingredient for the medications they produce. Novus depends on shipments of Ephedrine Hydrochloride from Malladi DPL in order to serve its regular and reputable customers, *e.g.*, Aventis, Cardinal Health, GlaxoSmithKline, King, Pfizer, and Schering-Plough.

When Novus became unable to secure access to the shipments of the Ephedrine Hydrochloride that are the subject of this Petition, Novus was left without the materials critical to the company's livelihood. While Novus was able to continue producing Pseudoephedrine at a greatly reduced rate immediately after the seizures, the company could not acquire replacement raw materials in a timely and cost-effective manner. As a result, Novus was forced to completely shut down its processing facility in July and August 2005. *See* **Attachment B, ¶ 4.** Novus has been denied access to materials valued at $1,000,000, and the shutdown and lack of production has cost Novus $479,583 in unabsorbed facility expenses. Thus, in total, the company has been divested of nearly $1.5 million as a result of the seizures. *See* **Attachment B, ¶ 5.**

As noted above, DEA has <u>not</u> accused Novus or Malladi DPL of a single violation related to, or unrelated to, the seized Ephedrine Hydrochloride. Novus is in compliance with all applicable United States laws and regulations and can legally import List I Chemicals; Malladi DPL is in full compliance with all applicable Indian and United States laws. Novus was not involved in the development or maintenance of Malladi Inc.'s recordkeeping system, which is the subject of the concerns leading to the surrender of Malladi Inc.'s List I registration and the seizures. Nor for that matter was Malladi DPL. While Novus and Malladi Inc. are subsidiaries of the same parent company, these two entities established and maintained separate procedures, quality systems, and employees. Additionally, neither Novus nor Malladi DPL had knowledge

2005 NOV 18 PM 1:59 RECEIVED ASSET FORFEITURE SECTION

Forfeiture Counsel
November 18, 2005
Page 6

of any potential problems with Malladi Inc.'s recordkeeping procedures, or any other reason to foresee import impediments to the shipments of chemicals from Malladi DPL.

Furthermore, upon learning of DEA's concern about Malladi Inc.'s recordkeeping practices and Malladi Inc.'s subsequent surrender of its List I registration, counsel for Malladi DPL (acting on behalf of Malladi Inc. and Novus) made a good faith attempt to redirect the articles already *en route* to Malladi Inc. On April 14, 2005, counsel for these entities contacted DEA officials, attempting to secure the delivery of the first shipment of 400 drums of Ephedrine Hydrochloride directly to Novus. *See* **Attachment C**. Eliminating Malladi Inc. from the delivery process would render the seizures unnecessary while providing the goods to the same end user originally anticipated. These attempts were not successful, and ultimately, as a result of the unexpected events occurring with Malladi Inc., Novus was denied access to the goods that form the foundation of its business.

Simply put, Novus (as well as Malladi DPL) is being harmed although the company has done nothing wrong. In light of Novus' and Malladi DPL's consistent compliance and repeated good faith attempts to work with the Administration, we respectfully request that DEA grant these petitions for remission or mitigation of the forfeited property.

## V.    RELEASE OF THE SEIZED GOODS TO NOVUS

Novus and Malladi DPL are prepared to name Malladi DPL as petitioner if that novation will facilitate release of the seized goods to Novus. Although Novus and Malladi DPL believe that Novus has a perfect right to stand in Malladi DPL's shoes as a petitioner, they intuit that DEA may be reluctant to recognize that right. The decision to advance Novus as petitioner in the first instance was based on pragmatism alone – Malladi DPL wanted its subsidiary to have the material needed for its business and concluded that its subsidiary could claim ownership rights in the seized goods. If that presents a perceived problem, Novus and Malladi DPL are prepared to amend the petitions *nunc pro tunc* to identify Novus as delegated petitioner on behalf of Malladi DPL or some description to similar effect, or to substitute Malladi DPL as petitioner on behalf of Novus. The objective of Novus and its parent is to secure prompt release of the seized articles to Novus, which can use the articles to benefit itself and its parent. Petitioner identity is not a matter of concern to either entity.

If you have any questions or concerns, please do not hesitate to contact me at (202) 626-2909. In my absence, please contact Zack Harmon at (202) 626-5594. We will appreciate your consideration of this Petition.

RECEIVED
ASSET FORFEITURE SECTION
2005 NOV 21  PM 2:29

Forfeiture Counsel
November 18, 2005
Page 7

Respectfully submitted,

Eugene M. Pfeifer
Zachary J. Harmon
Counsel for Novus Fine Chemicals, LLC
and Malladi Drugs and Pharmaceuticals Ltd.

cc:     V.N. Gopalakrishnan (w/Enc.)
        Joseph V. Fusco (w/Enc.)

RECEIVED
ASSET FORFEITURE SECTION
2005 NOV 21  PM 2: 29

# EXHIBIT 7



U.S. Department of Justice

Office of the Deputy Attorney General

DIRECTIVE NO. 91-2

The Deputy Attorney General                    *Washington, D.C. 20530*

February 26, 1991

## MEMORANDUM

TO:        All United States Attorneys
           Assistant Attorney General, Criminal Division
           Director, Federal Bureau of Investigation
           Administrator, Drug Enforcement Administration
           Commissioner, Immigration and Naturalization Service
           Director, U.S. Marshals Service
           Chief Postal Inspector, Postal Inspection Service
           Commissioner, Internal Revenue Service
           Director, Bureau of Alcohol, Tobacco and Firearms

FROM:      William P. Barr
           Deputy Attorney General

SUBJECT:   Increased Administrative Forfeiture Caps

        Since 1984 virtually all forfeitures of properties
valued over $100,000 have been conducted judicially. 1/  On
August 20, 1990, the President signed Public Law 101-382 which
authorizes the administrative forfeiture of cash and monetary
instruments without regard to value and other property up to a
value of $500,000.

        The legislative history of this new law makes clear
that Congress: (1) sought to increase the speed and efficiency of
uncontested forfeiture actions, and (2) has confidence in the
notice and other safeguards built into administrative forfeiture
laws.  Accordingly, the Attorney General has promulgated revised
asset forfeiture regulations to implement the higher statutory
ceilings for administrative forfeitures.

        To ensure that United States Attorneys can continue to
be effective in their role as Chairmen of the Law Enforcement
Coordinating Committees in our various judicial districts, one

_____

1/  Conveyances used to transport controlled substances have been
administratively forfeitable without regard to value.

DIRECTIVE NO. 2
pg. 1/2 - 1991

- 2 -

change is being made in the processing of equitable sharing
payments in administrative cases, as follows:

     If sharing is requested in an administrative forfeiture
case involving property valued in excess of $100,000, the seizing
agency shall, prior to final agency action, provide the
appropriate United States Attorney's Office (USAO) with a copy of
the completed DAG-71 and the DAG-72 reflecting the agency's
proposed sharing transfer.  The USAO shall review the proposed
sharing decision and complete the recommendation section
providing the seizing agency with a sharing recommendation.  If
no USAO recommendation is received within ten days, concurrence
with the agency's proposed action will be assumed.

     Let me take this opportunity to re-iterate several
existing policies relating to administrative forfeitures:

     1. Prior Judicial Approval of Seizures.  In all cases
involving real property and wherever practicable in cases
involving personal property (including cash and monetary
instruments), seizing agents shall, in consultation with the
appropriate United States Attorney's Office (USAO), secure a
federal seizure warrant or a federal warrant of arrest in rem.

     2. Forfeiture of Real Property.  All forfeitures of
real property or interests therein shall be conducted judicially.

     3. Aggregation of Seizures.  Where several items of
property are subject to forfeiture (a) under the same statutory
authority, (b) on the same factual basis, (c) have a common
owner, and (d) have a combined appraised value of over $500,000
or include an item of real property, all such items shall be
aggregated and forfeited judicially.  This rule shall not apply
if the seizures occur over a period of weeks with the result that
aggregation would substantially delay the forfeiture.

     I am confident that the increased administrative
forfeiture authority will be exercised with utmost care and
prudence.  We will be monitoring implementation closely.  Any
questions regarding this memorandum or other forfeiture issues
should be directed to the Executive Office for Asset Forfeiture,
Office of the Deputy Attorney General.

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

_____
                                        )
MALLADI DRUGS &                         )
        PHARMACEUTICALS, LTD., et al.)
                                        )
                v.                      )        C.A. 1:07-cv-1069 (RMC)
                                        )
KAREN TANDY,                            )
in her official capacity as Administrator,  )
of the Drug Enforcement Administration. )
_____)

**O R D E R**

Having considered defendant's Motion To Dismiss Or, In The Alternative, For Summary

Judgment, the Memorandum supporting the Motion, plaintiffs' Memorandum in opposition

thereto, and defendant's Reply Memorandum, it is hereby ORDERED that the Motion is

GRANTED and the Complaint is DISMISSED with prejudice.


_____        _____
Date                            The Honorable Rosemary M. Collyer
                                United States District Judge