IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

_____
                                                    )
MALLADI DRUGS &                                     )
        PHARMACEUTICALS, LTD., et al.)
                                                    )
                            Plaintiffs,             )
                                                    )
                    v.                              )        C.A. 1:07-cv-1069 (RMC)
                                                    )
KAREN TANDY,                                        )
in her official capacity as Administrator,          )
of the Drug Enforcement Administration.             )
                                                    )
                            Defendant.              )
_____)

## DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

For the reasons stated in the accompanying memorandum, defendant Karen Tandy, in her

official capacity as Administrator of the Drug Enforcement Administration, hereby moves the

Court to dismiss the First Amended Complaint for Declaratory and Injunctive Relief for failure

to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), Fed. R. Civ. P.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ARTHUR R. GOLDBERG
Assistant Branch Director

 /s/ Ronald J. Wiltsie
RONALD J. WILTSIE
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044
Tel: (202) 307-1401
Fax: (202) 616-8470

October 9, 2007                 Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

_____

MALLADI DRUGS &                                )
     PHARMACEUTICALS, LTD., et al.)
                           )
             Plaintiffs,    )
          v.                      )    C.A. 1:07-cv-1069 (RMC)
                           )
KAREN TANDY,                                   )
in her official capacity as Administrator,     )
of the Drug Enforcement Administration.        )
                           )
             Defendant.      )
_____

**MEMORANDUM SUPPORTING DEFENDANT'S MOTION TO DISMISS
THE AMENDED COMPLAINT**

**INTRODUCTION**

After defendant filed her motion to dismiss the original Complaint, plaintiffs chose to

amend rather than oppose.  Most notably, the amendment withdraws plaintiffs' claim that the

Drug Enforcement Administration (DEA) has violated internal Department of Justice (DOJ)

procedures concerning the release of information about civil actions.  But because the remaining

claims are largely the same as those that defendant has already addressed, the government's

grounds to dismiss the First Amended Complaint For Declaratory And Injunctive Relief

(Amended Complaint) are substantially similar to the arguments previously raised.

In the Amended Complaint, plaintiffs now bring three claims for relief based on two

alleged procedural errors committed during the administrative forfeiture of certain List I

chemicals admittedly either imported or held in this country in violation of the Controlled

Substances Act, 21 U.S.C. § 881.  As DEA could not have committed these alleged errors as a

matter of law, all three claims must be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The administrative forfeitures at the center of this case concern four separate seizures of large quantities of List I chemicals, chemicals that are used in the manufacture of controlled substances including, as pertinent here, the illegal drug methamphetamine. It is undisputed that the importer of these chemicals, non-party Malladi, Inc., had violated the administrative requirements levied by regulation on importers to properly track shipments of List I chemicals to prevent their diversion to illegal uses. DEA thus seized Malladi, Inc.'s onsite inventory. Subsequently, and equally undisputed, Malladi, Inc. surrendered its DEA registration and, so, was no longer permitted to import List I chemicals as they arrived from overseas. Consequently, DEA seized three shipments of these chemicals bound for Malladi, Inc. as they arrived at three separate ports-of-entry into the United States over the next month. As required by law, the seized inventory and shipments were each appraised, and each was valued at less than $500,000, the threshold above which DEA would have been compelled to seek judicial forfeiture. But because each seizure was valued at less than the threshold, DEA administratively forfeited each seizure.

Notably, in neither the Complaint nor the Amended Complaint do plaintiffs – Malladi, Inc.'s overseas parent, Malladi Drugs & Pharmaceuticals, Ltd. (Malladi DPL), and Malladi, Inc.'s customer, Novus Fine Chemicals, L.L.C. (Novus) – seek relief based on errors in either the individual seizures or the value of the individual appraisals that permitted the administrative forfeitures to proceed. Rather, they now collaterally attack the administrative forfeitures on two grounds. First, they allege that DEA was compelled to aggregate the value of all four seizures for purposes of forfeiture. As the resulting aggregate value would have exceeded the $500,000

threshold below which administrative forfeiture is statutorily permitted, plaintiffs ask this Court to void the administrative forfeitures.  In the alternative, they contend that certain papers they filed in the administrative proceedings were, in reality, "claims" that should have barred administrative forfeiture and compelled DEA to seek judicial forfeiture.  Despite a few subtle changes in pleading, these two claims for relief raise essentially the same issues as the original Complaint and, thus, fail for the same reasons.

As for aggregation, it is not required either expressly or impliedly by the governing statute.  To the extent that plaintiffs rely on an internal DOJ policy to either support a statutory requirement for aggregation or to renew their argument that the policy provides an independent mandate for aggregation, that policy (1) does not create any enforceable substantive right, (2) provides that aggregation is discretionary, and (3) was fully complied with here.  Moreover, whether based on a statute or an internal policy, plaintiffs' failure to raise aggregation during the administrative procedure before DEA has waived their right to do so here.

And as for the putative claims, given the stark differences between a "claim" – a request whose sole purpose is to stop an administrative forfeiture proceeding and to compel the government to initiate a judicial proceeding – and the documents filed by plaintiffs before DEA, namely "petitions for remission or mitigation" – requests whose sole purpose is to seek the return of forfeited property as a matter of executive agency discretion – there can be no doubt that plaintiffs never filed a claim before DEA.  A thorough review of the petitions – attached as exhibits and incorporated into the Amended Complaint by reference – reveals that at no time did plaintiffs ever contest the validity of the administrative proceeding let alone make plain that they

3

were seeking to compel judicial forfeiture.  Accordingly, DEA was never requested by plaintiffs to initiate judicial forfeiture.

## BACKGROUND

### I. Statutory and Regulatory Framework

The forfeited chemicals that plaintiffs seek returned are heavily regulated, both as to their importation and distribution and as to the processes for forfeiting them.   As acknowledged by plaintiffs, the chemicals at issue here – ephedrine, pseudoephedrine, ephedrine hydrochloride and pseudoephedrine hydrochloride – are List I chemicals subject to import and export regulation by DEA.  Am. Compl. ¶ 9.  List I chemicals are chemicals that are used in the manufacture of controlled substances.  21 U.S.C. § 802(34).  Controlled substances, in general, are either illegal drugs or drugs that may be obtained only with a prescription.  See 21 U.S.C. § 812 (listing the five schedules of controlled substances); 21 U.S.C. § 828 (barring distribution of controlled substances listed on Schedules I or II); & 21 U.S.C. § 829 (permitting the distribution of controlled substances listed on Schedules III or IV by prescription).  To prevent the diversion of List I chemicals to the illicit manufacture of controlled substances, such chemicals may be imported and possessed only by persons or entities with a valid DEA registration.  21 U.S.C. § 822; 21 C.F.R. § 1309.21.  Once imported, these chemicals are subject to detailed reporting requirements to ensure that they are used solely for legitimate purposes and not diverted to the illicit manufacture of controlled substances.  21 C.F.R. Pt. 1304.  DEA has the right to seize "[a]ll listed chemicals . . . which have been imported, . . . possessed, . . . acquired, or intended to be . . . acquired, [or] imported . . . in violation of" these laws.  21 U.S.C. § 881(a)(9).

4

As modified by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983 (CAFRA), the customs laws govern the forfeiture of seized List I chemicals. So long as not inconsistent with the laws governing controlled substances and listed chemicals, "[t]he provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws . . . , [and to] the remission or mitigation of such forfeitures . . . shall apply to" DEA's seizures of listed chemicals for violation of the drug laws. 21 U.S.C. § 881(d). The forfeiture procedures of the customs laws are set forth at 19 U.S.C. §§ 1602-1619. Under these laws, DEA must file a judicial action to forfeit any seized goods valued at more than $500,000. 19 U.S.C. § 1610. Goods valued at less than $500,000 may be forfeited administratively. 19 U.S.C. § 1607(a)(1).

The notification procedures to administratively forfeit seizures valued at $500,000 or less are set forth in 19 U.S.C. § 1607 as modified by 18 U.S.C. § 983. Under these procedures, DEA is required to publish notice of its intent to forfeit the seized chemicals for at least three successive weeks. It is also required to send personal notice of the seizure to any person who appears to have an interest in the property. This notice must inform the interested party of the seizure of the goods, of DEA's intent to forfeit the goods administratively, and of information on the applicable procedures. This notice must generally be sent within 60 days of the seizure. 18 U.S.C. § 983(a)(1)(A)(i).[1]

Once notified, the interested parties have the prerogative to choose the forum in which the matter will proceed. They may choose to stop the administrative forfeiture and compel the

---

[1] The 60-day deadline is subject to certain exceptions, none of which are pertinent here. See 18 U.S.C. §§ 983(a)(1)(A)(ii)-(v).

5

government to seek a judicial forfeiture by filing a "claim."  18 U.S.C. § 983(a)(2) & (3).  To be

valid, a claim must be filed within the time specified in the personal notice of seizure (but that

deadline may be no earlier than 35 days after the date the notice was mailed).  Id. at § 983(2)(B).

If the notice was not received, then a claim may be filed no later than 30 days after the final

publication of the notice of seizure.  Id.  The claim need not be made in any particular form, id. at

§ 983(2)(D), but (1) must identify the specific property being claimed, (2) must state the

claimant's interest in the property, and (3) must be made under oath subject to the penalty of

perjury.  Id. at § 983(2)(C).

     If the interested parties choose to permit the forfeiture to proceed administratively, then

they need do nothing.  Once the time for the filing of a claim has elapsed, DEA may declare the

seized property forfeit.  19 U.S.C. § 1609(a).  This declaration has the same force and effect as a

final decree of forfeiture in a judicial forfeiture proceeding in a United States District Court.  Id.

at § 1609(b).  Moreover, it is well settled that judicial review is not available to challenge the

merits of an administrative forfeiture.  United States v. One 1987 Jeep Wrangler, 972 F.2d 472,

480 (2d Cir. 1992).

     Instead of filing a claim, an interested party may file a petition for remission or mitigation

of the forfeiture, so long as such petition is filed within 30 days of the notice of seizure.  21

C.F.R. § 1316.80.  In general, the permissible grounds for remission or mitigation are limited to

innocent owners, bona fide purchasers for value, or owners with a superior interest than that of

the defendant.  28 C.F.R. § 9.5.  The grant or denial of a petition for remission or mitigation is

unreviewable, being a matter delegated solely to the discretion of the executive.  See, e.g.,

<u>Tourus Records, Inc. v. Drug Enforcement Administration</u>, 259 F.3d 731, 735 (D.C.Cir. 2001)

(compiling cases).

## II.  The Allegations In The Complaint

Plaintiff Malladi DPL is a supplier of pharmaceutical raw materials based in India.  Am.

Compl. ¶¶ 2, 8.  Plaintiff Novus is a United States corporation based in New Jersey, and a wholly

owned subsidiary of Malladi DPL.  <u>Id</u>. ¶ 2.  Non-party Malladi, Inc. is a now-dormant subsidiary

of Malladi DPL formerly located in New Jersey.  <u>Id</u>. ¶¶ 7, 14.

Between April and May 2005, DEA made four seizures of the List I chemicals ephedrine,

psuedoephedrine, ephedrine hydrochloride, or psuedoephedrine hydrochloride (the Chemicals)

from Malladi, Inc.  On April 8, 2005, DEA agents seized 233 drums of the Chemicals valued at

$241,500 that were being held as inventory at Malladi, Inc.'s corporate headquarters in Edison,

New Jersey .  Am. Compl. ¶ 17.  This seizure occurred two days after DEA agents inspected

Malladi, Inc.'s administrative procedures for tracking the Chemicals and had "expressed

reservations about the organization of Malladi Inc.'s file room, its document retention system and

the availability of documentation necessary to reconcile inventory."  <u>Id</u>. ¶ 14.  Three days after

the seizure, on April 11th, DEA agents allegedly demanded the surrender of Malladi, Inc.'s import

registration.  <u>Id</u>. ¶ 18.  The manager of Malladi, Inc. complied, thereby rendering Malladi, Inc.

incapable of importing any of the Chemicals.  <u>Id</u>. ¶ 19.  Subsequently, DEA seized three inbound

shipments of Chemicals that had been exported from India by Malladi DPL destined for Malladi,

Inc. in the United States.  On April 14th, DEA agents seized 400 drums of Chemicals upon their

arrival at the Port of Newark, New Jersey.  <u>Id</u>. ¶ 20.  This seizure was valued at $464,000.  <u>Id</u>.

The third seizure occurred on April 27th, when DEA seized 240 drums of Chemicals upon their

arrival at the Port of Staten Island, New York. Id. ¶ 21. This seizure was valued at $250,500. Id. And lastly, DEA seized an additional 400 drums of Chemicals upon their arrival at the Port of Elizabeth, New Jersey on May 2nd. Id. ¶ 22. This final seizure was valued at $464,000. Id. The aggregate value of all four seizures is $1,420,000. Id. ¶ 26.

Plaintiffs received timely notice of each of the seizures and responded to DEA seeking the return of the four seizures. Am. Compl. ¶¶ 37, 44-46. On May 20, 2005, Novus filed a Petition for Remission or Mitigation of Forfeiture challenging the Newark and Elizabeth import seizures. Id. ¶ 44. Two months later, on July 12th, Malladi DPL filed a separate Petition for Remission or Mitigation challenging the Staten Island import seizure. Id. ¶ 45. And lastly, on October 21, 2005, Malladi DPL filed a third Petition for Remission or Mitigation seeking the return of the inventory seized from Malladi, Inc.'s corporate headquarters. Id. ¶ 46. Each of these three Petitions for Remission or Mitigation were filed with the assistance of and by legal counsel. Id. ¶¶ 44-46. DEA forfeited all four seizures administratively and denied the petitions for remission or mitigation.

## ARGUMENT

Defendants respectfully move the Court to dismiss the Complaint for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). A motion to dismiss should be granted if the plaintiffs can demonstrate no set of facts that supports their claim entitling them to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C.Cir. 2000). When evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiffs. E.g., Armstrong v. Vance, 328 F. Supp. 2d 50, 53 (D.D.C. 2004)

(citing <u>Harris v. Ladner</u>, 127 F .3d 1121, 1123 (D.C.Cir.1997)).  While the complaint is to be construed liberally, the Court need not accept factual inferences drawn by the plaintiff if those inferences are not supported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions.  <u>See</u> <u>National Treasury Employees Union v. United States</u>, 101 F.3d 1423, 1430 (D.C.Cir.1996); <u>Kowal v. MCI Comm'n Corp.</u>, 16 F.3d 1271, 1276 (D.C.Cir.1994).

## I. Defendant Did Not Have To Aggregate The Value Of The Four Separate Seizures

As applicable here, the Amended Complaint subtly altered plaintiffs' claim that DEA was required to aggregate the value of all four seizures before determining whether administrative forfeiture was an available option.  In the original Complaint, plaintiffs based this claim on an internal DOJ policy that, they alleged, compelled aggregation.  Now, plaintiffs have shifted the focus of this claim, alleging the failure to aggregate violates the governing forfeiture statute, 19 U.S.C. § 1607(a), while seemingly relegating the internal DOJ policy to a supporting role.  Notwithstanding this change in focus, section 1607 and the implementing regulations contemplate exactly what occurred here, that each seizure would be separately valued and subject to a separate decision on how it was to be forfeited.  And the internal DOJ policy, which does not create any right enforceable by the plaintiffs, did not mandate aggregation as plaintiffs continue to allege.

### A.  Aggregation Is Not Required By Statute

The issue of whether DEA was statutorily required to aggregate the value of the Chemicals is a question of statutory interpretation.  The statute that governs whether or not the Chemicals were properly forfeited administratively provides, in pertinent part:

9

> If – (1) the value of such seized vessel, vehicle, aircraft, **merchandise** or baggage does not exceed $500,000 . . . the appropriate customs officer shall cause a notice of seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct.  Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article.

19 U.S.C. § 1607(a)(emphasis added).  Whether or not aggregation was required depends on the interpretation of the term "merchandise" in this provision.  The Amended Complaint implicitly contends that the term must be interpreted to mandate aggregation.  But notably, nothing in either the statute itself or its implementing regulations even addresses the issue of aggregation of goods within a single seizure or shipment, let alone the issue plaintiffs raise – whether the government must aggregate different goods seized on different days at different locations.  To the contrary, the available guidance based on the context of the statutory and regulatory scheme and on the statute itself instructs that aggregation was not required.

A review of the other Customs laws governing forfeiture, <u>see</u> 19 U.S.C. §§ 1602-1619, demonstrates that section 1607 requires – at most[2] – the aggregation of those goods seized at one particular place and time.  For throughout these statutes, Congress has drawn careful distinctions based on the location of each separate seizure.  For example, section 1602 requires an official authorized to make seizures to report "every such seizure" to the appropriate customs officer "for the district in which such violation occurred."  That customs officer is required to report "a seizure of merchandise" to the "United States attorney for the district . . . in which such seizure

---

[2]  The government does not concede that section 1607 requires even the aggregation of all goods seized in a single seizure or shipment.  But because the government did aggregate all drums of the Chemicals seized in each individual seizure here, the Court may assume without deciding that section 1607 requires aggregation to this limited extent for purposes of this motion.

was made" if legal proceedings are needed "in connection with such seizure."  19 U.S.C. § 1603.

Seized merchandise is to remain stored in the customs or judicial district where the seizure was

made.  Id. § 1605.  And, to the extent that judicial forfeiture is required, that action is to be

brought in the judicial district where the seizure occurred (which by itself defeats any assertion

that the New York seizure could be aggregated with the three New Jersey seizures).  Id. § 1610.

This focus on the location of a seizure carries over into the regulation that is most

applicable here.  Concerning the appraisal of the Chemicals, 21 C.F.R. § 1316.74 specifies that

the value of seized goods is to be determined at the time and place of seizure.  Thus, the one

factor critical to determining how the Chemicals could have been forfeited – the appraisal –

required them to be valued based on the circumstances of their seizure.  Nothing in this

regulation speaks to aggregating the value of seizures that occur at different times and places.

Nor does any other statute or regulation.

The government is not aware of any court that has yet had to interpret the term

"merchandise" as that term is used in section 1607(a)(1).  However, several courts have

interpreted other terms in that section, and their interpretation, if anything, supports a narrow

view of any putative duty to aggregate.  For example, two courts have interpreted the term

"vehicle" and held that, because that term is used in the singular, the value of multiple vehicles

need not be aggregated even though all the vehicles were seized at the same time, at the same

location, and for the same reason.  In re One 1985 Nissan 300ZX, 889 F.2d 1317, 1322 (4th Cir.

1989); Gutt v. United States, 641 F. Supp. 603, 605 (W.D.Va. 1986).  And while, unlike

"vehicle," the term "merchandise" has a potentially collective connotation, that difference does

not command an opposite result concerning a duty to aggregate.  For "merchandise" can just as

11

easily refer to one single good or chattel as it can to an entire shipment.  See Yskamp v. Drug

Enforcement Agency, 163 F.3d 767, 771 n.4 (3d Cir. 1998) (noting, in dicta, that the threshold

amount in section 1607 "applies to individual items seized, not the aggregate value of all items

seized").  Thus, no court has ever held or noted that aggregation is required as to the contents of

an entire shipment or seizure, let alone held – as plaintiffs seek here – that section 1607 requires

the seizing agency to aggregate the value of multiple seizures made on different days in different

districts.

Given the statutory and regulatory context, and the lack of any precedent supporting

aggregation, the Court should hold that section 1607 does not require aggregation.  To the extent

that section addresses this issue at all, it is fully consistent with no duty to aggregate.  At the end

of that section 1607(a), Congress provided that [w]ritten notice of seizure . . . shall be sent to

each party who appears to have an interest in **the seized article**" (emphasis added).  The use of

the singular "article" here is fully consistent with the holdings in In re One 1985 Nissan 300ZX

and in Gutt that it is the value of a single article or vehicle that matters in terms of whether or not

administrative forfeiture is available.  When applied to collective words such as "merchandise"

or "baggage" it should be interpreted to mean that each individual item in seized shipment may

be separately valued.  At best, it may mean that all goods or luggage seized in one seizure must

be valued together.  But no matter how liberally it is interpreted, the singular reference to an

"article" cannot be read to mean that multiple shipments must, as a matter of statute, be

aggregated.

Lastly, the lack of any statutory duty to aggregate is fair to parties such as plaintiffs under

this statutory scheme.  For any party seeking return of seized merchandise has the absolute power

to compel judicial resolution of the forfeiture by filing a claim. 19 U.S.C. § 1608. Thus, in <u>Fort v. Mitchell</u>, 333 F. Supp. 1199 (N.D. Miss. 1971), government agents seized pinball machines at eight different locations. <u>Id</u>. at 1200. The government then sought to administratively forfeit those machines valued at less than the then-threshold-value of $2,500, and to judicially forfeit the rest. <u>Id</u>. The owners in that case filed timely claims, compelling the judicial resolution of all their claims. <u>See id</u>. Thus, the statutory scheme, by granting a claimant the absolute power to force judicial forfeiture, provides a check on the government's ability to resort to administrative forfeiture by artificially splitting up seized merchandise. Under such a scheme, compulsory aggregation is neither needed nor desired. It may be, as set out in more detail below, that the government has the right to choose to aggregate in these circumstances, but it is not required to do so as a matter of statute.

### B. Plaintiffs Cannot Rely On An Internal DOJ Policy To Establish A Right To Aggregation

In their Amended Complaint, Plaintiffs now contend that DOJ agrees with their position that aggregation of the value of all four seizures was required, pointing to an internal DOJ policy. This policy, however, does not mandate – but rather permits – DOJ to aggregate in certain circumstances, does not create any enforceable right in plaintiffs, and, moreover, was fully complied with here. Thus, to the extent that DOJ policy permits DEA to aggregate multiple seizures, for reasons of efficiency or otherwise, it does so as a matter of discretion and not of statutory command. <u>See</u> <u>United States v. Eight Bales of Raw Mink Skins</u>, 227 F. Supp. 425, 427 (S.D.N.Y. 1964) (government may choose to forfeit goods judicially instead of administratively so long as no prejudice inures to potential claimants).

13

**1. Aggregation Was Not Required By The Policy**

The seizures at issue occurred in April and May 2005. Complaint ¶ 6. In January of that year, the Asset Forfeiture and Money Laundering Section of the Department of Justice revised and reissued the Asset Forfeiture Policy Manual (the "2005 Manual") (pertinent pages of which are attached as Exhibit 1). In the forward to that document, the Department stated that it "replaces and supersedes all previous versions of the Policy Manual and all Policy Directives and Interim Legal Advice Memoranda issued prior to December 31, 2004." Consequently, it is to this revision that the Court must refer to discover the operative language concerning Department policy on aggregating the value of seizures for purposes of forfeiture.

In pertinent part, that operative language states:

> In general, properties subject to administrative forfeiture **must be forfeited administratively**, unless one of the following exceptions applies.
>
> > (1) Where several items of personal property (other than monetary instruments) are subject to civil forfeiture under the same statutory authority and on the same factual basis, and they have a common owner and a combined appraised value in excess of $500,000, the property **should be** forfeited judicially in a single action.

Ex. 1, 2005 Manual at 33 (emphasis added; footnote omitted). This language demonstrates a strong preference for administrative forfeiture ("must be forfeited administratively"). By contrast, the exception fails to use the mandatory "must," stating instead that property whose aggregated value exceeds $500,000 "should be" forfeited judicially. The difference in meaning of these two words and their close  juxtaposition establishes that aggregation, while perhaps preferred if multiple goods are seized, is not – as plaintiffs contend – required.

The discretionary nature of the current policy is bolstered when the language from the 2005 Manual is compared to the language in other, earlier Department directives to which

14

plaintiffs refer in the Amended Complaint.  Am. Compl. ¶ 31 n. 3.  For example, the long-since-superseded Directive 91-2 issued by the Deputy Attorney General stated that where seized property had common ownership, was to be forfeited on the same factual basis, and under the same statutory authority, "all such items **shall be aggregated and forfeited judicially**."  Ex. 2 (emphasis added).  Similarly, the superseded 1998 Asset Forfeiture Law and Practice Manual (the 1998 Manual) "requires that when multiple items of property are seized and their aggregate appraised value exceeds $500,000 they **are all to be forfeited** in a single judicial proceeding" if – as the current policy requires – they have a common owner, were seized under the same statutory authority, and on the same factual basis.  Ex. 3, 1998 Manual at 3-3.  The only permissible inference based on the change from the imperative "shall be aggregated" and "are all to be forfeited" to the current, less commanding "should be forfeited" is that the Department changed its guidance to permit greater discretion in deciding whether to seek judicial forfeiture or not.

Thus, the Department's guidance over the years has evolved from the non-discretionary "shall be" to the slightly less imperative "are to be" to the clearly discretionary "should be." Plaintiffs therefore err when they assert that DOJ policy required DEA to aggregate the various seizures prior to forfeiting them.  Current policy makes such aggregation, at best, discretionary. But plaintiffs' more fundamental error is their implication that DOJ's policy acknowledges a statutory requirement for aggregation.  As Eight Bales of Raw Mink Skins states, DEA is free to choose judicial forfeiture procedure – and as a result aggregate the value of the four seizures here – so long as doing so does not deprive a claimant of any rights.  227 F. Supp. at 427.  But nothing in either the statute or the policy compels DEA to do so.

15

## 2.  Departmental Policy Did Not Create An Enforceable Private Right

Many, if not most, internal government polices do not provide any private rights enforceable by the public.  Concerned that enforcement of these internal policies would lead to either their demise or their being parsed in such precatory language as to be unusable, courts have been very reluctant to hold that they create private rights for the public.  Groder v. United States, 816 F.2d 139, 142 (4th Cir. 1987).  Here, the internal Department of Justice policy concerning aggregation of seized merchandise is indistinguishable from the myriad policies that have been found not to create substantive rights.  Thus, plaintiffs cannot assert any right to aggregation based on these policies.

Courts have routinely found that internal law enforcement policies and even entire internal manuals do not provide substantive rights.  See United States v. Wilson, 413 F.3d 382, 389 (3d Cir. 2005) (DOJ policy regarding bringing federal prosecutions after defendant succeeds at state court suppression hearings); United States v. Blackley, 167 F.3d 543, 548-49 (D.C. Cir. 1999) (Department of Justice Manual in general, and policy regarding prosecutions under 18 U.S.C. § 1001 in particular); San Pedro v. United States, 79 F.3d 1065, 1070 (11th Cir. 1996) (United States Attorney Manual); United States v. Craveiro, 907 F.2d 260, 265 (1st Cir. 1990) (DOJ Handbook on the Comprehensive Crime Control Act of 1984); Groder, 816 F.2d at 142 (Internal Revenue Service Audit Manual).  The key issue in determining whether or not substantive (and hence enforceable) rights are created is whether the agency was required either by the Constitution or by statute to adopt the internal policy.  Compare United States v. Caceres, 440 U.S. 741, 749-750 (1979) (no substantive right created by IRS manual's provisions

16

concerning electronic monitoring of conversations) with Bridges v. Wixon, 326 U.S. 135, 152-53 (agency's signature procedures concerning deportations required by the Due Process Clause).

Here, the aggregation urged by plaintiffs is not mandated by either the Constitution or by statute. The constitutionality of administrative forfeiture has long been settled. See, e.g., Dusenbery v. United States, 534 U.S. 161, 167 (2001) (administrative forfeiture satisfies due process). And this constitutional imprimatur is independent of the amount sought to be forfeited, as the threshold amount in section 1607 has been changed by Congress, Customs & Trade Act of 1990, Pub. L. No. 101-382 § 122, 104 Stat. 629, 642 (increasing threshold from $100,000 to $500,000), and in many cases property may be administratively forfeited without regard to its value, see 19 U.S.C. § 1607(a) (permitting administrative forfeiture of money no matter the amount, and of ships, airplanes, and vehicles no matter their value if they were used to transport or store controlled substances). Nor, as set out in section I. A. above, does the governing statute require aggregation; it is entirely silent on the subject. See id.; cf. Yskamp 163 F.3d at 771 n. 4 (Third Circuit noting that the threshold amount applies to individual items seized, not to the aggregate value of all items seized).

Moreover, DOJ has expressly disclaimed the creation of any enforceable rights here. Courts frequently find that disclaimers that expressly negate the creation of private rights, though not required, reinforce that no private rights are created by internal government policies. Thus in Blackley, the District of Columbia Circuit noted that the DOJ Manual stated it was "not intended to confer any rights, privileges or benefits on prospective or actual witnesses or defendants." 167 F.3d at 548. Similarly, in In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141 (D.C. Cir. 2006), the Court held that a reporter had no right to invoke a DOJ policy concerning how a

17

reporter could be subpoenaed for testimony before a grand jury, relying in part on the policy's disclaimer that it did "not create or recognize any legally enforceable right in any person." Id. at 1152.  And this was true despite the fact that the policy, unlike here, was published in the Code of Federal Regulations.  Id.; see 28 C.F.R. § 50.10.  Here, the very policy relied on by plaintiffs is contained in a manual with a nearly identical disclaimer, stating that it:

> is not intended to create or confer any rights, privileges, or benefits for any prospective or actual claimants, defendants, or petitioners.  It is also not intended to have the force of law or of a United States Department of Justice directive.

Ex. 1, 2005 Manual at Forward.  Just as in Blackley and Miller, the presence of this disclaimer further establishes that no private rights were created by the publication of the government policy.

In summary, there is no basis for the aggregation argument advocated by plaintiffs.  It is required by neither the Constitution nor by statute.  Any reliance on these policies by the public is completely negated by the disclaimer, a provision that has been readily endorsed by many courts in multiple contexts.  Rather than creating enforceable rights, the government policies at issue in those cases and here are merely guidelines designed to internally cabin the executive's exercise of its own discretion.  Significantly, the findings of the cases cited above is fully consistent with and supported by the Supreme Court's recent jurisprudence where it "retreated from [its] previous willingness to imply a cause of action where Congress has not provided one." Correctional Svcs. Corp. v. Malesko, 534 U.S. 61, 67 n. 3 (2001); see Alexander v. Sandoval, 532 U.S. 275, 287 (2001).  Just as now the text of a statute must fully support the implication of a cause action, Alexander, 532 U.S. at 287, so here either the Constitution or a statute must mandate the implication of an enforceable right from an internal executive guideline or policy.

18

Because that mandate is missing here, the Department's guidelines concerning aggregation of the value of merchandise do not create any substantive or procedural right enforceable by the plaintiffs.

### 3. Defendant Fully Complied With The Aggregation Policy

The 2005 Manual states that aggregation is not required unless the property has a common owner, is forfeited under the same statutory basis, and was forfeited "on the same factual basis." Ex. 1, 2005 Manual at 33. Plaintiffs concede in their Amended Complaint that DEA made four separate seizures of the List I chemicals, on four separate days, at four separate locations. Am. Compl. ¶¶ 17, 20-22. One of these seizures was of inventory already imported into the United States, and the remainder were three shipments seized as they arrived at different ports-of-entry. Id.

Under these circumstances, defendant fully complied with the aggregation policy because the factual basis underlying each seizure was different. First, each of these seizures occurred on a separate date and at a separate place, which alone establishes that they were not seized on the same factual basis. But beyond that, at a minimum, the factual basis for the first seizure is separate from the other three, as Malladi, Inc. still retained its registration until April 11th. In other words, the later three shipments were seized because Malladi, Inc. no longer had a right to receive them, whereas the first inventory was seized because Malladi, Inc. had allegedly violated the administrative requirements attendant upon a DEA registered importer. And the factual basis underlying the seizure of each of the three shipments was not the same, as once Malladi, Inc. surrendered its registration, it could no longer possess or receive List I chemicals. Accordingly, the receipt of each new shipment was a separate violation of the Controlled Substances Act that

rendered each of these seizures non-identical.[3]  Thus, even if the aggregation policy could have applied, it would not have done so here.

### C.  Plaintiffs Have Waived Their Right To Raise Aggregation In This Court

Even if this Court were to find that section 1607 or DOJ policy created a right to aggregation, the Amended Complaint still must be dismissed.  Having failed to raise the aggregation issue before DEA during the administrative process, plaintiffs have waived any right to raise it here.

"It is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review."  Nuclear Energy Inst. v. Environmental Protection Agency, 373 F.3d 1251, 1298 (D.C. Cir. 2004).  Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.  See United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952).  Accordingly, there is a near absolute bar against raising new issues – factual or legal – on appeal in the administrative context.  National Wildlife Fed'n v. EPA, 286 F.3d 554, 562 (D.C.Cir. 2002).  As the D.C. Circuit has explicitly stated, "'Our cases

---

[3]  Moreover, at least as to the third seizure, the location of the seizure precludes its aggregation with the others.  The first, second, and fourth seizures occurred in New Jersey; the third on Staten Island.  But the governing forfeiture laws require that a proposed judicial forfeiture be referred to the United States Attorney for the district in which the goods were seized.  19 U.S.C. § 1610.  Accordingly, the New York seizure would have been referred to the United States Attorney for the Southern District of New York, while the remaining three would have had to been referred to the United States Attorney for the District of New Jersey.

. . . require complainants, before coming to court, to give the [agency] a <u>fair opportunity</u> to pass on a legal or factual argument.'" <u>National Ass'n of Mfrs. v. United States Dept. of Interior</u>, 134 F.3d 1095, 1111 (D.C. Cir. 1998)(quoting <u>Washington Ass'n for Television & Children v. F.C.C.</u>, 712 F.2d 677, 681 (D.C. Cir. 1983) (alteration and emphasis in original)).[4]  These principles are fully applicable to administrative forfeiture proceedings.  <u>Linarez v. United States Dept. of Justice</u>, 2 F.3d 208, 212 (7th Cir. 1993).

Here, plaintiffs have violated this bedrock principle.  Nothing in any of their filings challenging each of the four proposed forfeitures raised any question about the need to aggregate the value of the shipments.  Nor did any of these filings raise any hint that because of aggregation, only judicial forfeiture was appropriate.  Having permitted the forfeitures to become final – which has the same effect as a judicial decree, 19 U.S.C. § 1609(b) – plaintiffs may not now collaterally attack those decisions on this basis.  As a matter of both administrative and judicial economy, the time to raise this issue was in their first response to the proposed forfeiture. Having sat on their hands, plaintiffs may not now allege failure to aggregate to attack the already completed forfeitures.

## II. Plaintiffs Have Never Filed A Claim For The Seized Chemicals

Once DEA chooses to administratively forfeit seized goods, any entity asserting an ownership interest may stop the administrative process and compel the agency to justify the forfeiture in a judicial case by filing a "claim."  19 U.S.C. § 1608.  CAFRA sets out several

---

[4] <u>See</u> <u>also</u> <u>Nevada v. Department of Energy</u>, 457 F.3d 78, 88 (D.C. Cir. 2006) (argument waived on petition for judicial review because not raised before agency); <u>National Committee for New River, Inc. v. Federal Energy Regulatory Comm'n</u>, 373 F.3d 1323, 1332 (D.C. Cir. 2004) (same).

necessary, but not sufficient, criteria for making a valid claim. Specifically, the claim must identify the specific property being claimed, state the claimant's interest in such property, and be made under oath. 18 U.S.C. § 983(a)(2)(C). Notably, there is no particular technical form that a claim must take. Id. § 983(a)(2)(D). But satisfaction of these few requirements does not make a document a claim. Left unspoken – because it is self evident – is a requirement that the document either identify itself as a claim, or at least give rise to a reasonable inference that it is one. Such an affirmative indication is critical because the three necessary-but-not-sufficient criteria for making a claim are also among the criteria for making a petition. See 28 C.F.R. §§ 9.3(c)(1)(iii)(requiring petition to completely describe the seized property); 9.3(c)(1)(iv) (requiring a description of the petitioner's interest in the property); and 9.3(c)(2) (requiring factual assertions be made under oath). As a consequence, plaintiffs are essentially asserting that CAFRA rendered every "petition" a "claim." Given the entirely contradictory purposes of these two separate types of requests, as set out below, such an assertion cannot be correct.

The procedures governing civil asset forfeiture draw a sharp distinction between a claim and a petition for remission. Once the notices of seizure are served, anyone claiming an ownership interest in the seized property has a choice. The putative owner may permit the administrative forfeiture to continue, resulting in the forfeiture of the goods. See 19 U.S.C. § 1609(a) (if no claim is filed within the time prescribed, the forfeiting agency shall declare the goods forfeit); 21 C.F.R. § 1316.77 (same). By opting for this path, a putative owner may still recover the goods during the administrative process by filing a petition for remission or mitigation. See 28 C.F.R. §§ 9.1-9.3 (detailing procedure and basis for remission or mitigation). It is well-settled, however, that by doing so a party is relying solely on the discretion of the

22

seizing agency.  <u>Tourus Records, Inc.</u>, 259 F.3d at 735.  Or, if the putative owner did not wish to rely on the discretion of the executive, it could choose to stop the administrative process by filing a "claim."  19 U.S.C. § 1608 (if claim filed, property must be referred to United States Attorney for judicial forfeiture); 18 U.S.C. § 983(a)(3)(A) (within 90 days of claim being filed, government must file a judicial complaint seeking forfeiture); 21 C.F.R. § 1316.78 (if a claim is filed, the property must be judicially forfeited).  Once a proper claim is filed, the agency must cease the administrative process and must refer the seized goods to the appropriate United States Attorney to have the goods forfeited judicially.  <u>Id</u>.

As these statutes and regulations demonstrate, the difference between a claim and a petition for remission or mitigation is stark and unmistakable.  These two requests are essentially mutually exclusive, for a claim stops the administrative forfeiture process while a petition for remission or mitigation assumes that the goods have already been forfeited, <u>i.e.</u>, that the administrative process is complete.  21 C.F.R. §1316.79(a).  A claim even stops administrative consideration of a petition for remission or mitigation, compelling DEA to forward the petition to the appropriate United States Attorney.  <u>Id</u>. at § 1316.81.  Thus, while the government may make the initial choice to administratively forfeit seized property, the ultimate control over how the forfeiture proceeds lies with the putative owners' decision on whether or not to file a claim.

Here, nothing in plaintiffs' four Petitions for Remission or Mitigation provided any hint let alone an affirmative indication that these documents were, in reality, claims.  To the contrary, the record establishes that plaintiffs affirmatively chose to forego a judicial forfeiture and to proceed administratively by never filing a claim for the seized shipments.  At all times well-

represented by counsel, plaintiffs filed submissions that sought – as a petition would have – the return of each of the four seized shipments. Strikingly, each of these attorney-filed submissions is styled not as a "claim," but as a "Petition for Remission or Mitigation of Forfeiture." And most notably, nowhere in any of the four petitions do plaintiffs assert that they are making a "claim" or even ask DEA to suspend the administrative process and file a judicial complaint.[5] Rather, the contents of each petition are fully consistent with a request that the executive exercise its discretion to remit or mitigate the loss, not to further contest the loss via judicial review. The only conclusion even an in-depth inspection of the petitions yields is that plaintiffs chose – through counsel – to submit to the administrative process and seek remission or mitigation. Having made that choice, plaintiffs may not now change their mind and assert that a claim was made.

### III. Plaintiffs' Third Claim Provides No Independent Basis For Relief

The Amended Complaint contains an additional claim, asserting that the substantial delay in properly forfeiting the Chemicals has violated plaintiffs' due process rights. Am. Compl. ¶¶ 61-62. But this claim is wholly derivative of the other two, for it necessarily assumes either (1) that DEA had to aggregate the value of the four seizures and, so, could not administratively forfeit them or (2) that DEA ignored valid claims buried in the petitions for remission and mitigation. But, as set out above, neither of these premises is valid. Accordingly, plaintiffs' third claim fails to state a claim upon which relief may be granted for the reasons noted above.

---

[5] Plaintiffs also filed a Petition for Reconsideration as to the denial of two of the petitions. Though not necessary to the decision of this motion, it is telling that nothing in that administrative appeal mentioned that DEA had erroneously ignored an earlier filed claim.

24

**Conclusion**

For the reasons stated above, defendant respectfully requests that the Court dismiss the

Amended Complaint with prejudice.

Respectfully Submitted,


PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ARTHUR R. GOLDBERG
Assistant Branch Director

 /s/ Ronald J. Wiltise
RONALD J. WILTSIE
Trial Attorney
Civil Division
Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044
Tel: (202) 307-1401
Fax: (202) 616-8470


October 9, 2007                    Attorneys for Defendants

# EXHIBIT 1

U.S. Department of Justice
Criminal Division
Asset Forfeiture and Money Laundering Section

# Asset Forfeiture Policy Manual

January 2005

## Foreword

This is the *Asset Forfeiture Policy Manual*, published by the Asset Forfeiture and Money Laundering Section of the United States Department of Justice. It replaces and supersedes all previous versions of the *Policy Manual* and all Policy Directives and Interim Legal Advice Memoranda issued prior to December 31, 2004.

Beginning in January 2005, the *Asset Forfeiture Policy Manual* will be available in two formats: the hardcopy format set forth in this publication, and an electronic format available to the federal law enforcement community on the Asset Forfeiture and Money Laundering Section's intranet website. As of January 2005, the contents of the two versions of the *Manual* are identical. As changes are made to the *Manual*, however, they will appear first in the electronic version, as the costs of production make it impractical to revise and republish the hardcopy version more often than once a year even if substantial changes have been made to the text. Accordingly, users of the *Manual* in the federal law enforcement community are encouraged to check the electronic version for the current text of all policies. Changes from the hardcopy version will be flagged on the website to make them easy to identify.

The 2005 edition of the *Policy Manual* contains several chapters that are substantially revised from the earlier version—*see, e.g.,* Chapter 1 (Seizure/Restraint) and Chapter 2 (Administrative and Judicial Forfeiture)—and others that are substantially the same as they were in the previous edition. The Asset Forfeiture and Money Laundering Section anticipates publishing substantially revised versions of all chapters of the *Manual* during 2005 and 2006.

Some topics that require extended treatment are not addressed in this *Manual* because they are addressed at length in stand-alone publications. *See, e.g., A Guide to Interlocutory Sales and Expedited Settlements* (2003), *Financial Investigations Guide* (1998), *A Guide to Equitable Sharing* (1994) and *Guide to the Forfeiture of Firearms* (2005). This *Manual* supplements but does not supersede the policies set forth in those publications.

The *Asset Forfeiture Policy Manual* sets forth the policies of the Department of Justice. It does not, however, create or confer any legal rights, privileges or benefits that may be enforced in any way by private parties. *See United States v. Caceres*, 440 U.S. 741 (1979).

We recommend that the following format be used for citing this *Manual*: *Asset Forfeiture Policy Manual* (2005), Sec. __-__.

Lester Joseph
Acting Chief
Asset Forfeiture and Money Laundering Section
December 31, 2004

# Chapter 2

# Administrative and Judicial Forfeiture

## I. Interplay of Administrative and Civil Judicial Forfeiture

### A. Preference for administrative forfeiture

Before 1990, virtually all forfeitures of properties valued at more than $100,000 were conducted judicially. In 1990, however, the law was amended to permit the administrative forfeiture of cash and monetary instruments, without regard to value, and of other property up to a value of $500,000. *See* 19 U.S.C. § 1607.

The legislative history of this law makes clear that Congress sought to increase the speed and efficiency of uncontested forfeiture actions and has confidence in the notice and other safeguards built into administrative forfeiture laws. Moreover, the due process protections enacted as part of the Civil Asset Forfeiture Reform Act (CAFRA) of 2000 ensure that the administrative forfeiture laws operate fairly. Accordingly, there is a preference for doing forfeitures administratively where it is possible to do so.

In general, properties subject to administrative forfeiture[37] must be forfeited administratively, unless one of the following exceptions applies.

(1) Where several items of personal property (other than monetary instruments) are subject to civil forfeiture under the same statutory authority and on the same factual basis, and they have a common owner and a combined appraised value in excess of $500,000, the property should be forfeited judicially in a single action.

(2) Where the items subject to forfeiture include some that can be forfeited administratively and others that must be forfeited judicially, the forfeitures may be combined in a single judicial action.

---

[37] In general, all property subject to forfeiture may be forfeited administratively except (1) real property (*see* 18 U.S.C. § 985); (2) personal property having a value of more than $500,000, except as noted in 19 U.S.C. § 1607(a); and (3) property forfeitable under a statute that does not incorporate the Customs laws (*see*, e.g., 18 U.S.C. § 492, relating to counterfeiting).

33

(3) When pursuing administrative forfeiture might create the appearance that the Government is circumventing the time limits on administrative forfeiture set forth in 18 U.S.C. § 983(a), the forfeiture should be done judicially as explained in section I.D at page 39, *infra*.

(4) When the U.S. Attorney and the seizing agency agree that the forfeiture should proceed judicially in the first instance, administrative forfeiture is unnecessary.

(5) When, as explained in section II.B at page 49, the U.S. Attorney requests that the seizing agency suspend the administrative forfeiture to allow the forfeiture to be handled criminally, and the seizing agency agrees to do so, the forfeitures may be pursued exclusively as part of the criminal case.

## B. Administrative forfeiture of bank accounts

Section 1607(a)(4) states that "monetary instruments" may be administratively forfeited without regard to dollar value, but this exception does not apply to bank accounts.

The term *monetary instrument* is defined in 31 U.S.C. § 5312(a)(3) to mean currency, traveler's checks, various forms of bearer paper, and "similar material." Neither this statutory definition nor the parallel definition in the applicable regulations encompasses the funds in a bank account.[39] Moreover, the legislative history of section 5312(a)(3) indicates that Congress intended the term *monetary instrument* to apply only to highly liquid assets.[40] Consequently, bank accounts may not be considered monetary instruments for the purposes of the exception to the cap on administrative forfeitures in 19 U.S.C. § 1607(a)(4). Bank accounts of a value of $500,000 or less, however, may be administratively forfeited pursuant to 19 U.S.C. § 1607(a)(1), subject to the policy on handling forfeitures judicially if the aggregate value of two or more assets exceeds $500,000, as discussed in section I.A at page 33.

---

[39] *See also* 31 C.F.R § 103.11(m) (defining monetary instruments).

[40] H. Rep. No. 91-975, 91st Cong. 1, 2d Sess. (1970), *reprinted in* 1970 U.S. Code Cong. & Admin. News 4407. "It is not the intention of your committee, however, that this broadened authority be expanded any further than necessary to cover those types of bearer instruments which may substitute for currency."

**EXHIBIT 2**



U.S. Department of Justice

Office of the Deputy Attorney General

DIRECTIVE NO. 91-2

_____

The Deputy Attorney General                    *Washington, D.C. 20530*

February 26, 1991

## MEMORANDUM

TO:        All United States Attorneys
           Assistant Attorney General, Criminal Division
           Director, Federal Bureau of Investigation
           Administrator, Drug Enforcement Administration
           Commissioner, Immigration and Naturalization Service
           Director, U.S. Marshals Service
           Chief Postal Inspector, Postal Inspection Service
           Commissioner, Internal Revenue Service
           Director, Bureau of Alcohol, Tobacco and Firearms

FROM:      William P. Barr  *WPB*
           Deputy Attorney General

SUBJECT:   Increased Administrative Forfeiture Caps

        Since 1984 virtually all forfeitures of properties
valued over $100,000 have been conducted judicially. 1/  On
August 20, 1990, the President signed Public Law 101-382 which
authorizes the administrative forfeiture of cash and monetary
instruments without regard to value and other property up to a
value of $500,000.

        The legislative history of this new law makes clear
that Congress: (1) sought to increase the speed and efficiency of
uncontested forfeiture actions, and (2) has confidence in the
notice and other safeguards built into administrative forfeiture
laws.  Accordingly, the Attorney General has promulgated revised
asset forfeiture regulations to implement the higher statutory
ceilings for administrative forfeitures.

        To ensure that United States Attorneys can continue to
be effective in their role as Chairmen of the Law Enforcement
Coordinating Committees in our various judicial districts, one

_____

1/  Conveyances used to transport controlled substances have been
administratively forfeitable without regard to value.

DIRECTIVE NO. 2
pg. 1/2 - 1991

- 2 -

change is being made in the processing of equitable sharing
payments in administrative cases, as follows:

If sharing is requested in an administrative forfeiture
case involving property valued in excess of $100,000, the seizing
agency shall, prior to final agency action, provide the
appropriate United States Attorney's Office (USAO) with a copy of
the completed DAG-71 and the DAG-72 reflecting the agency's
proposed sharing transfer.  The USAO shall review the proposed
sharing decision and complete the recommendation section
providing the seizing agency with a sharing recommendation.  If
no USAO recommendation is received within ten days, concurrence
with the agency's proposed action will be assumed.

Let me take this opportunity to re-iterate several
existing policies relating to administrative forfeitures:

1.  Prior Judicial Approval of Seizures.  In all cases
involving real property and wherever practicable in cases
involving personal property (including cash and monetary
instruments), seizing agents shall, in consultation with the
appropriate United States Attorney's Office (USAO), secure a
federal seizure warrant or a federal warrant of arrest in rem.

2.  Forfeiture of Real Property.  All forfeitures of
real property or interests therein shall be conducted judicially.

3.  Aggregation of Seizures.  Where several items of
property are subject to forfeiture (a) under the same statutory
authority, (b) on the same factual basis, (c) have a common
owner, and (d) have a combined appraised value of over $500,000
or include an item of real property, all such items shall be
aggregated and forfeited judicially.  This rule shall not apply
if the seizures occur over a period of weeks with the result that
aggregation would substantially delay the forfeiture.

I am confident that the increased administrative
forfeiture authority will be exercised with utmost care and
prudence.  We will be monitoring implementation closely.  Any
questions regarding this memorandum or other forfeiture issues
should be directed to the Executive Office for Asset Forfeiture,
Office of the Deputy Attorney General.

**EXHIBIT 3**



# Foreword

I am pleased to introduce the *Asset Forfeiture Law and Practice Manual*, produced and published by the dedicated staff of the Asset Forfeiture and Money Laundering Section, Criminal Division. This is the third edition of our *Manual* and replaces the *Asset Forfeiture Manual, Volume I: Law and Practice* (1993).

Like the earlier editions, this *Manual* contains a comprehensive discussion of all of the major aspects of forfeiture law and practice with an emphasis on the Government's perspective. Many hours of research have produced this valuable up-to-date tool for government attorneys and others involved in federal forfeiture efforts.

Forfeiture has achieved high priority as a law enforcement tool in the Government's effort to make criminal activity an unprofitable enterprise. The importance of the forfeiture program in dramatically reducing the financial incentive for crime is substantial. By presenting this *Manual* we hope to encourage the enthusiastic use of administrative, civil, and criminal forfeiture as a law enforcement tool.

For a comprehensive collection of policies relating to the asset forfeiture program see the *Asset Forfeiture Policy Manual*, also produced and published by this Section.

This *Manual* is not intended to create or confer any rights, privileges, or benefits for or on any prospective or actual claimants, defendants, or petitioners. It is also not intended to have the force of law or of a United States Department of Justice directive. *See United States v. Caceres,* 440 U.S. 741 (1979).

Gerald E. McDowell, Chief
Asset Forfeiture and Money
Laundering Section



# Chapter 3

# Non-judicial Forfeiture Proceedings

## I.  Summary Forfeiture

Summary forfeiture is the process by which property is seized and forfeited without any notice or hearing.  Only contraband *per se*—that is, property, the possession or production of which, without more, is illegal—may be summarily forfeited.[1]  Contraband *per se* now includes dangerous, toxic or hazardous raw materials or products, and their containers.[2]

## II. Administrative Forfeiture

Administrative forfeiture is the process by which property may be forfeited to the United States by the investigative agency that seized it, without judicial involvement.  Unless the applicable statute and procedures specifically permit administrative forfeiture, property may only be forfeited through formal court action.  The statutory language authorizing administrative forfeitures is found in the Customs laws (19 U.S.C. §§ 1602-21); therefore, administrative forfeiture generally does not exist under forfeiture statutes that do not incorporate the provisions of the Customs laws.[3]

---

[1] *See, e.g.*, 21 U.S.C. § 881(f), (g)(1); *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699 (1965); *accord United States v. Eighty-Eight Thousand Five Hundred Dollars in U.S. Currency*, 671 F.2d 293, 297 n.1 (8th Cir. 1982).

[2] 21 U.S.C. § 881(f).

[3] *But see* 26 U.S.C. § 7325 (which allows administrative forfeiture under Internal Revenue Code procedures under similar circumstances to those set forth in the Customs laws).

## A. Property Subject to Administrative Forfeiture

Under 19 U.S.C. § 1607, property may be forfeited administratively by the seizing agency if:

(1) it does not exceed $500,000 in value;

(2) its importation is illegal (regardless of its value);

(3) it is a conveyance that has been used to import, export, transport or store controlled substances (regardless of its value)[4]; or

(4) it is a monetary instrument within the meaning of 31 U.S.C. § 5312(a)(3) (regardless of its value).[5]

The Customs laws specifically authorize the administrative forfeiture of property that does not exceed $500,000 in value.[6] Such property includes conveyances, merchandise and baggage. However, no value limit exists on the administrative forfeiture of illegally imported merchandise; conveyances used to import, export, transport, or store any controlled substance; and any monetary instrument under 31 U.S.C. § 5312(a)(3).[7] Property falling into these categories may be administratively forfeited regardless of value.[8]

---

[4] Special procedures, in addition to those discussed in the text, apply to administrative forfeitures of conveyances seized for drug violations involving "personal use quantities" of a controlled substance. *See* 19 C.F.R. §§ 171.51-171.55; 21 C.F.R. §§ 1316.90-1316.99.

[5] The amendments to Department of Justice regulations implementing 19 U.S.C. § 1607 (Immigration and Naturalization Service, 8 C.F.R. Part 274; Drug Enforcement Administration, 21 C.F.R. Part 1316; Federal Bureau of Investigation, 28 C.F.R. Part 8) became effective March 1, 1991. Note that seized bank accounts are not "monetary instruments"; therefore, may not be administratively forfeited pursuant to 19 U.S.C. § 1607(a)(4). However, bank accounts of a value of $500,000 or less may be administratively forfeited pursuant to 19 U.S.C. § 1607(a)(1). *See* Memorandum, entitled "Opinion on Administrative Forfeiture of Bank Accounts," Directive 92-3, issued by the Office of the Deputy Attorney General on February 28, 1992 [*Asset Forfeiture Policy Manual* (1996), Chap. 2, Sec. I, at p. 2 — 2].

[6] 19 U.S.C. § 1607(a)(1).

[7] 19 U.S.C. § 1607(a)(2)-(4).

[8] *But see* 27 C.F.R. § 72.22(a) and 50 C.F.R. § 12.23(a) (limiting administrative forfeitures by the Bureau of Alcohol, Tobacco, and Firearms and the U.S. Fish and Wildlife Service to personal property and conveyances having a value of $100,000 or less).

Department of Justice policy provides that all real property forfeitures must be undertaken judicially, regardless of the property's value.[9]  Department policy also requires that when multiple items of property are seized and their aggregate appraised value exceeds $500,000, they are all to be forfeited in a single judicial proceeding (rather than in separate administrative actions) if they are subject to forfeiture under the same statutory authority and on the same factual basis, and if an individual has an ownership interest in the items seized. Otherwise, all properties subject to administrative forfeiture must be forfeited administratively (unless prosecutive considerations dictate that criminal forfeiture of the property occur as part of a criminal prosecution).[10]

## B. Decision to Proceed or Continue

After determining that seized property may be administratively forfeited, the seizing agency must still determine whether proceeding against the property is feasible and advisable.

### 1. Possibility of Deferral to State Proceedings

Section 1616a of Title 19 allows seizing agencies to forego or discontinue federal forfeiture proceedings and transfer the property to state or local authorities for forfeiture under state law.  If federal administrative proceedings have been commenced prior to such a deferral, notice of the discontinuance must be given to all known interested parties.[11]

When deciding whether to transfer or retain the seized property, the seizing agency is required to consider the status of the Assets Forfeiture Fund and, when appropriate, to consult with the U.S. Marshals Service.[12]  Other considerations should include the potential benefits of retaining the property for official use by the Department of Justice (which would counsel against deferral to state action) and the likelihood that state or local law enforcement agencies

---

[9] *See* Memorandum, entitled "Increased Administrative Forfeiture Caps," Directive 91-2, issued by the Office of the Deputy Attorney General on February 26, 1991 [*Asset Forfeiture Policy Manual* (1996), Chap. 2, Sec. I, at p. 2 — 1].

[10] *Asset Forfeiture Policy Manual* (1996), Chap. 2, Sec. I, at p. 2 — 1.  The Asset Forfeiture and Money Laundering Section may also authorize judicial forfeitures of properties subject to administrative forfeiture in "exceptional circumstances."

[11] 19 U.S.C. § 1616a(b)(2). A decision to discontinue federal administrative forfeiture proceedings in favor of state action must be approved by the head of the investigative agency. *Attorney General's Guidelines on Seized and Forfeited Property* [hereinafter *Attorney General's Guidelines*] (July 1990) § IX.B.1.

[12] *Attorney General's Guidelines* § IX.B.2.

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

_____
                                        )
MALLADI DRUGS &                         )
      PHARMACEUTICALS, LTD., et al.)
                                        )
               v.              )       C.A. 1:07-cv-1069 (RMC)
                                        )
KAREN TANDY,                            )
in her official capacity as Administrator,   )
of the Drug Enforcement Administration.      )
_____)

**O R D E R**

      Having considered defendant's Motion To Dismiss The Amended Complaint, the

Memorandum supporting the Motion, plaintiffs' Memorandum in opposition thereto, and

defendant's Reply Memorandum, it is hereby ORDERED that the Motion is GRANTED and the

Complaint is DISMISSED with prejudice.


_____              _____
Date                                 The Honorable Rosemary M. Collyer
                                     United States District Judge