IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
MALLADI DRUGS & )
    PHARMACEUTICALS, LTD. et al. )
)
        v. )    C.A. 1:07-cv-1069 (RMC)
)
KAREN TANDY, )
in her official capacity as Administrator )
of the Drug Enforcement Administration. )
)

**MEMORANDUM SUPPORTING PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Malladi Drugs & Pharmaceuticals Ltd. ("Malladi DPL") and Novus Fine Chemicals (together, "Plaintiffs") brought this action seeking (1) the return of Ephedrine and Pseudoephedrine that the Drug Enforcement Administration ("Defendant" or "DEA") seized from non-party Malladi Inc., a now-dormant subsidiary of Malladi DPL; or, in the alternative, (2) an order compelling the DEA to file a Complaint in federal court if the DEA desires to forfeit the subject property. Plaintiffs' Amended Complaint, filed in this court on September 21, 2007, asserts causes of action based on violations of 19 U.S.C. §§ 1607 and 1610 (Count I), 18 U.S.C. § 983(a)(3)(A) (Count II), and the Due Process Clause of the Fifth Amendment to the United States Constitution (Count III). Plaintiffs submit this memorandum of law in opposition to Defendant's Motion to Dismiss the Amended Complaint, which was filed on October 9, 2007. For the reasons set forth below, Defendant's motion should be denied in its entirety.

**I.  DEA Was Required To Aggregate The Value Of Each Taking And Seek Judicial Forfeiture.**

In Count I, Plaintiffs allege that DEA violated 19 U.S.C. §§ 1607 and 1610 when it sought administrative, rather than judicial, forfeiture of the subject merchandise. (Am. Compl.

¶¶ 49-53.) Defendant does not dispute that the property at issue is considered "merchandise," as that term is used in sections 1607 and 1610, or that merchandise valued at more than $500,000 must be judicially forfeited. Motion to Dismiss at 10. Defendant's motion is premised on the notion that judicial forfeiture is not warranted because the DEA took possession of the subject property on four different days, and in two neighboring, but different, federal districts (the District of New Jersey and the Eastern District of New York). *See* Motion at 11.

While conceding its obligation to accept all of Plaintiffs' allegations as true and to draw all inferences in Plaintiffs' favor, Defendant's motion ignores the factual allegation that mandates aggregation: the DEA took possession of Plaintiffs' property as the result of a "single plan designed to seize Malladi Inc.'s existing inventory and all incoming shipments then in transit," and thus, this conduct amounts to a single seizure. (Am. Compl. ¶ 16.) While Defendant's motion ignores this allegation, Defendant's discussion of the relevant facts confirms that each of the seizures at issue was part of a unitary plan, resulting from the same perceived regulatory violations:

> It is undisputed that the importer of these chemicals, non-party Malladi, Inc., had violated the administrative requirements levied by regulation on importers to properly track shipments of List I chemicals to prevent their diversion to illegal uses. DEA thus seized Malladi, Inc.'s onsite inventory. Subsequently, and equally undisputed, Malladi, Inc. surrendered its DEA registration and, so, was no longer permitted to import List I chemicals as they arrived from overseas. *Consequently, DEA seized three shipments of these chemicals bound for Malladi, Inc. as they arrived at three separate ports-of-entry into the United States over the next month.*[1]

---

[1] Plaintiffs do not concede that it is "undisputed" that Malladi Inc. violated administrative regulations. However, this issue is irrelevant to the determination of Defendant's motion.

Moreover, contrary to the implication in the above-quoted portion of Defendant's motion, there is no evidence that any of the chemicals at issue were diverted to illegal uses. As Plaintiffs have alleged, following DEA's April 6, 2005, administrative inspection of Malladi Inc., "DEA expressed reservations about the organization of Malladi Inc.'s file room, its document retention system and the availability of documentation necessary to reconcile inventory." Am. Compl. at ¶ 14. DEA has not alleged evidence of illegal diversion.

2

Motion at 2 (emphasis added).

As a result of the perceived violations, DEA initiated a plan to seize the chemicals in Malladi Inc.'s inventory. (Am. Compl. ¶¶ 16, 19.) In executing this plan, DEA rendered Malladi Inc. unable to possess any of the merchandise at issue in the instant action. Specifically, as a result of perceived violations, DEA seized the chemicals in Malladi Inc.'s inventory and constructively seized those in transit by demanding that Malladi Inc. surrender its license.[2] The fortuity that some of the shipments had not yet reached Malladi Inc.'s headquarters is irrelevant. *See United States v. Woodring*, 536 F.2d 598, 598 n.2 (5th Cir. 1976) (boat constructively seized when owner advised that he could not leave with it); *Cozzi v. Pepsi-Cola Gen'l Bottlers, Inc.*, No. 96-C-7228, 1997 WL 811687, at *3 (N.D. Ill. Dec. 30, 1997) (constructive seizure when defendant coerced plaintiff into agreeing to a TRO freezing plaintiff's assets) (attached as Exhibit A); *see also United States v. Puglisi*, 723 F.2d 779, 787 n.12 (11th Cir. 1984) (seizure of luggage that causes a traveler to depart without his luggage or miss a flight is a constructive seizure of the person, regulated by the Fourth Amendment).

Although Defendant ostensibly relies on *Gutt v. United States*, 641 F. Supp. 603, 605 (W.D. Va. 1986), to support its motion to dismiss, *Gutt* supports Plaintiffs' position, as it held that under the plain language of the statutes, "vessels, vehicles, and aircraft" should be valued individually, but that "merchandise" and "baggage" "could be read to refer to collective, rather than individual unit, values."

---

[2] Defendant's argument that statutes requiring seized property to be stored in the judicial or customs district in which it was seized, and that the customs officer report the seizure to the United States attorney for the district in which the property was seized, do not support Defendant's argument that aggregation was not required. These are procedural statutes that cannot be used to defeat Plaintiffs' substantive right to have forfeiture determined judicially. These statutes do not prohibit the consolidation of several judicial forfeitures into a single proceeding in an appropriate venue.

3

> Gutt initially asserts that DEA was required to forfeit the automobiles judicially rather than in administrative proceedings. The court disagrees.
>
> 19 U.S.C. § 1607(a)(1) provides for administrative forfeiture of seized property "if the value of such seized vessel, vehicle, aircraft, merchandise or baggage does not exceed $100,000." Gutt notes that the total value of the six vehicles seized from him was approximately $135,000, and that the vehicles were all seized at the same time. Under these circumstances, Gutt contends, the vehicles could not be forfeited administratively under § 1607(a)(1). Thus, Gutt would have required DEA to forfeit the vehicles judicially, under 19 U.S.C. § 1610.
>
> Gutt's argument, however, is inconsistent with the express language of § 1607(a)(1). The statute explicitly refers to the value of *individual* vessels, vehicles and aircraft, not to the collective value of a group of seized vessels, vehicles or aircraft. *Only "merchandise" and "baggage," as those terms are commonly used, could be read to refer to collective, rather than individual unit, values.* Therefore, when numerous *automobiles* are seized from a private individual by the government at one time, § 1607(a)(1) does not require the government to aggregate the value of all the seized property to determine whether judicial forfeiture is required.

*Id.* at 605 (first emphasis original, later emphases added). The other cases Defendant cites are similarly inapposite, as they do not contradict the proposition that "merchandise," like the chemicals seized pursuant to a single plan here, should be aggregated. *See In re One 1985 Nissan 300ZX*, 889 F.2d 1317, 1322 (4th Cir. 1989) (relying on the plain language of the statute in valuing seized vehicles individually, but noting that aggregation would serve "judicial and administrative economy"); *Yskamp v. Drug Enforcement Agency*, 163 F.3d 767, 771 (3d Cir. 1998) (analyzing seizure of aircraft used to transport illegal drugs, a separate forfeiture category under 19 U.S.C. § 1607); *Fort v. Mitchell*, 333 F. Supp. 1199, 1201-02 (N.D. Miss. 1971) (holding that claimants of devices seized pursuant to Gambling Devices Act not entitled to review of constitutional challenge by three-judge district court); *United States v. Eight Bales of Raw Mink Skins*, 227 F. Supp. 425, 427 (S.D.N.Y. 1964) (government sought judicial forfeiture because eight bales containing 13,076 raw mink skins were valued at more than the then-threshold of $2,500).

4

*Eight Bales* noted that the "summary method of forfeiture allowed by Title 19 U.S.C. § 1607 is designed to obviate the expense and delay of *condemning goods of small value*." 227 F. Supp. at 427 (emphasis added). The happenstance that the DEA took possession of the chemicals at issue on different days does not make these "goods of small value" and thus, worthy only of administrative forfeiture. Moreover, *Eight Bales* reinforces the importance of the value of the seized items in determining District Court jurisdiction, as, for reasons that are unclear, the claimant wanted to proceed by administrative, rather than judicial, forfeiture. 227 F. Supp. at 427. Federal seizure jurisdiction should not turn on fortuities like those found here, nor should the Government be permitted to avoid judicial review of seizures involving valuable merchandise by exploiting the coincidence that the property at issue arrives in the United States over several days and at different locations.

Although Plaintiffs do not seek redress for DEA's violation of its own policies (and all of Defendant's arguments to that effect should be ignored), the policy set forth in DEA's Asset Forfeiture Policy Manual is instructive to the issue before the Court as it demonstrates DEA's agreement that aggregation is appropriate in this circumstance. The 2005 edition of the Manual instructed that:

> Where several items of personal property (other than monetary instruments) are subject to civil forfeiture under the same statutory authority and on the same factual basis, and they have a common owner and a combined appraised value in excess of $500,000, the property should be forfeited judicially in a single action.

U.S. Dep't of Justice, *Asset Forfeiture Policy Manual* (2005) at 33 (Exh. 1, Motion to Dismiss). Defendant's arguments that this policy does not create a private right of action do no more than obscure the issue before the Court. To be clear, Plaintiffs' Amended Complaint does not allege that Plaintiffs have a right to sue for the violation of an internal DEA policy. However, DEA's

5

own interpretation of the statutes at issue, as reflected in that policy, is instructive on the merit of Plaintiffs' allegation that the statutes require aggregation in these circumstances.

Further, Plaintiffs have not waived their right to raise the argument that DEA should have aggregated the value of the merchandise it seized from Plaintiffs. "District courts have jurisdiction to entertain collateral due process attacks on administrative forfeitures." *United States v. Giraldo*, 45 F.3d 509, 511 (1st Cir. 1995); *see also Scarabin v. DEA*, 919 F.2d 337, 338 (5th Cir. 1990) (court may review procedural safeguards to ensure due process). The cases Defendant cites are inapposite because they, unlike the instant action, analyze appeals of administrative actions. *See Nuclear Energy Inst. v. Envtl. Prot. Agency*, 373 F.3d 1251 (D.C. Cir. 2004) (challenging administrative scheme establishing protection standards for nuclear waste repository); *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33 (1952) (noting, in proceeding to set aside Interstate Commerce Commission decision, that appellant was not actually prejudiced by claimed agency misconduct); *Nat'l Wildlife Fed'n v. Envtl. Prot. Agency*, 286 F.3d 554 (D.C. Cir. 2002) (petitions challenging EPA rulemaking); *Nat'l Ass'n of Mfrs. v. U.S. Dep't of the Interior*, 134 F.3d 1095 (D.C. Cir. 1998) (petition for review of rule); *Linarez v. U.S. Dep't of Justice*, 2 F.3d 208 (7th Cir. 1993) (holding that claimant waived argument on appeal after failure to present it to district court). Plaintiffs are not appealing a DEA decision, but rather collaterally attacking DEA's administrative forfeiture of the merchandise at issue.

**II.     Plaintiffs Filed Claims For The Seized Merchandise.**

Despite Defendant's assertions to the contrary, Plaintiffs filed claims for the seized merchandise. 18 U.S.C. § 983(a)(2)(D) notes that a "claim need not be made in any particular form," and the Notices of Seizure for the merchandise, attached as Exhibit 1 to the First Amended Complaint, cite this statute when informing the recipient of the elements of a claim.

Although Defendant recognizes that "there is no particular technical form that a claim must take," (Motion at 22), it then incongruously argues that a claim must be titled as such.[3] Plaintiffs' submissions, while titled as petitions for remission, fulfilled both the elements of a petition for remission and of a claim, and thus serve as both. *See Scarabin*, 919 F.2d at 339 (holding that a "technically incorrect" petition still "contained essentially all of the information required"); *United States v. Articles of Hazardous Substances*, 444 F. Supp. 1260, 1263 (M.D.N.C. 1978), (holding that a motion "not in technical compliance" with rule could be deemed a sufficient claim), *aff'd in part, rev'd in part*, 588 F.2d 39 (4th Cir. 1978); *cf. United States v. 328 Pounds, More or Less, of Wild Am. Ginseng*, 347 F. Supp. 2d 241 (W.D.N.C. 2004) (holding that claimant could not rely upon petition for remission filed by another in asserting judicial claim when claimant failed to personally assert interest or sign under oath).

Defendant concedes that Plaintiffs' submissions satisfy the elements of a claim, other than the ostensibly "unspoken" requirement that it call itself a "claim." Motion at 22. Defendant's argument that there is an "unspoken" requirement in federal regulations has no basis in the law. *See Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1524 (Fed. Cir. 1992) (declining to "read into [] statute an unspoken requirement").

Moreover, Defendant's argument that the administrative and judicial forfeiture processes are "essentially mutually exclusive" (Motion at 23) is incorrect and contradicts the very Notices of Seizure that DEA sent to Plaintiffs. These Notices explicitly invited Plaintiffs to challenge DEA's actions through two methods simultaneously. Each of these Notices states, "You may petition the DEA for the return of the property or your interest in the property . . . **and/or** you

---

[3] DEA's own guidance illustrates that Defendant is responsible for recognizing a claim when one is filed. *See* U.S. Dep't of Justice, *Asset Forfeiture Policy Manual* at 42-46 (2006) (outlining procedure for analysis of facially defective claims and underscoring need for careful consideration of each).

7

may contest the seizure and forfeiture of the property in Federal court" (emphasis added). They also state, "**In addition to, or in lieu of petitioning for remission or mitigation,** you may contest the forfeiture of the seized property in United States District Court" (emphasis added). *See also United States v. Tracts 10 & 11 of Lakeview Heights*, 51 F.3d 117, 119 n.5 (8th Cir. 1995) ("An individual having a sufficient legal interest in the seized property can contest the forfeiture, file a petition for remission or mitigation, or both"). Plaintiffs' submission, which satisfied both the requirements for a petition for remission and a claim, complied with the guidance provided in the Notices. Defendant's argument that these present mutually exclusive remedies is not supported by law or fact, and should be rejected.

It is not only correct, but also practical, to file both a petition for remission or mitigation and a judicial claim simultaneously. Filing both documents in tandem consolidates the key information, facilitates agency review, and importantly, affords a claimant its best opportunity to preserve its rights in the seized property. Judicial claims are important to securing judicial review of a forfeiture decision. However, as the Supreme Court notes, "In many cases, the Government's entitlement to the property is clear, and the claimant's only prospect for reacquiring the property is that the Secretary will favorably exercise his discretion and allow remission or mitigation." *United States v. Eight Thousand Eight Hundred Fifty Dollars ($8,850)*, 461 U.S. 555, 566 (1983). Thus, filing both types of documents proves the best method of ensuring that the claimant preserves its opportunity to assert its ownership interest and, ultimately, secure the goods it rightfully owns.

**III.    Plaintiffs' Due Process Argument Provides An Independent Basis For Relief.**

Plaintiffs' Constitutional claim, which alleges that Defendant violated Plaintiffs' Due Process rights under the Fifth Amendment by failing to seek judicial forfeiture, is not derivative

of Plaintiffs' other claims for relief.  *See $8,850*, 461 U.S. at 564-65 (recognizing that the delay between seizure of personal property by the federal government and institution of proceedings for forfeiture thereof may violate the Fifth Amendment due process requirement).  If Defendant successfully argues that a claim for judicial forfeiture must include the word "claim" in the title, Defendant's Notices of Seizure violated Plaintiffs' Due Process rights by failing to inform Plaintiffs of the procedure required to make a claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss.

October 23, 2007                               Respectfully submitted,

                                               /s/ Zachary J. Harmon

                                               Zachary J. Harmon (DC Bar # 453125)
                                               Eugene M. Pfeifer (DC Bar # 140954)
                                               King & Spalding LLP
                                               1700 Pennsylvania Avenue NW
                                               Washington DC 20006
                                               Tel.:  (202) 737-0500
                                               Fax:  (202) 626-3737

                                               *Attorneys for Malladi Drugs & Pharmaceuticals Ltd.*
                                               *& Novus Fine Chemicals LLC*

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.  Page 1
Not Reported in F.Supp., 1997 WL 811687 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

▷
Cozzi v. Pepsi-Cola General Bottlers, Inc.
N.D.Ill.,1997.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
Olivia Ann COZZI, Plaintiff,
v.
PEPSI-COLA GENERAL BOTTLERS, INC.,
Defendant.
**No. 96 C 7228.**

Dec. 30, 1997.

GETTLEMAN, J.
**\*1** Plaintiff Olivia Ann Cozzi has filed an amended complaint against defendant Pepsi-Cola General Bottlers, Inc. alleging national origin discrimination (Count I) and retaliation (Count II) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e*et seq.* (Title VII); retaliation in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621*et seq.* ("ADEA") (Count III); abuse of process and malicious prosecution (Count IV); and defamation (Count V). Defendant moves to dismiss Count IV of the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. For the reasons set forth below, defendant's motion is granted in part and denied in part.

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429 (7th Cir.1996). According to the amended complaint, defendant is a Delaware corporation with its principal place of business in Illinois. Plaintiff is a female of Hispanic descent who was fifty-one years old when she filed the original complaint. Plaintiff was an employee of defendant for eighteen years, working as a credit supervisor from 1990 through 1995. Plaintiff claims she was the only Hispanic employed by defendant as a credit supervisor. She also claims that she was well-qualified for her position and performed her duties effectively.

On December 1, 1995, plaintiff was suspended, allegedly without notice and without cause, by the Director of Credit, and told there would be an "investigation." Defendant subsequently fired plaintiff and replaced her with a white male under the age of forty. Defendant stated that plaintiff was fired for "misappropriation of funds." Plaintiff claims that she did not misappropriate any funds, and that defendant manipulated company records to make it appear as if she had. Plaintiff also alleges that defendant "black-balled" her to prospective employers, thus making it difficult for her to find employment. Plaintiff also claims defendant caused the circulation of rumors about her among plaintiff's friends and former colleagues.

Plaintiff filed a charge of discrimination with the EEOC on June 5, 1996. In July, 1996, defendant filed a lawsuit in the Circuit Court of Cook County, charging plaintiff and other individuals with fraud ("the state suit"). Soon after the state suit was filed, plaintiff claims defendant coerced her into agreeing to a sixty-day temporary restraining order ("TRO") which was issued by the state court and "froze" most of her assets. Defendant then filed a motion to obtain a preliminary injunction to keep plaintiff from alienating her property, which the state court denied. Thereafter, plaintiff sold certain automobiles in her possession. In response, defendant filed a petition for a rule to show cause why plaintiff should not be held in contempt for violating the TRO by selling the automobiles. The state court denied defendant's petition, and did not hold plaintiff in contempt.

**\*2** On August 12, 1996, plaintiff received a right to sue letter from the EEOC. On October 28, 1996, plaintiff filed another charge with the EEOC, this time claiming defendant retaliated against her by filing the state suit. Plaintiff received an additional right to sue letter from the EEOC on October 30, 1996.

## I. STANDARD FOR A MOTION TO DISMISS

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 811687 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 2

*Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle her to relief. *Travel All Over The World,* 73 F.3d at 1429; *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 432 (7th Cir.1993) (citing *Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988)). A motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990).

## II. FAILURE TO STATE A CLAIM

In Count IV of the amended complaint, plaintiff asserts a claim for abuse of process and malicious prosecution. The two torts are similar, yet distinct. "Malicious prosecution is the bringing of a suit known to be groundless, while abuse of process is the bringing of a suit that may ... have a solid grounding in law but that the plaintiff has filed not in order to vindicate his legal rights and obtain a judgment but in order to harass the defendant." *Smart v. Board of Trustees of the University of Illinois,* 34 F.3d 432, 434 (7th Cir.1994), *cert. denied,* 513 U.S. 1129, 115 S.Ct. 941, 130 L.Ed.2d 885 (1995).

### A. Abuse of Process

In order to state a claim for abuse of process, plaintiff must allege that defendant, (1) possessed some ulterior purpose or motive, and (2) performed some act in the use of the legal process not proper in the regular prosecution of the proceedings. *Arora v. Chui,* 279 Ill.App.3d 321, 216 Ill.Dec. 173, 664 N.E.2d 1101, 1108 (Ill.App.Ct.1996). "Specifically, ... defendant must have intended to use the action to accomplish some result that could not be accomplished through the suit itself." *Landau v. Schneider,* 154 Ill.App.3d 875, 106 Ill.Dec. 935, 506 N.E.2d 735, 737 (Ill.App.Ct.1987). Plaintiff must also allege that she has suffered "special injury." *Michael Neuman & Associates, Ltd. v. Florabelle Flowers, Inc.,* No. 92 C 3765, 1994 WL 695548, at *2-3 (N.D.Ill.Dec.9, 1994). Because anxiety, loss of time, attorney fees, embarrassment, humiliation, injury to personal or professional reputation, and the like are the unfortunate incidents of many, if not all, lawsuits, they do not constitute special injuries. *Doyle v. Shlensky,* 120 Ill.App.3d 807, 76 Ill.Dec. 466, 458 N.E.2d 1120, 1129 (Ill.App.Ct.1983) (discussing the requirement in the context of malicious prosecution which requires the same showing of "special injury"). Ordinarily, special injury requires plaintiff's actual arrest, a seizure of her property, or some constructive taking or interference with her or her property. *Serfecz v. Jewel Food Stores,* 67 F.3d 591, 602 (7th Cir.1995), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996), (quoting *Levin v. King,* 271 Ill.App.3d 728, 208 Ill.Dec. 186, 648 N.E.2d 1108, 1110 (Ill.App.Ct.1995)).

**\*3** Plaintiff claims each of the following acts by defendant constituted an abuse of process: (1) filing the state suit; (2) filing the motion requesting a TRO; (3) filing the motion to obtain a preliminary injunction; and (4) filing the petition for a rule to show cause. Plaintiff asserts that defendant acted maliciously and filed the suit, the motions, and the petition with "the improper purpose of retaliating against [her] for having filed her charges of discrimination...." Plaintiff also claims that, as a result, she has been "subjected to substantial financial expense as well as emotional distress and related medical symptoms, degradation and humiliation."

Plaintiff's allegations satisfy the first element of an abuse of process claim: the alleged existence of an ulterior purpose or motive. Defendant argues, however, that plaintiff has failed to allege either, (1) that defendant engaged in an act in the use of the legal process not proper in the regular prosecution of the proceedings, or (2) that she suffered special injury as a result. With respect to most of plaintiff's allegations, the court agrees with defendant.

The first, third, and fourth acts alleged to constitute abuses of process do not involve process in the first place, let alone the abuse thereof. Illinois courts have defined "process" as "any means used by the court to acquire or exercise jurisdiction over a person or over specific property [such as] a summons, writ, warrant [or] mandate...." *Arora v. Chui,* 279 Ill.App.3d 321, 216 Ill.Dec. 173, 664 N.E.2d 1101, 1108 (Ill.App.Ct.1996) (internal citations and quotations omitted). While "[p]leadings are created and filed by ... litigants, [p]rocess is issued by the court, under its official seal." *Holiday Magic, Inc. v. Scott,* 4 Ill.App.3d 962, 282 N.E.2d 452, 456 (Ill.App.Ct.1972). Thus, "the mere institution of proceedings, even with a malicious motive, does not in and of itself constitute abuse of process." *Landau v. Schneider,* 154 Ill.App.3d 875, 106 Ill.Dec. 935, 506 N.E.2d 735, 737 (Ill.App.Ct.1987). Accordingly, defendant's filing of the state suit-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 3
Not Reported in F.Supp., 1997 WL 811687 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

whatever the motive-cannot constitute an abuse of process. Granting a preliminary injunction or issuing a rule to show cause, on the other hand, involve the use of process. There was no such use of process in the state suit, however, because the state court denied defendant's motion to obtain a preliminary injunction and its petition for a rule to show cause. Although defendant requested the use of process, its requests were denied. Under Illinois law, this clearly does not constitute abuse of process.

The insufficiency of the second act alleged by plaintiff-defendant's filing of the motion requesting a TRO-is not as clear because the state court granted the TRO and thus exercised its jurisdiction over plaintiff and her property. Defendants argue that the TRO cannot constitute an abuse of process because plaintiff agreed to the TRO and to its extension on several occasions after substantial negotiations with her and her counsel. If a person has agreed to a particular use of process, it would be logical to prevent her from subsequently arguing that the same use of process was abusive. In the amended complaint, however, plaintiff claims that defendant coerced her into agreeing to the TRO without any reasonable basis. At this point, the court must accept (though with a degree of skepticism) plaintiff's version of events as true. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996). Although plaintiff fails to explain how defendant coerced her, that failure should not deprive her of the opportunity to attempt to prove her abuse of process claim based on the allegations regarding the TRO.

Defendant also argues that plaintiff has failed to allege any special injury. Defendant is correct that plaintiff's alleged "financial expense ... emotional distress and related medical symptoms, degradation and humiliation" do not constitute special injuries. *See Michael Neuman & Associates, Ltd. v. Florabelle Flowers, Inc.,* No. 92 C 3765, 1994 WL 695548, at *3 (N.D.Ill.Dec.9, 1994); *Doyle v. Shlensky,* 120 Ill.App.3d 807, 76 Ill.Dec. 466, 458 N.E.2d 1120, 1129 (Ill.App.Ct.1983); *Holiday Magic Inc. v. Scott,* 4 Ill.App.3d 962, 282 N.E.2d 452, 457 (Ill.App.Ct.1972). The TRO, however, restricted plaintiff's access to most of her assets, and thus effected a **constructiveseizure** of her property, which satisfies the special injury requirement. *See Bank of Lyons v. Schultz,* 78 Ill.2d 235, 35 Ill.Dec. 758, 399 N.E.2d 1286 (Ill.1980) (holding that injunction restraining distribution of life insurance proceeds to widowed beneficiary constituted sufficient interference with property to satisfy special injury requirement); *Norin v. Scheldt Mfg. Co.,* 297 Ill. 521, 130 N.E. 791 (Ill.1921) (prosecution of involuntary bankruptcy supported malicious prosecution claim because of the unusual and far reaching impact of bankruptcy proceeding on property rights). Defendant argues that plaintiff was not harmed by the TRO because she was able to generate cash by selling her automobiles while the TRO was pending. The fact that the TRO did not apply to all of plaintiff's property relates to the degree of harm plaintiff may have suffered, not whether she suffered harm. Plaintiff has therefore sufficiently alleged special injury with respect to the TRO. Accordingly, defendant's motion to dismiss Count IV is granted as to plaintiff's abuse of process claim to the extent that the claim is based on the allegations regarding the filing of the state suit, the filing of the motion to obtain a preliminary injunction, and the filing of the petition for a rule to show cause. Defendant's motion to dismiss Count IV is denied as to plaintiff's abuse of process claim to the extent that the claim is based on the allegations regarding the filing of the motion requesting a TRO and subsequent alleged coercion.

B. Malicious Prosecution

Prior to the recent decision of the Supreme Court of Illinois in *Cult Awareness Network v. Church of Scientology International,* 177 Ill.2d 267, 226 Ill.Dec. 604, 685 N.E.2d 1347 (Ill.1997), the generally accepted elements of malicious prosecution in Illinois were: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to plaintiff. *Swick v. Liautaud,* 169 Ill.2d 504, 215 Ill.Dec. 98, 662 N.E.2d 1238, 1242 (Ill.1996). A plaintiff must also plead and prove "special injury" as with an abuse of process claim. *Cult Awareness,* 226 Ill.Dec. 604, 685 N.E.2d at 1350 (citing *Bank of Lyons v. Schultz,* 78 Ill.2d 235, 35 Ill.Dec. 758, 399 N.E.2d 1286, 1288 (Ill.1980); *Schwartz v. Schwartz,* 366 Ill. 247, 8 N.E.2d 668, 670-71 (Ill.1937)). In *Cult Awareness,* the Supreme Court of Illinois modified the second element of a malicious prosecution claim, and adopted the approach of the Restatement (Second) of Torts, which "suggests looking beyond the type of disposition that was obtained in the previous action when determining if that termination is, indeed, 'favorable' for purposes of a malicious prosecution action." *Cult Awareness,* 226 Ill.Dec. 604, 685

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 4
Not Reported in F.Supp., 1997 WL 811687 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

N.E.2d at 1352. The Restatement approach "allows dispositions that do not reach the merits of the underlying case to satisfy the favorable termination requirement in certain circumstances." *Id.* In other words, whether or not a given proceeding has terminated in favor of the plaintiff is "determined not by the form or title given to the disposition of the prior proceeding, [such as voluntary dismissal] but by the circumstances under which that disposition is obtained." *Id.* at 1352-53. If the circumstances surrounding a proceeding's disposition indicate a lack of probable cause for its initiation, the second element will be met. *Id.* at 1351-53. The adoption of the Restatement approach abrogated many appellate court decisions with respect to their discussions of the meaning of a favorable as opposed to an unfavorable termination. *Id.* The *Cult Awareness* court emphasized, however, that its decision "should not be read to mitigate the strict requirement that a malicious prosecution plaintiff show not only that the action complained of has been terminated, but that it was commenced maliciously and without probable cause[, which is not an] easy hurdle for a plaintiff...." *Id.* at 1357.[FN1]

> FN1. Thus, these appellate court decisions were not abrogated in their entirety, and this court is justified in relying upon them in its discussion of the termination requirement below.

Plaintiff claims that the following acts by defendant constitute malicious prosecution: (1) filing the motion requesting a temporary restraining order; (2) filing the motion to obtain a preliminary injunction; and (3) filing a petition for a rule to show cause. Plaintiff asserts that defendant acted maliciously and filed the motions and petition "without probable cause or any other basis." Once again, plaintiff claims that, as a result, she has been "subjected to substantial financial expense as well as emotional distress and related medical symptoms, degradation and humiliation."

Plaintiff's allegations do not state a claim for malicious prosecution because there has been no termination of the state suit which is still pending. *See, e.g., Arora v. Chui,* 279 Ill.App.3d 321, 216 Ill.Dec. 173, 664 N.E.2d 1101, 1106 (Ill.App.Ct.1996) (a suit that is the foundation for a malicious prosecution action must be legally terminated). Plaintiff argues that termination in her favor occurred when the state court: (1) vacated the TRO; (2) denied defendant's motion for a preliminary injunction; and (3) denied defendant's petition for a rule to show cause. Plaintiff argues that the termination requirement is satisfied even though each action by the state court terminated only a *portion* of the underlying state suit because termination of the entire suit is not required. Plaintiff relies on two cases to support her argument: *McGrew v. Heinold Commodities, Inc.,* 147 Ill.App.3d 104, 100 Ill.Dec. 446, 497 N.E.2d 424 (Ill.App.Ct.1986) and *Wabash Publishing Company v. Flanagan,* No. 89 C 1923, 1990 WL 19977 (N.D.Ill. Feb.27, 1990).

Neither case is relevant to the instant case because neither case addresses the meaning of the phrase "termination of the proceeding" for the purposes of a malicious prosecution claim. *McGrew* addressed the finality, for the purposes of appeal under Illinois Supreme Court Rule 304(a), of an order dismissing certain counts of a plaintiffs complaint, but not others.[FN2] The plaintiff in *McGrew* alleged only an abuse of process claim, and the court specifically stated "plaintiff has not alleged [malicious prosecution,] and we take no position on the merits of any such claim in this case." *McGrew,* 100 Ill.Dec. 446, 497 N.E.2d at 431.

> FN2. In fact, the Appellate Court of Illinois has found that the dismissal of a count of a plaintiffs complaint for failure to state a claim is not a legal termination in defendant's favor for the purpose of bringing a claim for malicious prosecution. *Siegel v. City of Chicago,* 127 Ill.App.2d 84, 261 N.E.2d 802, 813-14 (Ill.App.Ct.1970).

*Wabash,* on the other hand, addressed the finality of a determination with respect to an injunction bond for the purposes of seeking relief under Fed.R.Civ.P. 65.1. Contrary to plaintiff's argument, Illinois case law supports the position that the "proceeding" which must have been terminated is the entire civil suit or criminal prosecution upon which a malicious prosecution claim is based. *See, e.g., Bismarck Hotel Company v. Sutherland,* 175 Ill.App.3d 739, 125 Ill.Dec. 15, 529 N.E.2d 1091, 1097 (Ill.App.Ct.1988) ("[t]he elements of a claim for malicious use of process or malicious prosecution based on a civil suit [include]: (1) the defendant's institution of the suit [and] (2) its termination in the plaintiffs favor"); *Doyle v. Shlensky,* 120 Ill.App.3d 807, 76 Ill.Dec. 466, 458 N.E.2d 1120, 1127 (Ill.App.Ct.1983) ("[t]he elements of malicious use of process or malicious prosecution [include] the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                  Page 5
Not Reported in F.Supp., 1997 WL 811687 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

institution of a civil suit by the defendant [and] the termination of the civil suit in favor of the plaintiff"); Schultz v. Bank of Lyons, 66 Ill.App.3d 698, 23 Ill.Dec. 477, 384 N.E.2d 113, 116 (Ill.App.Ct.1978), aff'd, 78 Ill.2d 235, 35 Ill.Dec. 758, 399 N.E.2d 1286 (Ill.1980), (finding plaintiff's action for malicious prosecution had not yet accrued since the creditor's suit upon which the malicious prosecution action was based had not yet been terminated).

Construing the meaning of the phrase "termination of the proceeding" to require the termination of the entire suit is also consistent with the purposes behind the termination requirement itself. Termination of the underlying proceeding is required because: (1) an unfavorable termination of the prior proceeding may establish probable cause and bar an action for malicious prosecution; (2) a plaintiff cannot be permitted to collaterally attack the original proceeding; (3) a plaintiff cannot show any recoverable damages until she has shown the action against her was unsuccessful; and (4) a plaintiff might secure recovery for the bringing of an action against her which the entertaining court eventually finds to have been well-founded, if the plaintiff was permitted to sue before she had successfully defended the first suit. Executive Commerical Services. Ltd. v. Daskalakis, 74 Ill.App.3d 760, 31 Ill.Dec. 58, 393 N.E.2d 1365, 1370 (Ill.App.Ct.1979). These four purposes would be undermined if the termination of any "portion" of a suit was sufficient, as plaintiff suggests.

There are, however, exceptions to the general rule that the entire case must be terminated before a claim for malicious prosecution may be brought. *See id.*(quoting Prosser, Handbook of the Law of Torts, § 120, at 853-54 (4th ed. 1971)) ("Ordinarily, the plaintiff must prove the termination of the former proceeding ... But there are necessary exceptions ... [if] proceedings ancillary to a civil suit, such as attachment or arrest under civil process ... are themselves unjustified, it is unnecessary to show a favorable termination of the main action [although] the plaintiff must [usually] show a favorable termination of the ancillary proceeding itself"). After conducting its own research, the court discovered one Illinois case-cited by neither of the parties-that analyzed this passage from Prosser and allowed a termination of less than an entire civil suit to support a malicious prosecution claim: March v. Cacioppo, 37 Ill.App.2d 235, 185 N.E.2d 397 (Ill.App.Ct.1962).

The *March* case involved lessees who alleged that their lessor wrongfully garnished their bank accounts and instituted an action against them for unpaid rent past due and rent under an unexpired lease. The lessees filed a complaint alleging, among other things, a claim for malicious prosecution. At that time, the major portion of the underlying suit-the portion concerning the rent under the unexpired lease-had been decided on the merits in favor of the leesees. The *March* court held that the lessees stated a cause of action for malicious prosecution even though the rest of the underlying suit remained pending because the suit was "divisble in two parts [and] the latter [was] resolved." *Id.* at 402. Because the portion that had been terminated was "the far larger part" of the suit and "the equivalent of a separate claim," and because "there was reason to believe that this separate claim was prosecuted with malice and without probable cause," the court found that the lessees stated a claim for malicious prosecution *Id.*

The *March* case and its rationale, however, are inapplicable to the instant case. Plaintiff does not allege that a separate claim constituting a major portion of the state suit has been terminated. On the contrary, the portions of the state suit that plaintiff points to as having terminated in her favor are merely a vacated TRO, a preliminary injunction which was never granted, and a rule to show cause which was never issued. TROs and preliminary injunctions are merely procedural vehicles for maintaining the status quo while parties litigate their substantive claims; they do not constitute separate claims and rarely constitute the major portion of a given suit. A rule to show cause is even more remote and insignificant in this context. Accordingly, in the instant case, the "proceeding" which must be terminated is the entire state suit.

The failure to plead any one of the elements of malicious prosecution bars a plaintiff from pursuing her claim. Swick v. Liautaud, 169 Ill.2d 504, 215 Ill.Dec. 98, 662 N.E.2d 1238, 1242 (Ill.1996). Because plaintiff has failed to allege the termination of an original civil judicial proceeding in her favor, defendant's motion to dismiss Count IV is granted as to plaintiff's malicious prosecution claim.

Defendant's motion to dismiss Count IV is granted as to plaintiff's abuse of process claim to the extent that the claim is based on the allegations regarding the filing of the state suit, the filing of the motion to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1997 WL 811687 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.)**

Page 6

obtain a preliminary injunction, and the filing the petition for a rule to show cause. Defendant's motion to dismiss Count IV is denied as to plaintiff's abuse of process claim to the extent that the claim is based on the allegations regarding the filing of the motion requesting a TRO and subsequent alleged coercion. Defendant's motion to dismiss Count IV is granted as to plaintiff's malicious prosecution claim.

Plaintiff is directed to file a second amended complaint conforming to this opinion on or before January 12, 1998. Defendant shall file its responsive pleading on or before February 2, 1998. The status report set for December 23, 1997, is vacated, and this matter is set for status on February 4, 1998, at 9:00 a.m.

N.D.Ill.,1997.  
Cozzi v. Pepsi-Cola General Bottlers, Inc.  
Not Reported in F.Supp., 1997 WL 811687 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MALLADI DRUGS & PHARMACEUTICALS, LTD. et al. | ) ) ) ) | |
| v. | ) ) | C.A. 1:07-cv-1069 (RMC) |
| KAREN TANDY, in her official capacity as Administrator of the Drug Enforcement Administration. | ) ) ) ) ) | |

**ORDER**

Having considered Defendant's Motion To Dismiss The Amended Complaint and Plaintiffs' Opposition to this motion, it is hereby ORDERED that Defendant's Motion is DENIED.

_____
Date

_____
The Honorable Rosemary M. Collyer
United States District Judge