IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

```
_____
                                     )
MALLADI DRUGS &                      )
    PHARMACEUTICALS, LTD., et al.)
                                     )
                    Plaintiffs,      )
            v.                       )   C.A. 1:07-cv-1069 (RMC)
                                     )
KAREN TANDY,                         )
in her official capacity as Administrator, )
of the Drug Enforcement Administration. )
                                     )
                    Defendant.       )
_____)
```

**REPLY MEMORANDUM SUPPORTING DEFENDANT'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiffs have failed to rebut any of the points in defendant's Motion to Dismiss. Rather, as the Memorandum Supporting Defendant's Motion to Dismiss the Amend Complaint (Def.'s Mem.) established, the Drug Enforcement Administration (DEA) was permitted by statute to do just what it did here, namely to administratively forfeit each of the four seizures separately. 19 U.S.C. § 1607(a) permits the government to forfeit administratively any seizure of merchandise valued at less than $500,000. Here, each of the four seizures was separately appraised at less than $500,000. Defendant did nothing to artificially lower the value of any of the seizures, and plaintiffs do not challenge those appraisals. Plaintiffs' central argument – that the four seizures were made pursuant to a single plan and, so, had to be forfeited as one seizure – is a legal nullity, having no basis in either the governing statutes or case law. Accordingly, plaintiffs have not and cannot establish any basis for aggregating these seizures.

Moreover, plaintiffs have waived any right that they may have had to aggregation. Precedent readily establishes that the doctrine of waiver is fully applicable to collateral due-process attacks. Plaintiffs simply ignore this precedent. But more fundamentally, plaintiffs cannot distinguish the principle underlying the doctrine – whether raised in collateral due-process attacks or administrative appeals – namely that fairness requires a party complaining of a wrong to raise the issue first in the underlying administrative proceeding before raising it on judicial review. Having failed to raise aggregation before DEA, plaintiffs are barred from doing so now.

The Memorandum Supporting Plaintiffs' Opposition to Defendant's Motion to Dismiss the Amended Complaint (Pls.' Opp'n) also confirms that they never filed a claim seeking judicial review. Simply put, they could not point to any objective indicia in any of the five documents that they filed in the administrative proceeding that even hinted they were making a claim. Their reliance on the fact that their four petitions for remission or mitigation also contained the three necessary-but-not-sufficient criteria for a claim could not provide any evidence of a claim, for those three criteria are also required to be in a petition. Their utter failure to raise the issue before filing this case establishes that no claim was made.

And lastly, as set out above, Count III's due process claim based on a significant delay between the seizure and "valid" forfeiture of these List I chemicals cannot succeed unless defendant is wrong as a matter of law as to either the aggregation (Count I) or "claim" (Count II) issues. Similarly, any argument based on a failure to notify plaintiffs that they had to "title" their "claim" as such fails if defendant succeeds on Count II. Accordingly, the due process claim in Count III is wholly derivative of the other two counts.

**ARGUMENT**

**I. Defendant Was Not Required To Aggregate The Four Seizures**

DEA was allowed to do exactly what it has done here, namely to forfeit the four seizures administratively. Nothing about any of these four forfeitures violated the governing statutes, 19 U.S.C. § 1607 and § 1610. Each was a separate seizure, having been seized on a different day and at a different place; and each was valued at less than $500,000, the threshold below which administrative forfeitures are permitted. 19 U.S.C. § 1607(a). Defendant did not seek to split or in any way artificially to decrease the value of the four seizures. Rather it is plaintiffs, alleging that aggregation is required, who seek to impose an artificial constraint on the statutory forfeiture scheme.

As applicable here, nothing in either of those statutes – or any of the related statutes or regulations concerning forfeiture – explicitly requires aggregation. Def.'s Mem. at 9-11. The entire statutory scheme is silent on this issue. Id. Moreover, this silence extends to plaintiffs' central argument, that aggregation is required when the government makes multiple seizures pursuant to a single plan.[1] Pls.' Opp'n at 2. Nothing in the statutory scheme states or implies that aggregation is required under such circumstances. Rather, this additional "fact" is simply a nullity under the statutory forfeiture scheme, wholly irrelevant to whether aggregation was required.

---

[1] The government does not concede at this stage of the litigation that it did formulate a single plan to make all four seizures. See First Am. Compl. at ¶ 16. For purposes of this Motion to Dismiss, however, the Court may assume that the allegation is accurate. Armstrong v. Vance, 328 F. Supp. 2d at 50, 53 (D.D.C. 2004) (on a motion to dismiss, the court must accept all factual allegations as true). In any event, as set out above, plaintiffs' single-plan hypothesis and its related argument concerning constructive seizure are simply irrelevant to the issues raised in the Motion to Dismiss.

3

As the Defendant's Memorandum explained, what guidance exists is provided implicitly by the statutory and regulatory scheme, establishing that aggregation of multiple seizures is simply not required – and in some cases is simply not permitted – whether or not those seizures occur pursuant to a single plan. Def.'s Mem. at 9-11. For example, section 1610 requires that if judicial forfeiture is required, it has to be brought in the judicial district where the seizure occurred. Applied here, section 1610 bars aggregation of the Staten Island seizure with the other three, because the former occurred in the Eastern District of New York and the latter three in the District of New Jersey. In response, plaintiffs argue that such statutory procedural requirements cannot trump substantive rights, Pls.' Opp'n at 3 n.2, a proposition of law that presumes a right to aggregation exists in the first instance. But plaintiffs provide no authority for such a right (or, for that matter, for that proposition of law), nor as explained above will they find any in the statutes governing forfeiture.

Similarly, plaintiffs cannot find any support for a right to aggregation in the case law. As defendant pointed out, this appears to be a matter of first impression. Def.'s Mem. at 11-12. For this reason, it goes without saying that the cases cited by defendant are not directly on point and, hence, somewhat distinguishable. But plaintiffs' brief summary of the allegedly distinguishing characteristics fails to account for the larger point. Not one case known to defendant, nor any cited by plaintiffs, has ever required the government to aggregate even the goods seized in one shipment. See Def.'s Mem. at 12. In fact, one Court of Appeals has even gone so far as to assert, in dicta, that aggregation is never required. Yskamp v. Drug Enforcement Admin., 163 F.3d 767, 771 n.4 (3d Cir. 1998). Plaintiffs are simply in error when they contend that Gutt v. United States, 641 F. Supp. 603 (W.D.Va. 1986), supports their position. As defendant first

4

noted, Def.'s Mem. at 11, Gutt narrowly holds that multiple vehicles (as opposed to merchandise) are not required to be aggregated. 641 F. Supp. at 605. But while noting that the term "merchandise" "could be read to refer to collective rather than individual unit values," the district court never held that merchandise must be aggregated. Id. That issue was not before the court. Moreover, the conditional nature of the court's statement – "could be read" – merely highlights, as defendant has argued, that "merchandise" does not command aggregation, for it could just as easily refer to one article in a seizure as opposed to multiple articles seized simultaneously. Def.'s Mem. at 11-12. Thus, at most, Gutt might stand for the proposition that the government cannot split up the various parts of a single seizure when valuing it for purposes of administrative forfeiture. Id. at 12. But as the government has not done so here, this Court need not decide that issue. No matter what, Gutt cannot be read as requiring – as plaintiffs seek – that multiple seizures must be aggregated.

  Just as the statutes and cases do not support aggregation, neither does defendant's Asset Forfeiture Policy Manual. The then-applicable version of the Asset Forfeiture Policy Manual used the words "should be judicially forfeited" to describe whether "personal property" seized from a common owner should be aggregated for purposes of forfeiture. Asset Forfeiture Policy Manual at 33 (2005) (attached as Exhibit 1 to Defendant's Memorandum). This language represents a change from prior years that highlights the now discretionary nature of aggregation when contrasted with the mandatory language used in the past. E.g., Asset Forfeiture Law & Prac. Manual at 3-3 (1998) (attached as Exhibit 3 to Defendant's Memorandum). Plaintiffs simply ignore this distinction. But the Court should not. For it would be an odd result indeed if the courts in cases such as In re One 1985 Nissan 300ZX, 889 F.2d 1317 (4th Cir. 1989), and Gutt

were to find that multiple vehicles – "personal property" seized from the same owner on the same day and at the same place – need not be aggregated, but for the government to then turn around and impose on itself a non-discretionary duty to aggregate. See Def.'s Mem. at 11-12.

In summary, plaintiffs have not and cannot identify one scintilla of statutory or regulatory authority, or any case law that requires aggregation. Consequently, defendant was entitled to do just what it did here: separately forfeit administratively the four seizures in their entirety because each, individually, was valued at less than the $500,000 threshold. Contrary to plaintiffs' contention, the separate forfeiture of these seizures did not exploit a unique set of circumstances, but rather fully complied with the congressional scheme to advance both the government's interest in the efficient forfeiture of contraband and a putative claimant's rights to the property, if any. Accordingly, as defendant fully complied with the law, the Court should dismiss Count I of the First Amended Complaint.

## II. Plaintiffs Have Waived Any Putative Right To Aggregation

It is uncontested that plaintiffs sought relief from the four forfeitures by filing four documents styled "Petitions for Remission or Mitigation." First Am. Compl. ¶¶ 44, 45, & 46 and Exs. 2a, 2b, 3, & 4. Nowhere in any of these documents, however, (or in a fifth, a petition for reconsideration of DEA's denial of two of these petitions) did the plaintiffs argue that DEA had to aggregate the value of the four seizures for purposes of section 1607(a). Having acquiesced in the non-aggregation at the administrative stage, plaintiffs cannot now attack – collaterally or otherwise – DEA's decision to proceed separately with the four forfeitures.

Contrary to plaintiffs' assertion, Pls.' Opp'n at 6, there is no distinction between the cases cited by defendant and plaintiffs' putative due process challenge. As an initial matter, plaintiffs

simply ignore the fact that courts routinely apply the doctrine of waiver to collateral attacks challenging administrative forfeitures. Linarez v. United States Dept. of Justice, 2 F.3d 208, 213 (7th Cir. 1993) (compiling cases). But even if this direct precedent were lacking, each of the remaining cases cited by defendant would still be apposite. See Def.'s Mem. at 20-21. The critical similarity between those cases and this situation is that a party had an opportunity to call an alleged administrative error to the attention of an adjudicating agency. E.g., National Ass'n of Mfrs. v. United States Dept. of Interior, 134 F.3d 1095, 1111 (D.C.Cir. 1998). The failure to take advantage of that opportunity bars that party from later attacking the agency's decision in court on the omitted ground. E.g., National Comm. for New River, Inc. v. Federal Energy Regulatory Comm'n, 373 F.3d 1323, 1332 (D.C. Cir. 2004). Nothing in these cases depends on the nature of the issue; all that matters is that the issue in question could have been raised in the first instance before the agency. Thus, plaintiffs' effort to distinguish the cases cited by defendant as appeals of administrative actions relies on a distinction without meaning here.

 Moreover, the two cases cited by plaintiffs are wholly inapplicable. See Pls.' Opp'n at 6. For many due-process challenges, the doctrine of waiver does not apply because those challenges involve defective notice of the agency's intended action. Thus, in cases such as United States v. Giraldo, 45 F.3d 509 (1st Cir. 1995), the complaining party had no opportunity to raise any issues before the agency and, so, waiver cannot apply. But that is not this case, as plaintiffs' four petitions demonstrate that they both received adequate notice and acted on it. The remaining due-process challenges generally allege that an agency wholly ignored a valid argument raised by a party. See, e.g., Scarabin v. DEA, 919 F.2d 337 (5th Cir. 1990). This is the category into which plaintiffs' aggregation argument might have fit, had they raised aggregation before DEA. But as

they never gave DEA any opportunity to address their concern, cases such as Scarabin also do not apply here.

In summary, the doctrine of waiver is fully applicable to collateral due-process attacks on administrative forfeitures. Consequently, as plaintiffs could have raised the aggregation issue before DEA, their failure to do so bars them from raising it here for the first time.

### III. Plaintiffs Never Filed A Claim

The Court should ignore plaintiffs' strawman argument that defendant asserts a claim must be "titled" as such to be valid. Pls.' Opp'n at 7. Rather, defendant's only point was that to be considered a "claim," a document must "either identify itself as a claim, **or at least give rise to a reasonable inference that it is one**." Def.'s Mem. at 22 (emphasis added). In other words, it is incumbent on the putative claimant to at least provide DEA with some indication that what has been filed is a "claim." And it is not enough – as plaintiffs assert, Pls.' Opp'n at 7 – that a document contain the three minimum pieces of information necessary for a valid claim (a complete description of the property, a description of the claimant's/petitioner's interest in the property, and affirmation under oath) for those same three pieces of information are also required in petitions for remission or mitigation. See Def.'s Mem. at 22 (comparing 18 U.S.C. § 983(a)(2)(D) (claim) with 28 C.F.R. § 9.3(c)(1) (petition)). What is needed is some objective indication within the document itself that a party is seeking judicial review of the forfeiture proceeding. This may be done by any number of means, which may include styling the document as a claim, making a request that the matter be transferred to a court, or merely stating in the body of the document that a claim is being made. But without some objective indicia that a claim has been filed, DEA is not required to seek judicial forfeiture.

Here, it cannot be disputed that the four documents filed by plaintiffs contained no indicia that they were claims. Filed by attorneys and styled Petitions for Remission or Mitigation, they failed to raise the issue of judicial forfeiture or judicial review. First Am. Compl. Exs. 2a, 2b, 3, & 4. Nor did the word "claim" ever appear within the four corners of any of these documents Id. Plaintiffs' argument that these documents were claims rests solely on the fact that they contained the necessary-but-not-sufficient three criteria that a claim must have. See Pls.' Opp'n at 7. But as this is not enough to distinguish a claim from a petition, meeting those criteria provided no objective indication that a claim had been filed. Any doubt that plaintiffs never filed a claim is removed by their subsequent petitioning for reconsideration of the denial of two of the four petitions. See Def.'s Mem. at 24 n.5. Nowhere in that document did plaintiffs call to DEA's attention that they had, in fact, filed a "claim." Rather, the absence of such a protest establishes that plaintiffs are now simply seeking to salvage their earlier acquiescence in the administrative forfeiture process by relying on the happenstance that both a claim and a petition must contain certain criteria in common.

Plaintiffs do not and cannot cite any authority to support such a result. Of the three cases cited by plaintiffs, Pls.' Opp'n at 7, none of them pertain to the issue before this Court, namely, just what indicia a document must have to be considered a claim that would then compel judicial forfeiture. Rather, two of them address whether a court, in an already commenced judicial forfeiture, should exercise its discretion to consider whether non-conforming documents that somehow evidenced a claimant's interest in the property may substitute for the requisite

"statement of interest" (formerly referred to as a "claim") under Supplemental Rule C(6).[2] The remaining case deals not with claims (under either administrative forfeiture or Supplemental Rule C(6)), but with whether a petition for expedited release may also constitute a petition for remission or mitigation, which generally contains the same information and seeks the same remedy. Scarabin v. DEA, 919 F.2d 337 (5th Cir. 1990). While the court found that such substitution was warranted on the facts before it, id. at 338, its holding militates against finding that plaintiffs' four petitions constituted claims. The Scarabin court found that it was only because DEA had failed to consider the non-conforming document as a petition for remission "when given the clear opportunity to do so" that a due process violation had occurred. Id. Here, because plaintiffs failed to provide any indicia that they were filing a claim, as opposed to a petition for remission or mitigation, DEA had no clear opportunity to act on the non-existent claim.

Similarly, the pages in the DOJ Asset Forfeiture Policy Manual cited by plaintiffs do not support plaintiff's argument that they made a claim here. Pls.' Opp'n at 7 n.3. Rather those pages mirror the facts of Scarabin as they focus not on whether a nondescript document is a claim, but on how to treat a known claim that is somehow defective (for example by being submitted out of time or not properly attested to). See Ex. 1, Dept. Of Justice Asset Forfeiture Policy Manual, pp. 42-46 (2006). Thus, the manual pages deal with the situation in which DEA

---

[2] Interestingly, despite that fact that in both cases sufficient information seems to have been submitted to establish the claimant's interest, one court found the statement-of-interest requirement satisfied by the non-conforming document, but one did not. Compare United States v. Articles of Hazardous Substances, 444 F. Supp. 1260 (M.D.N.C), aff'd in part, rev'd in part, 588 F.2d 39 (4th Cir. 1978) (finding requirement met by affidavits) with United States v. 328 Pounds, More or Less, of Wild Am. Ginseng, 347 F. Supp. 2d 241 (W.D.N.C. 2004) (finding requirement not met by unverified statement of interest filed by claimant's father).

has a "clear opportunity" to act and in which referral to judicial forfeiture may be either appropriate or required. In contrast, here there was no clear opportunity to act because plaintiffs failed to provide any indicia that their filings were anything other than petitions.

Plaintiffs' final contention, Pls.' Opp'n at 7-8, that petitions and claims are not mutually exclusive – while true – cuts against their main argument here. That both of these documents may be filed at the same time (or even in the same document) highlights the need to make clear just what is being requested of the agency. Where, as here, a document is styled solely as a "petition," is fully consistent with that title, and gives no objective indication that it is also a "claim," then DEA is entitled to do just what it did here and proceed with the administrative forfeiture. The bar for asserting a claim may not be high, but plaintiffs utterly failed to raise any suggestion that they were making a claim. Accordingly, this Court should dismiss Count II.

**IV. Plaintiffs' Due Process Claim Is Wholly Derivative Of The Other Two Counts**

Plaintiffs' Opposition wholly fails to rebut defendant's argument that any due process claim based on delay between the seizures and a judicial forfeiture rests on the success of their first two counts. See Pls.' Opp'n at 8-9. For if defendant is correct that aggregation was not required and that plaintiffs did not file a claim to compel judicial forfeiture, then the administrative forfeitures are valid and unchallengeable, and there has been no inordinate delay between seizure and forfeiture. Thus, while defendant may agree for purposes of this motion that unwarranted delay between seizure and forfeiture may, under some circumstances, give rise to a due process claim, those circumstances will not exist here if defendant prevails on Counts I and II of the First Amended Complaint.

Apparently recognizing this, plaintiffs have now subtly altered their due process argument, additionally contending that if a claim must be titled as such, defendant committed a due process violation by not informing plaintiffs of that requirement in the Notice of Seizure. Though this argument appears to be beyond the scope of Count III, which focused solely on delay, the argument is also wholly derivative of Count II. Plaintiffs clearly submitted four documents that were petitions for remission or mitigation. They were so styled and their content focused solely on that subject. None of these documents gave any indication that it was also a claim. Plaintiffs contend that, nevertheless, these documents were claims because they contained the three minimum criteria that a claim must have: a description of the property, a description of their interest in the property, and affirmation under oath of those facts. See 19 U.S.C. § 983(a)(2)(D). On the other hand, defendant contends that a claim must somehow objectively inform DEA that it is a claim. Count II totally disposes of this question. So depending on the resolution of Count II, this new argument under Count III will also be decided. Hence, Count III remains totally derivative of Count II.

## CONCLUSION

For the reasons stated above and in the Supporting Memorandum, defendant respectfully requests that the Court dismiss the Amended Complaint with prejudice.

                                         Respectfully Submitted,

                                         PETER D. KEISLER
                                         Assistant Attorney General

                                         JEFFREY A. TAYLOR
                                         United States Attorney

                                         ARTHUR R. GOLDBERG
                                         Assistant Branch Director

                                          /s/ Ronald J. Wiltise
                                         RONALD J. WILTSIE
                                         Trial Attorney
                                         Civil Division
                                         Federal Programs Branch
                                         U.S. Department of Justice
                                         P.O. Box 883
                                         Washington, D.C.  20044
                                         Tel: (202) 307-1401
                                         Fax: (202) 616-8470

November 1, 2007                        Attorneys for Defendant

*Asset Forfeiture Policy Manual* January 2006

Moreover, even if we are mistaken in that regard, the same event that created the retrospective violation—the filing of the civil judicial action under the CAFRA statute—would itself render any supposed violation of the notice requirement moot. That is because we interpret section 983(a)(1)(F), which requires the return of the seized property if the Government fails to comply with the 60-day notice deadline "without prejudice to the right of the Government to commence a forfeiture proceeding at a later time," as allowing the Government to retain possession of the seized property if it promptly files the civil judicial action upon discovery of the missed deadline. *See also Manjarrez v. United States*, 2002 WL 31870533 (N.D. Ill. 2002) (failure to send notice of an administrative forfeiture within the 60-day period prescribed by CAFRA does not bar the Government from commencing a civil judicial forfeiture action against the same property without first returning the property to the claimant). In a case where the supposed violation of the notice requirement does not even occur until the Government has decided to abandon the non-CAFRA forfeiture theory in favor of one to which the notice requirement applies, the Government will have filed the judicial action as discussed in ILAM 02-2, (*see* section I.F, *infra*) and maintained custody of the property pursuant to an arrest warrant in rem, before any obligation to return the seized property arises.

How to deal with the 90-day filing requirement in section 983(a)(3) presents a closer question. On the one hand, until the U.S. Attorney determines to pursue the civil judicial forfeiture under CAFRA statute, the 90-day filing requirement simply does not apply. On the other hand, if the Government routinely seized property under an exempted statute, delayed filing any civil judicial action for more than 90 days after a claimant filed a claim and cost bond, and then filed the judicial forfeiture under a CAFRA statute, it might create the appearance that the initial seizure under the exempted statute was merely a ruse to allow the U.S. Attorney to avoid complying with CAFRA when the Government intended all along to pursue the judicial forfeiture under the CAFRA statute. Accordingly, in any case referred by CBP or ICE where the initial seizure was pursuant to an exempted statute, the U.S. Attorney should make the decision whether to switch theories to a CAFRA statute, or to include both CAFRA and non-CAFRA theories in the complaint, within 90 days of the filing of the claim and cost bond; and if the decision is made to pursue the CAFRA forfeiture, the U.S. Attorney should file the complaint before the 90 days expires, or ask the court for an extension of time in accordance with section 983(a)(3).

### D. Whether to file a judicial forfeiture action when the timeliness or form of an administrative forfeiture claim is in dispute[52]

There are times when the claim filed in an administrative forfeiture proceeding is facially defective or filed out of time, but the claimant disputes that characterization. This section

---
[52] Section I.D was previously disseminated as ILAM 03-4 in 2003.

42

January 2006                                                     *Asset Forfeiture Policy Manual*

discusses whether, in such cases, the seizing agency should enter a declaration of forfeiture or refer the case to the U.S. Attorney.

### 1. Summary

Section 983(a)(2) requires that a claim contesting an administrative forfeiture action contain certain information and be filed within a certain number of days. If the claim is not filed in accordance with the statute, the seizing agency may enter a declaration of forfeiture pursuant to 19 U.S.C. § 1609. There are times, however, when the claimant may dispute the agency's characterization of the claim as defective or untimely.

If the seizing agency ignores the claimant's protestations and proceeds with the declaration of forfeiture without referring the case to the U.S. Attorney, it runs the risk that the claimant may turn out to have been correct. By that time, it is likely that the 90-day period for commencing a civil judicial forfeiture action pursuant to section 983(a)(3) will have expired, and that civil forfeiture of the property will be barred by the "death penalty" provision in section 983(a)(3)(B).

On the other hand, if the agency routinely forwards untimely or defective claims to the U.S. Attorney, and the U.S. Attorney files a civil judicial forfeiture action to toll the 90-day period, the agency's policy of insisting on strict compliance with section 983(a)(2) will be undermined, and claimants will have little incentive to adhere to the statutory requirements.

On balance, the seizing agencies should continue to adhere to the policy of strict compliance and should only refer valid claims to the U.S. Attorney. The agencies are encouraged, however, to consult with the local U.S. Attorney if the content or timeliness of a claim filed in an administrative forfeiture proceeding is questionable before deciding to issue a declaration of forfeiture.

### 2. Discussion

Section 983(a)(2) provides that a person contesting an administrative forfeiture proceeding must file a claim with the seizing agency not later than the deadline set forth in the letter giving the person notice of the forfeiture, or not later than 30 days after the final day of publication of that notice in a newspaper, if direct notice was not received. *See* section 983(a)(2)(B). Moreover, the statute also provides that the claim must identify the property being claimed, state the claimant's interest in the property, and be made "under oath" subject to penalty of perjury. *See* section 983(a)(2)(c).[53] If no valid and timely claim is filed, the

---

[53] *See* section III at page 57, regarding the "under oath" requirement.

43

*Asset Forfeiture Policy Manual* January 2006

seizing agency is entitled to enter a declaration of forfeiture against the property pursuant to section 1609.

If a claim is timely and contains the required information, however, the agency must transfer the case to the U.S. Attorney, who must either commence a civil or criminal forfeiture action in the district court or return the within 90 days after the agency received the claim. *See* 18 U.S.C. § 983(a)(3)(A). If the U.S. Attorney does not comply with the statutory requirement, and the 90-day deadline is neither waived by the claimant nor extended by the court, the Government must release the property and the civil forfeiture of the property is forever barred. *See* section 983(a)(3)(B).

In the vast majority of cases, no one files a claim, and the seizing agency proceeds to enter the declaration of forfeiture. In most other cases, a clearly valid and timely claim is filed, and the agency transfers the case to the U.S. Attorney as required by law. In a small but significant number of cases, however, the timeliness or adequacy of the claim is in doubt. In such cases, the seizing agency may—in its discretion—give the claimant additional time to perfect the claim; but if the claim was untimely, or if the defects are not corrected, the agency has the right to proceed with the administrative forfeiture.

It is clear that the U.S. Attorney's duty to file a civil or criminal forfeiture action in the district court does not arise until a claim is filed with the seizing agency in the proper form. For example, in *Manjarrez v. United States*, 2002 WL 31870533 (N.D. Ill. 2002), the district court held that a claim filed by the claimant's attorney, instead of by the claimant personally, was not under oath as the statute requires, and therefore was not a valid claim. Accordingly, the court held, the 90-day period in which the Government was required to commence a judicial forfeiture action never began to run.

There are times, however, when it is not entirely clear that the claim filed with the seizing agency is defective or untimely. For example, the agency may believe a claim is late because it was filed after the deadline set forth in the notice letter that the agency sent to the claimant; but the claimant may assert that the notice was defective because it was sent to the wrong address. If the agency is convinced that a claim is incomplete or is filed out of time, and it sticks to its guns and proceeds with the administrative forfeiture without referring the case to the U.S. Attorney, there is always the chance that a court will agree with the claimant and hold that the Government should have filed a judicial forfeiture action within the 90-day period prescribed by section 983(a)(3)(A). In that case, because there is no provision in the statute tolling the 90-day period while such disputes are resolved, it is likely that the Government will find itself outside of the 90-day period and unable to pursue the civil forfeiture of the property.

January 2006                                                                                    *Asset Forfeiture Policy Manual*

On the other hand, if the seizing agency forwarded every questionable case to the U.S. Attorney, the agency's policy of insisting on strict compliance with the terms of section 983(a)(2) would be rendered meaningless, and claimants would have little incentive to comply with those terms.

What is truly needed to resolve this problem is a provision in the statute tolling the 90-day period while any dispute as to the adequacy or timeliness of the claim filed in the administrative forfeiture proceeding is resolved by the court. But the absence of such a provision does not mean that the Government must liberally construe the otherwise strict requirements of section 983(a)(2). In fact, a recent decision by the Court of Appeals for the Third Circuit suggests that when there is a bona fide dispute as to the timeliness of a claim, the court should *equitably toll* the period for filing the judicial action to avoid any injustice to the Government.

In *Longenette v. Krusing*, 322 F.3d 758 (3d Cir. 2003), a claimant mailed his claim to the seizing agency within the statutory time period, but the agency did not receive the claim until after the time period expired. The agency assumed that the claim was untimely and entered a declaration of forfeiture, but the claimant disagreed and filed an action to recover his property in the district court. Ultimately, after protracted litigation, the court of appeals held that the claimant was correct: under pre-CAFRA law, at least, the timeliness of a claim filed in an administrative forfeiture proceeding by a prisoner was determined by the "mailbox rule." That is, the claim was deemed to have been filed when it was mailed.[54]

By this time, however, the 5-year statute of limitations for filing a civil forfeiture action had expired. The claimant argued that, accordingly, the Government should be required to release the property and should be forever barred from commencing a civil forfeiture action. But the Third Circuit held that in fairness to the Government, given the novel legal issue involved, the statute of limitations would be equitably tolled. Thus, the Government was given 6 additional months in which to commence a new forfeiture action against the property.

While *Longenette* was a pre-CAFRA case involving the 5-year statute of limitations under 19 U.S.C. § 1621, and not the 90-day filing deadline under section 983(a)(3), the principle is the same. When the Government, in good faith, enters a declaration of forfeiture believing that the claim filed in an administrative forfeiture proceeding was inadequate or

---

[54] The rule seems to be otherwise for CAFRA cases and for claims filed by persons who are not prisoners. *See Sandoval v. United States*, 2001 WL 300729 (S.D.N.Y. 2001) (claim is considered filed in a civil forfeiture action when it is received by the seizing agency, not when it is mailed by the claimant); *Florez-Perez v. United States*, Case No. 3:99-cv-1230-J-20A (M.D. Fla. Sept. 1, 2000) (claim sent by Federal Express on the last day for filing a claim but not received by the Drug Enforcement Administration (DEA) until the next day was not timely filed).

45

*Asset Forfeiture Policy Manual*    January 2006

untimely, but is ultimately mistaken in that belief, the U.S. Attorney may argue that the time for filing a judicial action should be equitably tolled.

There is no guarantee, of course, that any court will agree with the Government on this point. But the availability of that remedy, coupled with the disadvantages of routinely referring all cases involving defective or untimely claims to the U.S. Attorney, militates in favor of taking the more aggressive approach on this issue.

It should be added, however, that in any case in which the legal issues regarding the adequacy or timeliness of a claim are unclear, the seizing agencies are encouraged to consult with the U.S. Attorney before deciding to go forward with the administrative forfeiture of the property. Such consultations—particularly in cases where further litigation is likely—will give the U.S. Attorney, who ultimately will have to defend the agency's action in the district court, the opportunity to advise the agency on the strengths and weaknesses of its position and the risks involved in not transferring the case for judicial forfeiture.

### 3. Conclusion

Seizing agencies should insist on strict compliance with the filing requirements of section 983(a)(2), and should not routinely refer defective claims to the U.S. Attorney just because a claimant insists that a claim contained all of the required information and was timely filed. The agencies, however, should consult with the U.S. Attorney regarding any claims in which the adequacy or the timeliness of the claim is unclear. If the agency rejects the claim and declares forfeiture but a court ultimately decides that the claim filed in that proceeding was valid, the U.S. Attorney should argue that the 90-day period for filing a judicial forfeiture action under section 983(a)(3) should be equitably tolled.

## E. 60-day notice period in all administrative forfeiture cases

### 1. Background

Through the many forfeiture statutes, Congress has made clear its intent that the Government be expeditious in providing notice and in initiating forfeiture actions against seized property. Further, a fundamental aspect of due process in any forfeiture proceeding is that notice be given as soon as practicable to apprise interested persons of the pendency of the action and afford them an opportunity to be heard.

Notice to owners and interested parties of the seizure and intent to forfeit in any non-judicial civil forfeiture proceeding is governed by section 983(a)(1), which requires "written notice" to all interested parties.