UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MALLADI DRUGS &** | ) | |
| **PHARMACEUTICALS, LTD.,** *et al.,* | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 07-1069 (RMC) |
|  | ) | |
| **KAREN TANDY,** | ) | |
| in her official capacity as Administrator, | ) | |
| **Drug Enforcement Administration,** | ) | |
|  | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

The Drug Enforcement Administration ("DEA") has quite a problem. It routinely seizes controlled substances, such as chemicals for manufacturing pharmaceuticals, when an imported shipment does not comply with the stringent regulatory scheme. An interested party can file a "claim" and require DEA to seek judicial forfeiture of any seizure worth less than $500,000. *See* 18 U.S.C. § 983(a)(2) & (3); *compare* 19 U.S.C. § 1607(a)(1) (goods valued at less than $500,000 may be forfeited administratively).[1] Or an interested party can file a "petition" to ask the Administrator of DEA, Defendant Karen Tandy, to give the chemicals back as a matter of executive discretion. *See* 21 C.F.R. § 1316.80; *see also* 28 C.F.R. § 9.5. Both a "claim" and a "petition" basically require the same information and, although forms are available, forms are not required. How, then, is the DEA to know whether it is dealing with a claimant entitled to a judicial hearing

---

[1] In the event of a seizure of real property or goods valued at more than $500,000, DEA must file for judicial forfeiture and cannot effect an administrative forfeiture. *See* 19 U.S.C. § 1610.

or a petitioner who is not? In this case, the Plaintiffs filed multiple Petitions for Remission or Mitigation of Forfeiture after DEA seized certain chemicals because of regulatory improprieties. DEA denied all petitions and denied requests for reconsideration and administratively forfeited the chemicals. Plaintiffs now bring suit, asserting that DEA should have treated their papers as both "petitions" *and* "claims" and ensured that they received a hearing before a federal judge prior to forfeiture.

## I. BACKGROUND FACTS

Malladi Drugs & Pharmaceuticals, Ltd. ("Malladi DPL") is a supplier of pharmaceutical raw materials based in India. Pl.'s First Am. Compl. ("Am. Compl.") ¶¶ 2, 8. Plaintiff NOVUS Fine Chemcials, L.L.C. ("Novus") is a United States corporation based in New Jersey and is a wholly owned subsidiary of Malladi DPL. Am. Compl. ¶ 2. Non-party Malladi, Inc., is a now-dormant subsidiary of Malladi DPL, formerly located in New Jersey. *Id*. ¶¶ 7, 14, 17. At the relevant time period in 2005, Malladi, Inc., was in the business of importing List 1 Chemicals from Malladi DPL and selling them in this country to, among others, Novus. *Id*. ¶¶ 13-15.

List 1 Chemicals are chemicals that are used in the manufacture of controlled substances. 12 U.S.C. § 802(34). Controlled substances, in general, are either illegal drugs or drugs that may be obtained only with a prescription.[2] To prevent the diversion of List I Chemicals to the illicit manufacture of controlled substances, these chemicals may be imported and possessed only by persons or entities with a valid DEA registration. 21 U.S.C. § 822; 21 C.F.R. § 1309.21. Once

---

[2] *See* 21 U.S.C. § 812 (listing the five schedules of controlled substances); 21 U.S.C. § 828 (barring distribution of controlled substances listed on Schedules I or II); & 21 U.S.C. § 829 (permitting the distribution of controlled substances listed on Schedules III or IV by prescription).

imported, List I Chemicals are subject to detailed reporting requirements to ensure that they are used solely for legitimate purposes. 21 C.F.R. Pt. 1304. DEA has the right to seize "[a]ll listed chemicals . . . which have been imported, . . . possessed, . . . acquired, or intended to be . . . acquired, [or] imported . . . in violation of" these laws and regulations. 21 U.S.C. § 888(a)(9).

On April 6, 2005, DEA agents inspected Malladi, Inc.'s administrative procedures for keeping track of List 1 Chemicals ephedrine, psuedoephedrine, ephedrine hydrochloride and psuedoephedrine hydrochloride ("the Chemicals"). *See* Am. Compl. ¶ 14. The agents "expressed reservations about the organization of Malladi Inc.'s file room, its document retention system and the availability of documentation necessary to reconcile inventory." *Id*. ¶ 14.[3] On April 8, 2005, DEA agents returned to Malladi, Inc., and seized 233 drums of the Chemicals valued at $241,500; these Chemicals were being held as inventory at corporate headquarters in Edison, New Jersey. *Id*.

---

[3]

> DEA concerns . . . appear[ed] to arise from two conditions or practices at Malladi [Inc.]. First, the shipments covered by the cited [Letters of No Objection ("LONO"), issued by DEA and which allowed the Chemicals to be imported] were not (for various reasons) delivered in whole or in part to the customer/consignees identified in such LONOs. In most instances, such customer/consignees had either cancelled or altered orders before Malladi [Inc.] could deliver the imported articles. . . . Thus, Malladi [Inc.] found itself with and maintained inventories which it used to supply other DEA-sanctioned customers. In short, Malladi supplied only customers covered by contemporaneous LONOs.
>
> Second, as noted above, DEA believed that Malladi [sic] records system did not readily permit the tracking of imports, their delivery to the customer/consignees identified in the LONOs associated with the importations, and subsequent shipments to other customers from inventories.

Am. Compl., Ex. 4, Petition of Malladi DPL and Novus Fine Chemicals, LLC for Remission or Mitigation of Forfeiture, at 3.

¶ 17. Three days later, on April 11, 2005, "in a good faith effort to display cooperation that the DEA officials stated would be helpful, [Malladi Inc.] surrendered [its] import registration. *Id*. ¶ 19. As a result, Malladi [Inc.] [was and is] no long able to possess List I Chemicals." *Id*., Ex. 4 at 3.

Unfortunately for Malladi DPL, it had three inbound shipments of the Chemicals that it had exported from India and shipped to Malladi, Inc., although the subsidiary corporation no longer had a right to receive or possess them. *See* Am. Compl. ¶¶ 20-22. On April 14, 2005, DEA seized 400 drums of Chemicals upon their arrival at the Port of Newark, New Jersey. *Id.* ¶ 20. This seizure was valued at $464,000. *Id.* A third seizure occurred on April 27, when DEA seized 240 drums of Chemicals upon their arrival at the Port of Staten Island, New York. *Id*. ¶ 21. This seizure was valued at $250,500. *Id.* Lastly, DEA seized 400 drums of Chemicals when they arrived at the Port of Elizabeth, New Jersey, on May 2, 2005. *Id*. ¶ 22. This final seizure was valued at $464,000. *Id*. The aggregate value of all four seizures is $1,420,000. *Id*. ¶ 26.

The Plaintiffs received timely notice of each of the seizures and responded to DEA seeking their return. *See* Am. Compl., Exs. 1-4. On May 20, 2005, Novus filed a Petition for Remission or Mitigation of Forfeiture challenging the April 14 seizure at the Port of Newark and the May 2 seizure at the Port of Elizabeth. *Id*., Exs. 2a & 2b. Two months later, on July 12, Malladi DPL filed a separate Petition for Remission or Mitigation challenging the Staten Island seizure that had occurred on Aril 27. *Id*., Ex. 3. Finally, on October 21, 2005, Malladi DPL filed a Petition for Remission or Mitigation seeking the return of the inventory seized on April 8, 2005, from Malladi, Inc.'s corporate headquarters. *Id*., Ex. 4. Each of the Petitions was filed with the assistance of and by legal counsel. *Id*. ¶¶ 44-46. DEA forfeited all four seizures administratively and denied the Petitions and motions for reconsideration.

## II.  STATUTORY BACKGROUND

Civil forfeiture of inanimate objects used in criminal schemes has long been prevalent in the United States.  It has its origins in the common law.

> At common law the value of an inanimate object directly or indirectly causing the accidental death of a King's subject was forfeited to the Crown as a deodand.* The origins of the deodand are traceable to Bibilical and pre-Judeo-Christian practices, which reflected the view that the instrument of death was accused and that religious expiation was required.  The value of the instrument was forfeited to the King, in the belief that the King would provide the money for Masses to be said for the good of the dead man's soul, or insure that the deodand was put to charitable uses.  When application of the deodand to religious or eleemosynary purposes ceased, and the deodand became a source of Crown revenue, the institution was justified as a penalty for carelessness.
>
> * Deodand derives from the Latin *Deo dandum*, to be "given to God."

*Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680-81 (1974) (citations omitted).  In England, the use of civil forfeiture was expanded to those convicted of felonies and treason as well as "offending objects used in violation of the customs and revenue laws." *Id.* at 682.  These latter traditions were carried over into the United States, where "ships and cargoes involved in customs offenses were made subject to forfeiture under federal law." *Id.* at 683.  "[C]ontemporary federal and state forfeiture statutes reach virtually any type of property that might be used in the conduct of a criminal enterprise." *Id.*

In 1970, Congress passed the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 801 *et seq*.  Part of that lengthy statute provided for forfeitures of controlled substances "manufactured, distributed, dispensed, or acquired in violation of this subchapter."  21 U.S.C. § 881.  At that time, true to its lineage, the statute provided that seizure would be conducted pursuant to supplemental rules for admiralty and maritime claims. *See id*. § 881(b).  In addition,

"[t]he provisions of law relating to the seizure [and] summary and judicial forfeiture . . . for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; [and] the remission or mitigation of such forfeitures . . ." applied as well to drug seizures. *Id*. § 881(d).

### 1. "Claims" Under CAFRA

Over time, the government's enthusiasm for civil forfeiture of objects arguably associated with criminal activity led to pressure for greater protection of citizens' due process rights. Congress adopted the Civil Asset Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983, to achieve the desired balance between governmental and private interests. CAFRA introduced a number of significant changes to civil forfeiture procedures. As relevant here, CAFRA introduced the concept of a post-seizure "claim" for seizures valued at less than $500,000, 18 U.S.C. § 983(a)(2)(A),[4] the filing of which requires DEA to seek a judicial forfeiture. *See* 18 U.S.C. § 983(a)(3). "A claim shall – (i) identify the specific property being claimed; (ii) state the claimant's interest in such property; and (iii) be made under oath, subject to the penalty of perjury," but "need not be made in any particular form." 18 U.S.C. § 983(a)(2)(C) & (D). "Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture . . . or return the property . . . ." 18 U.S.C. § 983(a)(3)(A).

In addition, if a claimant follows the requirements of CAFRA, it is entitled to "immediate release" of seized property.

> A claimant is entitled to "immediate release" of property the government has seized if:

---

[4] CAFRA provides that "[a]ny person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure." 18 U.S.C. § 983(a)(2)(A).

>    (A) the claimant has a possessory interest in the property;
>
>    (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of trial [for judicial forfeiture];
>
>    [C] the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless; [and]
>
>    (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding . . . .[5]

18 U.S.C. § 983(f)(1)(A)-(D). "A claimant seeking release of property under this subsection must request possession of the property from the appropriate official, and the request must set forth the basis on which the requirements" listed above are met. 18 U.S.C. § 983(f)(2). If the property is not released within 15 days, the claimant may file a petition in district court, describing the basis on which the requirements listed above are met and the steps the claimant has taken to obtain the property from the right official. 18 U.S.C. § 983(f)(3)(A)&(B).

### 2. "Petitions"

Petitions for remission (voidance of the forfeiture) or mitigation (reduction in the assets seized) are governed by regulations at 28 C.F.R. Part 9. *See* 28 C.F.R. § 9.2(n) ("The term petition means a petition for remission or mitigation of forfeiture under the regulations in this part."). Petitions must include the following information:

---

[5] Property that is contraband, or currency or electronic funds, and property that is evidence of a violation of the law, and property that is particularly suited for use in illegal activities, and property that is likely to be used for additional criminal conduct are not subject to the provisions for return of seized property during the pendency of a forfeiture action. *See* 18 U.S.C. § 983(f)(E).

> (i) The name address, and social security or other taxpayer identification number of the person claiming an interest in the seized property who is seeking remission or mitigation;
>
> (ii) The name of the seizing agency, the asset identifier number, and the date and place of seizure;
>
> (iii) A complete description of the property, including make, model, and serial numbers, if any; and
>
> (iv) A description of the petitioner's interest in the property as owner, lienholder, or otherwise, supported by original or certified bills of sale, contracts, deeds, mortgages, or other documentary evidence.

*Id.* § 9.3(c)(1). "Any factual recitation or documentation of any type in a petition must be supported by a sworn affidavit." *Id.* § 9.3(c)(2). "The petition is to be sent to the official address provided in the notice of seizure and shall be sworn to by the petitioner or by the petitioner's attorney upon information and belief, supported by the client's sworn notice of representation . . . ." *Id.* § 9.3(e)(2).

Once a petition is received, the seizing agency investigates its merits and submits a written report to the Ruling Official. *Id.* § 9.3(f). The Ruling Official reviews and considers the report and then issues the ruling without any hearing. *Id.* § 9.3(g) ("No hearing shall be held."). If the Ruling Official denies the petition, s/he will notify the petitioner or its counsel of the reasons and the right to submit a request for reconsideration. *Id.* § 9.3(i). A request for reconsideration is decided by a different Ruling Official than the one who ruled on the original petition. *Id.* § 9.3(j)(2).

### III. LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003). The facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Browning*, 292 F.3d at 242. In deciding a 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt, v. Chao*, 226 F. Supp. 2d at 196 (D.D.C. 2002) (citation omitted).

### IV. ANALYSIS

Malladi DPL and Novus accost DEA for not affording it the benefit of a judicial forfeiture proceeding before administratively forfeiting the Chemicals. They advance two arguments to support this position, which will be addressed in turn: (1) DEA was required to aggregate the value of each seizure and seek judicial forfeiture; and (2) Plaintiffs filed "claims" for the Chemicals. *See* Pls.' Mem. Supporting Pls.' Opp'n to Def.'s Mot. to Dismiss the Am. Compl.("Pls.' Mem.") [Dkt. #13]. Plaintiffs also argue that their Fifth Amendment rights to due process were violated when DEA failed to seek judicial forfeiture.

### A. Aggregation

In Count I, Plaintiffs allege that DEA violated 19 U.S.C. §§ 1607 and 1610 when it sought administrative, rather than judicial, forfeiture of the Chemicals. *See* Am. Compl. at 10. Plaintiffs argue that the Chemicals were seized as the result of a "single plan designed to seize Malladi Inc.'s existing inventory and all incoming shipments then in transit," Am. Compl. ¶ 16, and therefore, "this conduct amount[ed] to a single seizure." Pls.' Mem. at 2. Because the total amount of Chemicals seized was valued at more than $500,000, Plaintiffs' aggregation into a single sum would have required DEA to seek a judicial forfeiture. Plaintiffs remind the Court that it must accept all of their allegations as true and draw all inferences in their favor. *Macharia*, 334 F.3d at 64, 67. According to Plaintiffs, their factual allegations mandate aggregation: "each of the seizures at issue was part of a unitary plan, resulting from the same perceived regulatory violations." Pls.' Mem. at 2. "DEA seized the chemicals in Malladi Inc.'s inventory and constructively seized those in transit by demanding that Malladi Inc. surrender its license." *Id.* at 3.

The uncontested facts are that DEA seized a shipment valued at $241,500 on April 8, 2005 at Malladi, Inc., headquarters in Edison, New Jersey; a shipment valued at $464,000 at the Port of Newark, New Jersey on April 14, 2005; a shipment valued at $250,500 at the Port of Staten Island, New York on April 27, 2005; and a shipment valued at $464,000 at the Port of Elizabeth, New Jersey on May 2, 2005. *See* Compl. ¶¶ 17-22. Inasmuch as Malladi, Inc., "voluntarily surrendered its List I Registration," Am. Compl., Ex. 4 at 3, DEA could not have "constructively seized" any shipments "by demanding that Malladi Inc. surrender its license" as Plaintiffs now argue. So the question is whether the shipments should be aggregated when they were seized on different dates and in different places because there was no properly registered recipient in the United States.

The question must be answered in the negative. The facts do not admit of the conspiratorial slant the Plaintiffs would impose. Once Malladi, Inc., was no longer registered to receive the Chemicals, DEA had no choice but to seize them. The seizures occurred on different dates, in different locations, and in different judicial districts. Just because they were prompted by the same circumstance does not transmogrify these individual seizures into a single event.

### B. "Claim" versus "Petition"

Counsel for Plaintiffs filed three "Petition[s] . . . for Remission or Mitigation of Forfeiture" ("Petitions") with the DEA. They now argue that those Petitions were also Claims. Pls.' Mem. at 7 ("Plaintiffs' submissions, while titled as petitions for remission, fulfilled both the elements of a petition for remission and of a claim, and thus serve[d] as both."). The Petitions did provide a complete description of the seized property plus a description of Malladi's/Novus's interest in the property, and were affirmed under oath, as required by 18 U.S.C. § 983. However, the Court finds that this was insufficient to require DEA to treat them as claims.

First, the Petitions were clearly labeled as such. They contained not one hint that they were not what they said they were. Second, they were filed "[p]ursuant to 28 C.F.R. Part 9," the regulations that govern petitions, and not the statutory provisions for claims. Am. Compl., Exs. 2a, 2b, 3 & 4. Third, they gave a "rationale for remission or mitigation," *id.* (upper case omitted), and made no mention of a "claim", whether by that specific word or otherwise. Fourth, they sought release of the seized Chemicals but did not comply with the requirements of 18 U.S.C. § 983(f)(1)(A)-(D), which statutory text covers the procedures a claimant must follow to obtain release of seized property. Fifth, Plaintiffs filed a request for reconsideration under the regulations at 28 C.F.R. § 9.3(j), and made no mention that their Petitions were also supposed to be claims.

CAFRA simplified the process by which owners of seized property might regain it. It provides statutory rights. No special forms are required, no bond need be paid, no legal mumbo-jumbo is necessary, a claimant may be able to get his property back almost immediately, and a claimant is entitled to a determination of proportionality, *i.e.*, a determination by the court as to whether "the forfeiture was constitutionally excessive" compared to "the gravity of the offense giving rise to the forfeiture." 18 U.S.C. § 983(g)(1) & (2). Once a claim is filed, the seizing agency must turn the case over to the U.S. Attorney who will seek judicial forfeiture.

A petition for remission or mitigation of forfeiture is an entirely different creature. It is created by regulation, not law. An application for a petition requires more information than a claim. It is decided by a Ruling Official, not a judge, and only one administrative level of review is available. The grant of remission or mitigation is discretionary.

Since all petitions require more information than the three pieces of information formally required for a claim, Plaintiffs' argument that their Petitions were also Claims, if accepted, would require seizing agencies to treat all petitions as claims and to refer all petitions for judicial forfeiture. That clearly was not the intent of Congress when it established the claims process. The Court need not decide what degree of specificity is needed to denote a claim as a claim,[6] because by no measure do Plaintiffs' Petitions come close.

---

[6] DEA suggests that "[w]hat is needed is some objective indication within the document itself that a party is seeking judicial review of the forfeiture proceeding. This may be done by any number of means, which may include styling the document as a claim, making a request that the matter be transferred to a court, or merely stating in the body of the document that a claim is being made." Def.'s Reply [Dkt. #14] at 8. A claimant might also cite CAFRA by name or U.S. Code citation or provide the specific information CAFRA requires to seek a return of seized property.

### C. Due Process

In light of the above analysis, Plaintiffs' Fifth Amendment due process claim outlined in Count III must also be dismissed, because the success of this claim is wholly derivative of Counts I and II. Plaintiffs outline in their Amended Complaint that they should have been granted a hearing to contest the seizures, and that "Defendant's unwillingness to commence judicial forfeiture proceedings . . . denied the due process of law as required by the Fifth Amendment of the U.S. Constitution." Am. Comp. ¶ 61-62. Aggregation was not required and Plaintiffs did not file a claim to compel judicial forfeiture, therefore the administrative forfeitures are valid and unchallengeable, and there has been no inordinate delay between seizure and forfeiture.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A memorializing order accompanies this Memorandum Opinion.

Date: March 13, 2008                                /s/
                                         ROSEMARY M. COLLYER
                                         United States District Judge